# Exhibit B

**(Immediately Follows This Page)**

<u>VIA FEDERAL EXPRESS</u>

**NOTIFICATION OF DISPOSITION OF COLLATERAL**

August 17, 2020

TO:                                                                          159 BROADWAY MEMBER LLC
                                                                                    75 Huntington Street
                                                                                    Brooklyn, NY 11231


FROM:                                                                   159 BROADWAY MEZZ LLC,
                                                                                    225 Broadway, 32nd Floor
                                                                                    New York, New York 10007

                                                                                    ("**Secured Party**")

NAME OF DEBTOR:                                              159 BROADWAY MEMBER LLC

**Property**:  159 Broadway, Brooklyn, New York 11211 (the "**Property**")

Reference is hereby made to that certain Mezzanine Loan Agreement made as of November 1, 2019 (the "**Loan Agreement**"), by and between **159 BROADWAY MEMBER LLC** ("**Mezzanine Borrower**"), and **159 BROADWAY MEZZ LLC** ("**Mezzanine Lender**"), in the original principal amount of One Hundred Thousand and 00/100 Dollars ($100,000.00) (the "**Loan**"), which Loan is evidenced by that certain Mezzanine Promissory Note dated as of November 1, 2019 (the "**Note**"), and secured by that certain Ownership Interests Pledge And Security Agreement made as of November 1, 2019 (the "**Pledge Agreement**"), pursuant to which Mezzanine Borrower granted to Mezzanine Lender a first priority security interest in the Collateral (as such term is defined in the Loan Agreement). (Hereafter, the Pledge Agreement, together with the Note, the Loan Agreement, and all other documents and guarantees executed by Mezzanine Borrower and/or Guarantors Yitzchok Hagar and Shifra Hager ("**Guarantors**") in favor of Mezzanine Lender in connection with the Loan, are refereed to collectively as the "**Loan Documents**".) Capitalized terms used in this letter and not defined herein shall have the meanings ascribed thereto in the Loan Agreement.

As previously notified pursuant to Notice of Default and Acceleration, dated July 24, 2020, Mezzanine Borrower has failed to pay to Mezzanine Lender the scheduled payments of interest starting with February 1, 2020, and the Loan matured on July 1, 2020. Additionally, Mezzanine Lender is advised that Mortgage Borrower is in default of its Loan with the Senior Lender for, among other things, its failure to pay the monthly interest payments commencing on March 1, 2020, and Senior Lender has accelerated the sums due under the Senior Loan. As a result, Events of Default have occurred and are continuing pursuant to Section 13(c) of the Loan Agreement.

  1.     Notification of Disposition of Collateral

Accordingly, please take notice that Mezzanine Lender will sell all right, title and interest of Mezzanine Borrower in the following collateral:

(i)    One hundred percent (100%) of the limited liability company interest of Mezzanine Borrower in WB Bridge Hotel LLC, a New York limited liability company, and the owner of the Property; and

(ii)    All other collateral pledged by Debtor under the Pledge Agreements

(collectively, the "**Collateral**").

The Collateral will be sold to the highest qualified bidder at a public sale to take place as follows:

| | |
|---|---|
| Date: | October 19, 2020 (with bids to be taken starting on October 14, 2020) |
| Time: | 11:00 a.m. (New York time) |
| Place: | Virtual |

Greg Corbin of Rosewood Realty Group ("**Broker**") has been engaged by the Secured Party, and Broker will be commencing the marketing of the Collateral. Contact information for the Broker is as follows: Direct: 212.359.9904; greg@rosewoodrg.com. Secured Party shall conduct the Sale pursuant to section 9-610 of the Uniform Commercial Code of the State of New York and the Pledge Agreements. The sale shall be conducted upon the terms set forth in the Terms of Public Sale attached hereto as Exhibit A (the "**Terms of Public Sale**") which are incorporated by reference herein.

2

2.   Reservation of Rights

Secured Party reserves the right to cancel the sale in its entirety, or to adjourn the sale to a future date or to amend the Terms of Public Sale, in each case without notice to Mezzanine Borrower or any other party.

Nothing contained herein shall be construed as a modification of any of the Loan Documents or as a waiver of any delinquency, breach, Default or Event of Default under the Loan Documents, at law or in equity, or as a waiver, modification or limitation of any of rights or remedies of the Mezzanine Lender, all of which are hereby expressly reserved. Any actions, omissions or forbearance by the Mezzanine Lender in the exercise of any such rights and remedies shall not constitute a waiver of such rights or any other rights and shall not be deemed to establish a course of conduct nor justify an expectation by the Mezzanine Borrower, or Guarantors that the Mezzanine Lender will take any further action or continue to not take any action and will not preclude the Mezzanine Lender from exercising any and all remedies available at any time thereafter. The Mezzanine Lender may exercise each right and remedy available to it from time to time and as often and in such order as it may determine in its sole discretion, and the exercise or beginning of the exercise of any such right or remedy shall not be construed as a waiver of the right to exercise at the same time or thereafter any other right or remedy available to it.

There may be other Defaults or Events of Default that are not identified in this letter and that may currently exist under the Loan Documents. The Mezzanine Lender is expressly not waiving any Defaults or Events of Default whether or not they are identified herein.

Mezzanine Borrower and/or Guarantor shall be liable for any indebtedness and/or other amounts which may be due to Secured Party after the application of the proceeds of such sale to the extent permitted by applicable law and the Loan Documents (and with respect to Guarantor, to the extent provided in the Guaranties).

3. Debtor's Right to an Accounting

**MEZZANINE BORROWER IS ENTITLED TO AN ACCOUNTING OF THE UNPAID INDEBTEDNESS SECURED BY THE COLLATERAL. YOU MAY REQUEST AN ACCOUNTING AT NO CHARGE BY CALLING SECURED PARTY'S REPRESENTATIVE, JEREMY EISEN OR ELI TABAK at (212) 991-6604.**

**THIS NOTICE, WHICH IS GIVEN MORE THAN TEN (10) DAYS IN ADVANCE OF THE DATE OF PUBLIC SALE IS THE ONLY PRIOR NOTICE OF THE SALE OF THE COLLATERAL THAT YOU WILL RECEIVE (OTHER THAN PUBLIC ADVERTISEMENT OF THIS SALE).**

3

      This Notice of Disposition of Collateral is being delivered pursuant to Section 9-611 of the Uniform Commercial Code as in effect in the State of New York.

Yours truly,

159 BROADWAY MEZZ LLC

By: _____
Eli Tabak, Authorized Signatory

cc:    159 Broadway Member LLC
       75 Huntington Street
       Brooklyn, New York 11231
       Attn: Yitzchok Hager

       Jeffrey Zwick & Associates
       266 Broadway, Suite 403
       Brooklyn, New York 11211
       Attn: Jeffrey Zwick, Esq.

       Yitzchok Hager
       75 Huntington Street
       Brooklyn, New York 11231

       Shifra Hager
       75 Huntington Street
       Brooklyn, New York 11231

       159 Broadway 1 LLC
       520 Madison Avenue
       Suite 3501
       New York, New York 10022

       VIA FEDERAL EXPRESS

       Jerry Feuerstein, Esq.(via email)

4

# EXHIBIT A

# TERMS OF PUBLIC SALE

Pursuant to Article 9 of the Uniform Commercial Code of the State of New York, and the terms of that certain Ownership Interests Pledge And Security Agreement made as of November 1, 2019 (the "**Pledge Agreement**")*,* executed by 159 Broadway Member LLC ("**Mezzanine Borrower**"), in favor of 159 Broadway Mezz LLC (hereafter, the "Secured Party"), **on October 19, 2020, at 11:00 a.m. New York Time,** Secured Party will offer for sale to the highest Qualified Bidder, as defined below, one hundred percent (100%) of the limited liability company interest of Mezzanine Borrower in WB Bridge Hotel LLC, a New York limited liability company, the owner of that certain real property located at 159 Broadway, Brooklyn, New York 11211 (Block: 02457, Lot: 34) (the "**Property**"). Capitalized terms used in this notice and not defined herein shall have the meanings ascribed to them in the loan documents.

The public auction will be conducted remotely by Mannion Auctions, LLC; William Mannion, Licensed Auctioneer, NYC DCA Lic. No. 796322 and/or Matthew Mannion, Licensed Auctioneer, NYC DCA Lic. No. 1434494. Instructions for participating in the auction remotely shall be provided to all Qualified Bidders. The following are the Terms of Public Sale.

The Collateral will be conveyed on an "AS IS AND WHERE IS BASIS", with all faults, AND (i) WITHOUT ANY REPRESENTATIONS OR WARRANTIES (WHETHER EXPRESSED OR IMPLIED) OF ANY KIND MADE BY SECURED PARTY (OR ANY OTHER PERSON ACTING FOR OR ON BEHALF OF SECURED PARTY), INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO THE EXISTENCE OR NONEXISTENCE OF OTHER LIENS, THE QUANTITY, QUALITY, CONDITION OR DESCRIPTION OF THE INTERESTS, THE PROPERTY, AND/OR THE VALUE OF ANY OF THE FOREGOING, AND (ii) WITHOUT ANY RECOURSE WHATSOEVER AGAINST SECURED PARTY (OR ANY OTHER PERSON ACTING FOR OR ON BEHALF OF SECURED PARTY). Without limiting the foregoing, any purchaser must purchase the Collateral subject to the terms of the governing documents of the Mortgage Borrower (including its limited liability company agreement). Prospective bidders are hereby advised that (a) although Secured Party has provided access to certain information regarding the Mezzanine Borrower, Mortgage Borrower and/or the Collateral on an online data site, there is no assurance that Secured Party does not have information that it is contractually or legally prohibited from providing to potential bidders due to restrictions in confidentiality agreements or otherwise, or that it has disclosed all information in its possession relating to the Mezzanine Borrower, the Mortgage Borrower, the Collateral or the Property, and (b) Secured Party may be in possession of information which prospective bidders may not have. It shall be the sole responsibility of the successful bidder, and not that of the Secured Party, to obtain a new membership interest certificate evidencing the transfer of ownership of the Collateral to the purchaser.

Only the bids of a Qualified Bidder will be considered by the Secured Party. In order for a prospective bidder (other than the Secured Party) to be a Qualified Bidder and eligible to tender a bid, the prospective bidder must meet certain "**Eligibility Requirements**" and be

1

a person/entity which is an "**Acceptable Transferee**" and a "**Qualified Transferee**" under that certain Subordination and Intercreditor Agreement dated June 18, 2019 (the "Intercreditor Agreement"), which requires, among other things, that such person/entity (i) have a minimum net worth of $85,000,000.00 and liquid assets of $2,000,000.00; (ii) is regularly engaged in the business of making or owning commercial real estate loans (including mezzanine loans that are secured by pledges of direct or indirect ownership interests in the owners of such commercial properties); and (iii) has not been the subject of a bankruptcy proceeding in the last ten (10) years.

Additionally, to be a "Qualified Bidder," a prospective bidder must, prior to the sale, provide to the Secured Party a letter from a nationally recognized major bank, regulated and operating in the United States and subject to the anti-money laundering regime of the United States, stating that (a) it has a relationship with the prospective bidder and has had such for at least two years prior thereto, (b) the prospective bidder is in good standing with it, (c) it has obtained satisfactory evidence of the identity of the prospective bidder in accordance with applicable anti-money laundering requirements, (d) it will provide a copy of the evidence of the identity of the prospective bidder upon request, (e) it is not aware that the prospective bidder has been found to be or has been suspected of activity that would presently constitute a money laundering offence, and (f) it is compliant with the anti-money laundering requirements of the United States.

Upon the execution of a standard confidentiality and non-disclosure agreement, available from Greg Corbin of Rosewood Realty Group Advisors, Inc. ("Broker") (212-359-9904; greg@rosewoodrg.com), the Secured Party will provide prospective bidders access to an online datasite that contains relevant information that Secured Party possesses concerning the Mezzanine Borrower and the Collateral, including copies of the Mezzanine Loan Agreement and the Pledge Agreements, the Intercreditor Agreement, and other related documents and information in Secured Party's possession (collectively, the **"Transaction Documents"**). Certain additional documentation may be made available to Qualified Bidders from time to time. Qualified Bidders are encouraged to review all Transaction Documents and perform such due diligence as they deem necessary in advance of the date of the public sale. The information provided on the online datasite shall not constitute a representation or warranty of any kind with respect to such information, the Collateral or the public sale.

Inspection of the Property can be arranged with Mr. Corbin.

The Mezzanine Loan is subordinate to a senior mortgage loan in the original principal amount of Twenty-One Million Three Hundred Fifty Thousand and 00/100 Dollars ($21,350,000.00) and a certain Junior mortgage in the original principal amount of Three Million Five Hundred Thousand and 00/100 Dollars ($3,500,000.00), which loan matured on July 1, 2020. Mezzanine Lender also is advised that the senior mortgage is in default and that Senior Lender has accelerated the sums due under the senior mortgage loan. The Collateral is also being sold subject to the governing documents of the Mortgage Borrower (including the respective operating agreement). Each Qualified Bidder will be required to represent in writing that either (i) intends to obtain the consent of Senior Lender to acquire the Pledged Entity as required by the Loan Documents or (ii) will repay the

senior mortgage loan simultaneous with the closing of the sale of the Collateral, and indicating which of option (i) or (ii) it elects to pursue.

Pre-registration is required. To pre-register, please contact Mannion Auctions LLC at (212) 267-6698. The pre-registration deadline is **Tuesday September 30, 2020, by 5:00 p.m.** New York Time. Mannion Auctions, LLC will notify pre-registered bidders if they are a Qualified Bidder by October 7, 2020. Any Qualified Bidder may tender a bid to Mannion Auctions, LLC, between October 14, 2020 and October 16, 2020, via an online bidding App by Mannion Auctions, LLC, which will be available for download in the App Store or on Google play and via desktop bidding. Additional information will be provided by Mannion Auctions, LLC to Qualified Bidders. Each bid must be accompanied by a wire transfer deposit of at least ten (10%) percent of the amount of the bid, which deposit will be held in escrow by Seyfarth Shaw LLP, and which deposit will be returned to the prospective bidder only if the prospective bidder is not the successful bidder. For wire transfer instructions, contact Jerry A. Montag, Esq., Seyfarth Shaw LLP; tel: (212) 218-5598; e-mail: jmontag@seyfarth.com.

The Collateral is an unregistered security under the Securities Act of 1933 (the "33 Act"). Because of this, and the fact that the Collateral is being sold as a single unit, to be a Qualified Bidder, the prospective bidder must, no later than the sale, provide to the Secured Party a letter (the "33 Act Letter"), in form and substance satisfactory to the Secured Party in its sole and absolute discretion, representing: (i) that it is purchasing the Collateral for its own account and not with a view to distribution thereof; (ii) that the Collateral will not be resold or transferred or otherwise hypothecated by the prospective bidder without the prior registration in accordance with the 33 Act and applicable state blue sky laws or unless an exemption from such registration under the 33 Act or applicable state blue sky laws is available; (iii) that it possesses sufficient business experience to evaluate the risk of purchasing the Collateral; and (iv) that it has sufficient financial means to afford the risk of the investment. Each such Qualified Bidder must execute and deliver to Secured Party a written certification (the "Securities Certification") in the form of Exhibit A attached hereto. A Qualified Bidder may, depending on the answers provided in the Securities Certification, be required to confirm to Secured Party (and its counsel) that (i) its purchase of the Collateral is in compliance with all applicable federal and state laws and (ii) it can comply with the certifications set forth in the Securities Certification relating to such bidder's ability to qualify as a Qualified Transferee and to meet the Eligibility Requirements (as defined and set forth in the Intercreditor Agreement). Each Qualified Bidder, must deliver the fully completed, signed Securities Certification to Secured Party's counsel, Jerry A. Montag of Seyfarth Shaw LLP, by October 9, 2020, at 5:00 p.m., TIME BEING OF THE ESSENCE WITH RESPECT TO SUCH DELIVERY (delivery of such Securities Certification shall be made hereunder by email transmission to jmontag@seyfarth.com).

The entire amount of the successful bid will be due and payable by the successful by wire transfer within ten (10) days of the conclusion of the public auction sale on October 19, 2020, failing which the Secured Party will be entitled to the deposit held in escrow by Seyfarth Shaw LLP.

3

The Secured Party reserves the right to (a) reject all bids and terminate the sale or adjourn the sale to such other date and time as the Secured Party may deem proper, by announcement at the place and on the date of sale, and any subsequent adjournment thereof, without further publication, and (b) impose any other commercially reasonable conditions upon the sale of the Collateral as the Secured Party may deem proper. If the successful bidder fails to pay the balance of the successful bid, the Deposit will be forfeited to Secured Party as its liquidated damages and the Collateral, at Secured Party's option, will be sold to the next highest bidder. If Secured Party is unable for any reason to consummate the sale of the Collateral to a successful bidder at the public sale, its sole obligation to the successful bidder shall be the return of the principal amount of the bidder's Deposit.

Secured Party reserves the right to bid at the time and place of the public auction, to become the purchaser of the Collateral and to credit bid against the purchase price of the Collateral any and all indebtedness of the Mezzanine Borrower. In the event the Secured Party is the successful bidder, it shall not be required to deposit any cash prior to or at the time of the public auction and, to the extent its bid exceeds the amount of the indebtedness of the Debtor to it, the excess of the amount bid over the amount of such indebtedness shall be due and payable within ten (10) days of the conclusion of the public auction.

If a bidder other than Secured Party is the highest Qualified Bidder for the Collateral, Secured Party reserves the right to designate a back-up bidder. If the highest Qualified Bidder does not timely fund the entire balance of the purchase price as set forth in the above, Secured Party may, at its election, notify the designated back-up bidder (if any) having bid the next highest bid in excess of the bid (if any) made by Secured Party within three (3) business days after the October 15, 2020 sale date (the "Back-Up Bidder Notice"), and such back-up bidder shall be obligated, within one (1) business day of receiving the Back-Up Bidder Notice from Secured Party, to execute and deliver a confirmation of sale in a form to be provided by Secured Party and deliver the Deposit to Secured Party pursuant to the wire instructions attached hereto as Exhibit B. If a back-up bidder (other than Secured Party) is ultimately selected as the winning bidder for the Collateral, the back-up bidder will be required to pay the balance of the purchase price for the Collateral to be purchased by the back-up bidder by wire transfer within seven (7) business days after delivery of the Back-Up Bidder Notice from Secured Party to the back-up bidder, TIME BEING OF THE ESSENCE. The sale of the Collateral to a back-up bidder will otherwise be consummated on the same terms as applicable to the successful bidder at the public auction. If the back-up bidder for the Collateral is Secured Party, then the foregoing requirements will not apply and payment for the Collateral may be made by applying the amounts due under the Mezzanine Loan against the winning bid amount.

If this public sale is challenged or is overturned by a court or administrative decree, the successful purchaser agrees that no claim or liability whatsoever does or shall exist as to or against the Secured Party, Seyfarth Shaw LLP, Greg Corbin, Rosewood Realty Group, Matthew Mannion, William Mannion or Mannion Auctions, LLC for any loss associated herein and the successful bidder specifically waives any such claim or liability.

65333219v.1 / 072356-000018

The successful bidder shall be responsible for any and all real property transfer taxes imposed in connection with the sale, which amounts shall be a separate responsibility of the purchaser in addition to the bid amount.

The successful bidder will be required to execute a Memorandum of Sale in the form provided below at the time the bid is accepted.

## MEMORANDUM OF SALE

I/We have this ___ day of October 2020, purchased the Pledged Interests described in the annexed printed advertisement of sale for the sum of $_____ DOLLARS and hereby promise and agree to comply with the terms and conditions of the sale of said Pledged Interests, as above mentioned and set forth.

**SUCCESSFUL BIDDER**                                    SEYFARTH SHAW LLP
                                                        *Attorneys for Secured Party*

By:_____          By:_____
  Name:                                              Name:  Jerry A. Montag
  Title:


By:_____
  Name:  Matthew Mannion
  Title:  Auctioneer

(if the Successful Bidder is the Secured Party)          SEYFARTH SHAW LLP
TEN PERCENT DEPOSIT WAIVED:                              *Attorneys for Secured Party*


                                                        By:_____
                                                          Name:

65333219v.1 / 072356-000018

## **EXHIBIT A**

Form of Securities Certification

SECURITIES CERTIFICATION

Re:   The right, title and interest of 159 Broadway Member LLC, a New York limited liability company, in WB Bridge Hotel LLC, the owner of that certain real property located at 159 Broadway, Brooklyn, New York 11211 (Block: 02457, Lot: 34), together with certain related rights and property relating thereto, the "Collateral")

Ladies and Gentlemen:

The undersigned has indicated that it is interested in bidding on the Collateral, which will be auctioned in accordance with the Terms of Public Sale issued by Secured Party (the "Terms of Public Sale"). Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Terms of Public Sale. This letter constitutes the Securities Certification referenced in the Terms of Public Sale.

With the understanding that Secured Party will rely upon the representations made in this Securities Certification in connection with the sale of the Collateral, the undersigned (the "Bidder") hereby certifies to Secured Party as follows:

1. The Bidder is acquiring the Collateral for investment purposes, solely for the Bidder's own account and not with a view to distribution or resale of the Collateral;

2. The Bidder has sufficient knowledge and experience in financial and business matters so as to be capable of evaluating the merits and risks of investment and has sufficient financial means to afford the risk of investment in the Collateral;

3. The Bidder will not resell or otherwise hypothecate the Collateral without a valid registration under applicable federal or state laws, including, without limitation, the Securities Act of 1933, as amended, or an available exemption therefrom;

4. The Bidder's purchase of the Collateral will be in compliance with all applicable federal and state laws;

5. The Bidder shall participate in the public auction telephonically or by video in accordance with the instructions provided for such participation;

6. The Bidder represents and agrees that, if it is the winning bidder at the auction sale of the Collateral, it will be able to satisfy and will satisfy the applicable requirements of the Intercreditor Agreement; and

65333219v.1 / 072356-000018

7. The Bidder is or will be on the closing of the sale a Qualified Transferee (as defined in the Intercreditor Agreement). If the Bidder is certifying that it is or will be a Qualified Transferee, please describe below how the Bidder meets or intends to meet the requirement to be a Qualified Transferee (including, if applicable, a description of how the Bidder meets the Eligibility Requirements (as defined in the Intercreditor Agreement)).

The Bidder acknowledges and agrees that the certifications contained in this Securities Certification may be, and are being, relied upon by Secured Party and its successors and assigns, and that said certifications shall be binding upon the Bidder and its successors and assigns.

The Bidder hereby agrees to indemnify and hold harmless Secured Party from and against any claim and/or out-of-pocket loss, liability or expense (including, without limitation, attorney's fees) resulting from or based on any misrepresentation or inaccuracy in the certifications and information contained in this Securities Certification that is provided by the Bidder (including any attachments or supplements to this Securities Certification provided by the Bidder).

Execution and delivery of this Securities Certification electronically shall be and constitutes an original for all purposes.

IN WITNESS WHEREOF, the Bidder has caused this Securities Certification to be duly executed and delivered.

BIDDER:

_____

By: _____
Name:
Title:

# **EXHIBIT B**

**Account Name**:             Seyfarth Shaw LLP NY IOLA Attorney Special Account

**ABA Routing Number**:   121000248

**Account Number**:          8469482999

**Financial Institution**:     Wells Fargo Bank
                               150 East 42nd Street, 35th Floor
                               New York, NY 10017

**Account Type**:              NON-Interest Bearing

**Swift Code**:                WFBIUS6S

**CHIP Code**:                 0407

## **IMPORTANT NOTICE**

## **WIRE FRAUD & EMAIL HACKS ARE ON THE RISE:**

**You must call and verify wire transfer instructions prior to initiating any wire transfer. Failure to confirm the wiring instructions could put your funds at risk.**

**Seyfarth Shaw LLP assumes no responsibility and/or liability in connection with any wire that may be misdirected by cyber criminals.**