ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.
875 Third Avenue, 9th Floor
New York, New York 10022
Fred B. Ringel
Steven B. Eichel
*Attorneys for the Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

In re:

**WB BRIDGE HOTEL LLC and
159 BROADWAY MEMBER LLC,**

Debtors.
------------------------------------------------------X

Chapter 11

Case No.: 20-23288 (RDD) and
   20-23289 (RDD)
(Jointly Administered)

**DEBTORS' REPLY TO SECURED CREDITOR 159 BROADWAY MEZZ LLC'S OBJECTION TO DEBTORS' MOTION FOR ENTRY OF ORDER EXTENDING EXCLUSIVE RIGHT TO FILE A PLAN OF REORGANIZATION AND TO SOLICIT ACCEPTANCES TO THEIR PLAN AND FOR RELATED RELIEF**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

   The above-captioned debtors and debtors-in-possession (each a Debtor and collectively, the "Debtors") respectfully state the following in support of their reply ("Reply") to the secured creditor 159 Broadway Mezz LLC's ("Mezzanine Lender") objection ("Objection") to the Debtors' Motion for Entry of Order Extending Exclusive Right to File a Plan of Reorganization and to Solicit Acceptances to their Plan and for Related Relief ("Motion").

{01105695.DOCX;1 }

## Preliminary Statement

1. The Mezzanine Lender objects to the Debtors' Motion on three grounds. The Mezzanine Lender claims that: (i) the Debtors failed to provide affirmative evidence in support of the Motion, (ii) the Debtors failed to establish cause for the requested relief, and (iii) the relief sought by the Debtors cannot be obtained through use of a notice of presentment.

2. The Objection should be overruled because (i) the facts previously provided to the Court in the Motion are now set forth in the form of an evidentiary submission from David Goldwasser. *See*, Declaration of David Goldwasser in Support of the Debtors' Reply, dated June 4, 2021 ("Goldwasser Declaration"), filed along with this reply. The Goldwasser Declaration provides evidentiary support for the Motion by setting forth the facts which establish cause for the requested extension of the Debtors exclusive right to file a plan of reorganization to and including August 18, 2021, and solicit acceptances thereto through and including October 19, 2021 (collectively, the "Exclusive Periods"). This reply also demonstrated that bankruptcy courts in the Southern District, including this Court, routinely grant motions to extend a debtor's exclusive periods sought utilizing a notice of presentment. There is absolutely no prejudice to the Mezz Lender through the use of this procedural device. Indeed, an objection to the notice of a presented order triggers a hearing on the objection, satisfying the requirement that an exclusivity extension order can be entered "after notice and a hearing" under section

1121(d) of the Bankruptcy Code. As a result, the Court should overrule the Objection and grant the Debtors' Motion extending the Exclusive Periods.

## Background

3. 159 Broadway Hotel LLC ("159 Broadway") is the 100% owner of the membership interests of WB Bridge Hotel LLC ("WB Bridge"). WB Bridge, in turn, owns the real property and improvements located at 159 Broadway, Brooklyn, New York ("Property"). WB Bridge acquired the Property for $28 million in November 2019. Goldwasser Declaration at ¶2.

4. Before filing the Debtors' bankruptcy cases, the Debtors were developing the Property into a 26-story, 130,154 square foot mixed-use development featuring an 87,818 full-service hotel and 25,286 square foot residential space. The hotel will feature 235 rooms and have a restaurant, two bars, and a pool with a pool terrace. Residential space will feature 21 units. The Property will also have 6,290 square feet of retail space on the ground floor and a 1,768 square foot party space. Construction started in January 2018, and as of the filing of this declaration, construction is about 15% completed with the foundation having been poured. Goldwasser Declaration at ¶3.

5. With the onset of the COVID-19 pandemic, the Debtors could not consensually restructure their existing financial obligations. Subsequently, 159 Broadway's Mezzanine Lender scheduled a UCC sale of 159 Broadway's membership interests in WB Bridge Hotel LLC for December 21, 2020. To preserve

the Debtors' assets to benefit their creditors and their estates, the Debtors commenced these chapter 11 cases before the date of the scheduled UCC sale. The Debtors believe the re-opening of the New York economy presents a turning point in the hospitality industry and will permit a development project like this an opportunity to secure new investment or other financings it could not procure during the depth of the pandemic. Goldwasser Declaration at ¶4.

6.  On December 21, 2020 ("Petition Date"), the Debtors filed separate voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Together with their petitions for relief, the Debtors have filed their schedules of assets and liabilities and lists of creditors and executory contracts required under section 521 of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules. Goldwasser Declaration at ¶5.

7.  On February 10, 2021, the Office of the United States Trustee appointed an official committee of unsecured creditors ("Committee") in this case consisting of three creditors, Weylin Seymour LLC, RA Engineering LLP, and Sam Maintenance Service Inc. The Committee has selected Silverman Acampora LLP as its counsel. Goldwasser Declaration at ¶6.

8.  On March 12, 2021, the Debtors requested court approval to establish bar dates for filing proofs of claim in these chapter 11 cases. On that same date, an order setting a claims bar date for April 21, 2021, was entered. Goldwasser Declaration at ¶7.

## Argument

### I. The Debtors Have Demonstrated Cause to Extend their Exclusive Periods

9. Section 1121(d)(1) of the Bankruptcy Code permits a court to extend a debtor's exclusivity "for cause." Although the Bankruptcy Code does not define "cause," the legislative history shows the term should be viewed flexibly "in order to allow the debtor to reach an agreement." H.R. Rep. 95, 95th Cong., 1st Sess. 232 (1997); *see also In re Ames Dep't Stores Inc.*, 1991 WL 259036 at *3 (S.D.N.Y. Nov. 25, 1991) ("The purpose of the Bankruptcy Code's exclusivity period is to allow the debtor flexibility to negotiate with its creditors.").

10. Courts often use these factors in determining whether "cause" extends a debtor's exclusive plan filing period:

    a. the size and complexity of the case;

    b. the need for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

    c. whether the debtor has made progress in negotiations with its creditors;

    d. the existence of good faith progress toward reorganization;

    e. whether the debtor is seeking to extend exclusivity to pressure creditors to accede to the debtor's reorganization demands;

    f. whether the debtor has demonstrated reasonable prospects for filing a viable plan;

    g. the fact that the debtor is paying its bills as they become due;

{01105695.DOCX;1 }

5

      h.      the amount of time which has elapsed in the case; or

      i.      whether an unresolved contingency exists.

*See, e.g.*, *In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006) (denying motion to terminate exclusivity based on factors for cause); *see In re Quality Inns Int'l, Inc. v. L.B.H. Associates Ltd. P'Ship*, 911 F.2d 724 at *2 (4th Cir. 1990) (affirming the bankruptcy court's grant of an exclusivity extension based on four of the above factors: (a) the debtor was involved in protracted litigation; (b) the case was complex; (c) the debtor had been making every effort to rehabilitate itself; and (d) there was a promise of success); *In re Fountain Powerboat Indus., Inc.*, No. 09-07132-8-RDD, 2009 WL 4738202, at *3 (Bankr. E.D.N.C. Dec. 4, 2009) (utilizing the nine-factor test used in other cases, including *Adelphia,* because "the Court has found no Fourth Circuit cases that have considered this issue").

    11.    Not all factors are relevant to every case, and the existence of even one of the above-listed factors may be enough to extend a debtor's exclusivity periods. *See, e.g.*, *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (listing all nine factors later outlined in *Adelphia* but relying on only four as relevant in determining whether there was "cause" to extend exclusivity). Moreover, courts regularly grant a debtor's first request for an extension of the debtor's exclusive period to file a chapter 11 plan. *See In re Apex Pharm., Inc.*, 203 B.R. 432, 441 (N.D. Ind. 1996) ("It is true that during the initial 120-day period in which debtors have an exclusive right to file a plan of reorganization . . . the bankruptcy

courts apply a lesser standard in determining whether the burden of showing 'a reasonable possibility of a successful reorganization within a reasonable time' has been satisfied.") (internal citation omitted); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 825 (Bankr. S.D.N.Y. 2011) (same).

12. The Mezzanine Lender asserts that the Debtors' arguments in their Motion are too vague and non-specific to establish cause to extend their exclusive periods. Objection at ¶10. It contends (i) the statements regarding the Debtors' progress is merely a summary and too conclusory, (ii) the cases are not complex, (iii) there is no evidence of Debtors' efforts to explore alternative paths toward reorganization, and (iv) the Debtors' secured lenders have not been apprised of the Debtors' efforts.[1]

13. Although the Debtors believe that the Motion provided sufficient information for the Court to grant the Motion, by this Reply, the Debtors provide more detail in support of the Motion and certain additional recent information that establishes the Debtors' good faith progress toward confirming a plan of reorganization. The Debtors submit that they satisfy factors "(a)" through "(g)," which militate toward granting the relief requested.

14. For example, the Debtor's cases are large, having about $28 million in funded debt, and their organizational structure is two-tiered. 159 Broadway is the 100% owner of WB Bridge, which owns the Property. Goldwasser Declaration at ¶7.

---

As for the statement in paragraph 12 of the Motion that "the Debtor's secured lenders have been apprised of the Debtor's efforts to date", the Debtors reference to secured lenders referred to the senior secured lender 159 Broadway I LLC, not the Mezzanine Lender. [David to confirm]

15. The following loans were incurred in connection with the acquisition of the Property:

   a. The senior loan of $21,350,000.00 was originated on 11/1/2019 by 159 Broadway 1 LLC (an entity affiliated with Madison Realty Capital) and is secured by the Property ("Senior Loan"). The Senior Loan had a term of nine months, with a maturity date of July 1, 2020. The borrower is WB Bridge, with Yitzchok Hager and Shifra Hager as guarantors on the Senior Loan.
   b. The building loan of $2,280,998.31 was originated on 11/1/2019 by 159 Broadway 1 LLC and is secured by the Property ("Building Loan"). The Building Loan had a term of nine months, with a maturity date of July 1, 2020. The borrower is WB Bridge, with Yitzchok Hager and Shifra Hager as guarantors on the Building Loan.
   c. The project loan of $369,011.69 was originated on 11/1/2019 by 159 Broadway 1 LLC and is secured by the Property ("Project Loan"). The Project Loan had a term of nine months, with a maturity date of July 1, 2020. The borrower is WB Bridge, with Yitzchok Hager and Shifra Hager as guarantors on the Project Loan.
   d. The junior loan of $3,500,000.00 was originated on 11/1/2019 by 159 Broadway Mezz LLC (an entity affiliated with Bluestone Group), which is secured by a pledge of ownership interests in WB Bridge ("Junior Loan"). The Junior Loan had a term of nine months, with a maturity date of July 1, 2020. The borrower is WB Bridge, with Yitzchok Hager and Shifra Hager as guarantors on the Junior Loan.
   e. The mezzanine loan of $100,000.00 was originated on 11/1/2019 by 159 Broadway Mezz LLC and is secured by a pledge of ownership interests in 159 Broadway in WB Bridge ("Mezz Loan"). The Mezz Loan had a term of nine months, with a maturity date of July 1, 2020. The borrower is 159 Broadway, with Yitzchok Hager and Shifra Hager as guarantors on the Mezz Loan.

Goldwasser Declaration at ¶9. *See In re SE Boston Hotel Venture, LLC*, Case No. 10-14535-JNF, 2011 WL 1675085, at *3 ("The Debtors' cases are complicated due to the amount of secured and cross-collateralized debt. . .").

16. Since the Petition Date, the Debtors have made substantial progress,

first preparing their Schedules and Statement of Financial Affairs ("SOFAs") for each Debtor. The Debtors reviewed and analyzed prepetition transactions within 90 days of filing the bankruptcy cases and within one year of the cases for insiders. The Debtors also arranged for the transition of their bank accounts to newly established debtor in possession bank accounts to ensure compliance with the United States Trustee operating guidelines. The Debtors also reviewed all of their insurance policies to ensure the proper coverages were in force. The Debtors have filed the monthly operating reports for 159 Broadway and WB Bridge through April 2021. Goldwasser Declaration at ¶11.

17.    The Debtors continue to believe that the Property is a viable development project with significant upside potential with a current estimated value of approximately $65 million and have spent their time since filing determining the best way in the current economic environment to carve a pathway towards reorganization Goldwasser Declaration at ¶11.

18.    As the financial markets have improved, the Debtors now have a chance to seek new capital to exit from bankruptcy. To accomplish this goal, the Debtors contacted several potential new equity partners and new lenders to ascertain the availability of replacement financing or to locate a new joint venture partner to complete the Property development. If the Debtor cannot fund a plan based on a combination of replacement financing or a capital infusion from new equity or joint venture partner, the Debtors will pivot towards a sale process under

a plan. To accomplish this goal, the Debtors are in the final stages of retaining Teneo Capital LLC as its investment banker, to conduct the search for refinancing, or to obtain a joint venture partner and Rosewood Realty Group to test the market for a potential sale. Goldwasser Declaration at ¶15.

19. No matter how the Mezzanine Lender may view this case, a hospitality development project filed in late December 2020 due to a UCC sale scheduled by the Mezzanine Lender cannot be divorced from the pandemic and the devastating impact it has had on the hospitality industry. The Mezzanine Lender should not benefit from forcing the Debtor to file at that time. Economies were shut down virtually overnight, and travel, stay-at-home orders, and restrictions on travel and mobility made hospitality one of the most challenged areas of the economy during the pandemic. The effect on the availability of capital for a hotel development project was even more challenging. Investors looking at the sharp declines in occupancy levels and hotel revenue found projects such as Debtors challenging to make.

20. The recent reopening of the economy and the easing of restrictions along with the country's effective vaccine program have put Debtor's case effectively back at the starting line. The Debtor needs an extension of exclusivity because while it has had some time in chapter 11, which it has utilized to comply with its administrative mandates, it finds itself in a business environment now where its opportunities for funding for the construction of its already approved hotel project,

which would generate monies to satisfy substantially all claims of its creditors, is a realistic possibility. The pandemic was an unresolved contingency that was retarding the Debtor's ability to move forward with its reorganization. The Debtor believes that with the retention of an investment banker in an improving economic environment, it will be able to accelerate its efforts towards a reorganization.

21. Continued exclusivity will permit the Debtors to maintain flexibility, so competing plans do not derail the restructuring process. Extending the Exclusivity Periods will benefit the Debtors' estates, their creditors, and all other key parties in interest. Goldwasser Declaration at ¶13

22. This is the Debtors' first request for an extension of the Exclusivity Periods. In just five and one-half months and amid a global pandemic, the Debtors have continued to work diligently toward emergence from this case. The short time that the Debtors have spent in chapter 11 to date warrants extending the Exclusivity Periods. The Debtors are not seeking an extension of the Exclusivity Periods to pressure or prejudice any of their stakeholders. On the contrary, given the recent re-opening of the economy in New York City, the Debtors have not had a realistic chance to pursue new capital until recently. Goldwasser Declaration at ¶15.

23. Thus, the Debtors respectfully submit that they have shown sufficient "cause" to extend their exclusive right to file a plan of reorganization to and including August 18, 2021, and if the Debtors file a plan of reorganization on or

before that date, to extend their right to solicit acceptances to their proposed plan of reorganization to and including October 19, 2021. The Debtors and their stakeholders may realize the benefits of the substantial progress made to date and avoid the risks of any competing plan proposals.

## II. The Debtors Submission of the Motion by Notice of Presentment is Not A Basis to Deny the Motion.

24. The Mezz Lender contends that the Motion should be denied because it was inappropriate to present it to the Court by a notice of presentment rather than a notice of motion. This objection should be overruled for two reasons. First, section 1121(d) permits the court to extend the Debtors Exclusive Periods "…on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing…" 1121(d)(1). Bankruptcy Code section 102(1)(A) states that the term "after notice and a hearing" means after such notice as is appropriate in the particular circumstances and an opportunity for a hearing as is appropriate in the particular circumstances and authorizes an act without a hearing if notice is given and no party objects. The Mezzanine Lender provides no rationale why the Debtors should be compelled to waste their limited resources scheduling a hearing in the event no party had objected, mainly where the procedure it followed provided for a hearing in the event there was an objection, which was the case here. Simply put, there is no prejudice to the Mezzanine Lender, as it has filed its Objection, and there will be a hearing on it.

25. Second, the Bankruptcy Courts in this district routinely enter orders extending the exclusive periods based on a notice of presentment. *See, e.g.*, *In re Congregation Achpretvia Tal Chaim Shar Hayushor, Inc.,* Case No. 16-10092, (motion filed on presentment (Doc. 67) and order entered by Judge Wiles (Doc. 71)); *In re Corned Beef Express LLC*, Case No. 16-12096, (motion filed on presentment (Doc 33), order entered by Judge Chapman (Doc. 35)); *In re 444 East 13 LLC,* Case No. 17-23143, (motion filed on presentment (Doc. 16), order entered by Judge Drain (Doc. 23)).

26. Based on the above, the Motion should be granted, and the Objection overruled.

**WHEREFORE**, the Debtors respectfully request that this Court grant the relief sought in the Debtors' motion and enter an order under sections 1121(b), (c)(3), and (d) of the Bankruptcy Code: (i) extending the Debtors' exclusive right to file a plan of reorganization to and including **August 18, 2021;** (ii) and if the Debtors file a plan of reorganization on or before **August 18, 2021,** extending the Debtors' right to solicit acceptances to its proposed plan of reorganization to and including **October 19, 2021**; and (iii) granting to the Debtors such other and further relief as may be just and appropriate.

Dated: New York, New York
       June 4, 2021               **ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C.**
*Attorneys for the Debtors and Debtors in Possession*
875 Third Avenue, 9th Floor
New York, New York 10022
Tel. No.: 212-603-6300

By: /s/ Fred B. Ringel
     **Fred B. Ringel**
     **Steven B. Eichel**