ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.
875 Third Avenue, 9th Floor
New York, New York 10022
Fred B. Ringel
Steven B. Eichel
*Attorneys for the Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

In re:

**WB BRIDGE HOTEL LLC and
159 BROADWAY MEMBER LLC,**

                       Debtors.

---------------------------------------------------------X

Chapter 11

Case No.: 20-23288 (RDD) and
        20-23289 (RDD)
(Jointly Administered)

**DECLARATION OF DAVID GOLDWASSER IN SUPPORT OF DEBTORS' REPLY TO SECURED CREDITOR 159 BROADWAY MEZZ LLC'S OBJECTION TO DEBTORS' MOTION FOR ENTRY OF ORDER EXTENDING EXCLUSIVE RIGHT TO FILE A PLAN OF REORGANIZATION AND TO SOLICIT ACCEPTANCES TO THEIR PLAN AND FOR RELATED RELIEF**

       **David Goldwasser** declares under penalty of perjury that these statements are true and correct:

       1.       I am the managing member of GC Realty Advisors, LLC, the manager of WB Bridge Hotel LLC ("WB Bridge") and 159 Broadway Member LLC ("159 Broadway" and defined together with WB Bridge, as the "Debtors"). I am thoroughly familiar with the facts set forth below.

{01104555.DOCX;5 }

2.   159 Broadway is the 100% owner of the membership interests of WB Bridge. WB Bridge, in turn, owns the real property and improvements located at 159 Broadway, Brooklyn, New York ("Property"). WB Bridge acquired the Property for $28 million in November 2017.

3.   Before filing the Debtors' bankruptcy cases, the Debtors were developing the Property into a 26-story, 130,154 square foot mixed-use development featuring an 87,818 full-service hotel and 25,286 square foot residential space. The hotel will feature 235 rooms and have a restaurant, two bars, and a pool with a pool terrace. The residential space will feature 21 units. The Property will also have 6,290 square feet of retail space on the ground floor and a 1,768 square foot party space. Construction started in January 2018, and as of the filing of this declaration, construction is about 15% completed with the foundation having been poured.

4.   With the interest reserves for the loan expiring, the Debtors were in talks with its senior lender about issuing a construction loan to refinance all the current outstanding loan obligations. The Debtors had also secured a term sheet for a $100 million construction loan from a new lender. But with the onset of the COVID-19 pandemic, the Debtors could not reach agreement to consensually restructure their existing financial obligations or move forward with the term sheet. Later, 159 Broadway's mezzanine lender scheduled a UCC sale of 159 Broadway's membership interests in WB Bridge Hotel LLC for December 21, 2020. To preserve the Debtors' assets to benefit their creditors and their estates, the Debtors

{01104555.DOCX;5 }

2

commenced these chapter 11 cases before the UCC sale took place. The Debtors believe the difficult times in the hospitality market and, particularly for development projects like this, will turn around with the re-opening of the New York City economy. As a result, the intrinsic value of the property, benefitting from its prime Williamsburg location in an Opportunity Zone, would permit the Debtors to promulgate a successful plan of reorganization.

5.      On December 21, 2020 ("Petition Date"), the Debtors filed separate voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Together with their petitions for relief, the Debtors have filed their schedules of assets and liabilities and lists of creditors and executory contracts required under section 521 of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules. The Court has approved joint administration of these two cases.

6.      On February 10, 2021, the Office of the United States Trustee appointed an offical committee of unsecured creditors ("Committee") in this case consisting of three creditors, Weylin Seymour LLC, RA Engineering LLP and Sam Maintenance Service Inc. The Committee has selected Silverman Acampora LLP as its counsel.

7.      On March 12, 2021, the Debtors requested court approval to establish bar dates for filing proofs of claim in these chapter 11 cases. On that same date. the Court entered an order establishing April 21, 2021 as the last day for filing claims in this case.

8. The Debtor's cases are substantial, having nearly $28 million in funded debt. As for their organizational structure, 159 Broadway is the 100% member and therefore sole the owner of WB Bridge. WB Bridge is the sole owner of the Property.

9. The $28 million in funded obligations loans were incurred in connection with the acquisition of the Property:

   a. The senior loan of $21,350,000.00 was originated on 11/1/2019 by 159 Broadway 1 LLC (an entity affiliated with Madison Realty Capital) and is secured by the Property ("Senior Loan"). The Senior Loan had a term of nine months, with a maturity date of July 1, 2020. The borrower is WB Bridge, with Yitzchok Hager and Shifra Hager as guarantors on the Senior Loan.

   b. The building loan of $2,280,998.31 was originated on 11/1/2019 by 159 Broadway 1 LLC and is secured by the Property ("Building Loan"). The Building Loan had a term of nine months, with a maturity date of July 1, 2020. The borrower is WB Bridge, with Yitzchok Hager and Shifra Hager as guarantors on the Building Loan.

   c. The project loan of $369,011.69 originated on 11/1/2019 by 159 Broadway 1 LLC and is secured by the Property ("Project Loan"). The Project Loan had a term of nine months, with a maturity date

of July 1, 2020. The borrower is WB Bridge, with Yitzchok Hager and Shifra Hager as guarantors on the Project Loan.

    d. The junior loan of $3,500,000.00 was originated on 11/1/2019 by 159 Broadway Mezz LLC (an entity affiliated with Bluestone Group), which is secured by a pledge of ownership interests in WB Bridge ("Junior Loan"). The Junior Loan had a term of nine months, with a maturity date of July 1, 2020. The borrower is WB Bridge, with Yitzchok Hager and Shifra Hager as guarantors on the Junior Loan.

    e. The mezzanine loan of $100,000.00 originated on 11/1/2019 by 159 Broadway Mezz LLC, secured by a pledge of ownership interests in 159 Broadway in WB Bridge ("Mezz Loan"). The Mezz Loan had a term of nine months, with a maturity date of July 1, 2020. The borrower is 159 Broadway, with Yitzchok Hager and Shifra Hager as guarantors on the Mezz Loan.

10.     The Debtors' secured creditors are sophisticated lenders who are active in the New York real estate lending market.

11.     Since the Petition Date, the Debtors have made substantial progress in the8ir cases, first preparing their Schedules and Statement of Financial Affairs ("SOFAs") for each Debtor. The Debtors reviewed and analyzed prepetition transactions within 90 days of filing the bankruptcy cases and within one year of

the cases for insiders. The Debtors arranged for the transition of their bank accounts to newly established debtor in possession bank accounts to ensure compliance with the United States Trustee operating guidelines. The Debtors reviewed all their insurance coverages to ensure that proper coverage was in place. The Debtors have filed the monthly operating reports for 159 Broadway and WB Bridge through April 2021.

12. The Debtors have regularly communicated with their Unsecured creditor's committee and responded to their requests for information.

13. The Debtors continue to believe that the Property is an extremely valuable asset and a viable development project with significant upside potential (as their current estimate as of its market value is approximately $65 million) and have spent their time since the bankruptcy filings determining the best way in the current economic environment to exploit that value and turn it into a plan of reorganization that benefits all classes of claims and equity interests in these cases.

14. As the financial markets have started to improve, the Debtors now have opportunities seek new capital to exit from bankruptcy that did not exist during the 12 to 14 months at the height of the pandemic in this country. To accomplish its goals, the Debtors have begun to contact potential new equity partners and new lenders to determine the availability of replacement financing or new joint venture partners to complete the development of the Property. In the unlikely event the Debtors' efforts to locate new capital or replacement financing

(including construction financing) do not succeed, the Debtors will pivot towards a sale process under a plan.

15.     Thus, the Debtors are in the final stages of retaining Teneo Capital LLC ("Teneo") as its investment banker, to conduct the search for refinancing, or to obtain a joint venture partner and Rosewood Realty Group to test the market for a potential sale.

16.     Continued exclusivity will permit the Debtors to maintain flexibility, so competing plans do not derail the nascent efforts towards a restructuring. The Debtor believes that its efforts to seek new capital or financing will be substantially impeded if exclusivity is terminated and another party in interest files a plan which seeks to take the case in a different direction. Extending the Exclusivity Periods will benefit the Debtors' estates, their creditors, and all other key parties in interest.

17.     This is the Debtors' first request for an extension of the Exclusivity Periods. In six months, the Debtor's case has been pending, amid a global pandemic, the Debtors have continued to work diligently towards emergence, but they have been working uphill against a difficult economic environment for development projects in the hospitality industry. The short time that the Debtors have spent in chapter 11 to date warrants extending the Exclusivity Periods. The Debtors are not seeking an extension of the Exclusivity Periods to pressure or prejudice any of their stakeholders. On the contrary, given the recent re-opening of

the economy in New York City, the Debtors have not had a realistic chance to pursue new capital until now. The Debtors proposed a modest extension of exclusivity to give them additional time work to work with an investment banker on a restructuring of their debt obligations or obtain a new capital infusion from third parties without the distraction and confusion that competing plans would create.

18.     Thus, the Debtors respectfully submit that they have shown sufficient "cause" to extend their exclusive right to file a plan of reorganization to and including August 18, 2021, and if the Debtors file a plan of reorganization on or before that date, to extend their right to solicit acceptances to their proposed plan of reorganization to and including October 19, 2021.

Under 28 U.S.C. §1746, I declare under penalty of perjury that these statements are true and correct.

Dated:  June 4, 2021
        New York, New York


                                          /s/ David Goldwasser
                                         David Goldwasser