**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

In re:                                           Chapter 11

**WB BRIDGE HOTEL LLC and 159**          Case No.:  20-23288 (RDD)
**BROADWAY MEMBER LLC,**

                                                 Jointly Administered

                              Debtors.
-----------------------------------------------------------X


#### 159 BROADWAY 1 LLC'S FIRST AMENDED DISCLOSURE STATEMENT FOR FIRST AMENDED PLAN OF LIQUIDATION FOR DEBTORS


                              **KRISS & FEUERSTEIN LLP**
                              360 Lexington Avenue, Suite 1200
                              New York, NY 10017
                              (212) 661-2900
                              Jerold C. Feuerstein, Esq.
                              Daniel N. Zinman, Esq.
                              Stuart L. Kossar, Esq.

                              *Attorneys for 159 Broadway 1 LLC*


Dated:   New York, New York
         May 11, 2022

The secured creditor 159 Broadway 1 LLC (the "Secured Creditor" or the "Proponent") have filed its First Amended Plan of Liquidation (the "Plan") for Debtors WB Bridge Hotel LLC ("WB Bridge") and 159 Broadway Member LLC ("159 Broadway Member" and, together with WB Bridge, the "Debtors"),[1] the above captioned debtors and debtor-in-possessions with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). This First Amended Disclosure Statement for the Proponent's First Amended Plan of Liquidation for the Debtors (the "Disclosure Statement") is being submitted for the approval of the Bankruptcy Court for use in connection with the Plan filed to sell substantially all of the assets of the estate of the Debtors pursuant to Section 1125 of Title 11 of the United States Code (the "Bankruptcy Code").

A copy of the Plan accompanies this Disclosure Statement. A glossary of terms frequently used in this Disclosure Statement is set forth in Article 1 of the Plan.

**The Proponent believes that Confirmation of the Plan is in the best interests of all the Debtors' creditors.**

### SUMMARY OF THE PLAN

The Debtors' exclusive period to file and solicit a plan expired on November 24, 2021 and January 24, 2022, respectively. To date, the Debtors have been unable to raise sufficient financing to fund a reorganization. Consequently, the next logical step was for the Proponent to file the Plan, which provides for the liquidation of the Debtors by liquidating the real property and improvements thereon, commonly known as and located at 159 Broadway, Brooklyn, New York 11211 (Block 2457, Lots 34 and 9039) and owned by WB Bridge (the "Property"), and use the proceeds from the sale to pay Claims, as more fully described below and in the Plan.

The Debtors have already engaged Rosewood Realty Group (the "Broker") as their real estate advisor and it shall market and auction the Property and the Property Causes of Action (the "Sale") pursuant to 11 U.S.C. §§ 363, 1123(a)(5)(D), and 1123(b)(4) to obtain the highest and best price, in accordance with the applicable provisions of the Bankruptcy Code. The Sale shall be conducted following confirmation of the Plan, but subject to certain conditions set forth in detail herein below and in the Plan. Bid Procedures are attached hereto as **Exhibit A**.

In the event that the Available Cash on the Effective Date is insufficient to provide creditors of the Debtors' estates with the distributions required to be made on the Effective Date, any shortfall will be funded by the Proponent (by either reducing the distribution to be made on account of the 159 Broadway 1 Secured Claim as more fully described below, or through Cash to be provided the Proponent) with any such shortfall funding constituting an administrative claim against the Debtors' estates payable from Cash after the Effective Date.

---

[1] All capitalized terms not defined herein shall have the definition set forth in the Plan.

The table below provides a summary of the classification and treatment of Claims and Interests under the Plan. The figures set forth in the table below represents the Proponent's best estimate of the total amount of Claims and Interests filed or scheduled in this Case. These estimates have been developed by the Proponent based on its own research, the Court's Claims Register, the Debtors' Schedules and certain other documents of public record. Although the Proponent believes that the amounts of the Claims set forth below are substantially correct, there can be no assurance that Claims and Interests will be allowed by the Bankruptcy Court in the amounts set forth below:

| Class | Claim/Interest | Treatment of Claim/Interest | Estimated Amount of Allowed Claims or Interests[2] | Estimated % Distribution on Claims/Interest |
|---|---|---|---|---|
| 1 | WB Bridge Other Secured Claims | Unimpaired | $0 | 100% |
| 2 | 159 Broadway 1 Secured Claim | Impaired | Unknown[3] | Unknown |
| 3 | 159 Broadway Mezz WB Bridge Secured Claim | Impaired | Unknown | Unknown |
| 4 | WB Bridge Priority Claims | Impaired | $0 | Unknown |
| 5 | WB Bridge General Unsecured Claims | Impaired | $9,333,160.26 | Approx. 3.75% or more[4] |

[2] The amounts set forth in this schedule are not and should not be deemed admissions by the Proponent as to the validity or amount of any claim and Proponent reserves all rights to object to any claim in this case. The amounts listed in this column as to claims assumes all filed claims are allowed and includes such filed claims along with scheduled claims to the extent there is not a corresponding proof of claim. Claims (other than the 159 Broadway 1 Claim) could be the subject of objections, which, if granted, would increase the estimates provided herein of recoveries to holders of Allowed Claims.

[3] As more fully described below, the Claims in these Classes shall be an amount to be determined through the distribution of the net proceeds of the Sale of the Debtors' Property, in priority order, with Class 2 being paid in full and then Class 3 being paid full, in each case inclusive of post-petition interest at the rate set forth in the applicable note, together with fees and costs. Thus, the amount of these Secured Claims shall be determined based on the net proceeds of the Sale of the Property. As per the applicable proofs of claim, as of the Petition Date, 159 Broadway 1 has asserted a Claim of $28,773,710.16 and 159 Broadway Mezz has asserted a Claim of $4,543,048.61.

[4] Under section 4.5 of the Plan, if the Proponent is the Successful Bidder based on a credit bid, the Proponent will provide a distribution of $350,000 to holders of Claims in Class 5 other than the 159 Broadway 1 Unsecured Claim; provided, however, that all funds to be distributed on the Effective Date to this Class shall be transferred to the Creditor Trust. All future distributions to this Class shall be made by the Creditor Trust. This amount provides an approximate floor of a 3.75% distribution based on the estimated amount of claims in this class. The Class is also entitled to additional distributions once senior Classes are paid in full, however, the Proponent believes that this is

3

| Class | Claim/Interest | Treatment of Claim/Interest | Estimated Amount of Allowed Claims or Interests[2] | Estimated % Distribution on Claims/Interest |
|---|---|---|---|---|
| 6 | 159 Member Other Secured Claims | Unimpaired | $0 | 100% |
| 7 | 159 Broadway Mezz 159 Member Secured Claim | Impaired | $0 | Unknown |
| 8 | 159 Member Priority Claims | Impaired | $0 | Unknown |
| 9 | 159 Member General Unsecured Claims | Impaired | $8,354,250.14 | Unknown |
| 10 | Interests in 159 Member | Unimpaired | n/a | Unknown |

## CONFIRMATION OF THE PLAN

Pursuant to Section 1128 of the Bankruptcy Code, the Bankruptcy Court has scheduled a combined hearing (the "Confirmation Hearing") to consider approval of this Disclosure Statement and Confirmation of the Plan, **on June 14, 2022 at 10:00 a.m., prevailing eastern time, in the United States Bankruptcy Court for the Southern District of New York, United States Bankruptcy Court, 300 Quarropas Street, White Plains, NY 10601** (although the hearing may take place remotely due to the COVID crisis).  The Bankruptcy Court has directed that objections, if any, to the Confirmation of the Plan be filed and served **on or before June 7, 2022 at 5:00 p.m. (prevailing eastern time)**.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129(a) of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan.  The Proponent intends to seek Confirmation of the Plan. **The Proponent believes that the Plan will satisfy all applicable requirements of Section 1129(a) of the Bankruptcy Code**.  Confirmation makes the Plan binding upon the Debtors, their Interest Holders, all Creditors, and other parties regardless of whether they have objected to the Plan.  If an impaired Class votes against the Plan, the Proponent intends on seeking confirmation under Section 1129(b) of the Bankruptcy Code, which the Proponent believes will be satisfied.

---

unlikely to occur.  In addition, to the extent that objections that may be filed to Claims in this Class are successful in reducing the overall amount of Claims in this Class, the distribution percentage provided to such Claims would increase.

4858-3941-7361, v. 4

As of the Effective Date, all holders of Claims or Interests will be precluded from asserting any Claim against the Proponent, the Debtors, or the Debtors' assets or Property or other interests in the Debtors based on any transaction or other activity of any kind that occurred before the Confirmation Date except as otherwise provided in the Plan.

### VOTING INSTRUCTIONS AND CONFIRMATION OF PLAN

### A. Manner of Voting on Plan

Before voting, this Disclosure Statement as well as the Plan, should be read in its entirety. You should only use the Ballot sent to you with this Disclosure Statement, if any, to cast your vote for or against the Plan.

If you hold a Claim in Classes 2, 3, 4, 5, 6, 7, 8, and 9, or an interest in Class 10, included in the package of materials forwarded to you along with this Disclosure Statement and the Plan, is a ballot for your acceptance or rejection of the Plan. You should complete, date and sign your ballot and return it to Kriss & Feuerstein LLP, 360 Lexington Ave, Suite 1200, New York, New York 10017, Attn: Daniel N. Zinman, Esq. and Stuart L. Kossar, Esq., attorneys for the Proponent.  All ballots must be **received** prior to **5:00 P.M. on June 7, 2022**.  A copy of the form of the ballots are annexed hereto as Exhibit B.

### B. Claim Holders Entitled to Vote

Under the Bankruptcy Code, any holders of Claims in Classes that are "impaired" under the Plan are entitled to vote to accept or reject the Plan, unless such Class neither receives nor retains any property under the Plan (in which case such Class is deemed to have rejected the Plan). Bankruptcy Code Section 1124 provides generally that a Class is impaired if the legal, equitable or contractual rights of the Claims or Interests in that Class are altered.

Subject to the exceptions provided below, any holder whose Claim is impaired under the Plan is entitled to vote if either (i) its Claim has been scheduled one of the Debtors and such Claim is not scheduled as disputed, contingent or unliquidated; or (ii) such Claim holder has filed a proof of Claim which is not otherwise a Disputed Claim.

A holder of a Disputed Claim is not entitled to vote on the Plan unless such Claim is temporarily allowed by the Proponent or by an order of the Bankruptcy Court in an estimated amount which it deems proper for the purpose of voting to accept or reject the Plan.  In other words, only holders of Allowed Claims in impaired classes may vote to accept or reject the Plan. A Claim to which an objection has been filed or a Claim (i) which is listed on the Debtors' Schedules as disputed, unliquidated or contingent; and (ii) with respect to which a superseding proof of Claim has not been filed, is not an Allowed Claim for voting purposes, unless the Claim is settled by agreement, the Court allows the Claim (in whole or in part) by Final.  Upon request of a party-in-interest, the Court may temporarily allow or estimate a Disputed Claim for the purpose of voting on the Plan.  Ballots cast in respect of claims other than Allowed Claims will

5

not be counted.  In addition, a vote may be disregarded if the Bankruptcy Court determines that the acceptance or rejection of the Plan by the Creditor is not solicited or procured in good faith, or in accordance with the provisions of the Bankruptcy Code.

### C. Classes Not Impaired Under the Plan

Claims by Holders in Class 1 (WB Bridge Other Secured Claims) and equity interests in Class 10 (Equity Interests) pursuant to Section 1124 of the Bankruptcy Code are unimpaired under the Plan and therefore not entitled to vote on the Plan.

### D. Classes Impaired Under the Plan

Claims by Holders in Classes 2, 3, 4, 5, 6, 7, 8 and 9 are impaired under the Plan and are eligible, subject to the limitations set forth above, to vote to accept or reject the Plan.  Any controversy as to whether any Claim or Class of Claims is impaired under the Plan shall, after notice of any hearing, be determined by the Bankruptcy Court.

### E. Vote Required for Class Acceptance

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a Class of impaired Claims as acceptance by at least two-thirds (2/3) in dollar amount and more than one half (1/2) in number of holders of Allowed Claims in that Class who cast ballots.

Section 1126(d) of the Bankruptcy Code defines acceptance of a plan by a class of Interest holders as acceptance by holders of at least two-thirds (2/3) in amount of the allowed interests of such class who cast ballots.

If there are no votes in a class, the Proponent intends on seeking a ruling by the Bankrupcy Court that such class will have been deemed to accept the Plan.

### NOTICE TO HOLDERS OF CLAIMS AND INTERESTS

This Disclosure Statement is being furnished by the Proponent to the Debtors' known creditors pursuant to Section 1125(b) of the Bankruptcy Code.  The Plan has been filed with the Bankruptcy Court and is incorporated herein by reference.  Parties in interest may view the Plan on the internet at http://www.nyeb.uscourts.gov.[5]

The purpose of this Disclosure Statement is to enable you, as a Creditor to make an informed decision in exercising your right to consider whether to object to the Plan, and, if applicable, whether to vote for or against the Plan.

---

[5] A password is necessary for access to view documents on the Internet.

4858-3941-7361, v. 4

The historical information concerning the Debtors has been prepared using certain filings made with the Bankruptcy Court. The estimates of Claims and Interests set forth herein may vary from the final amounts of Claims or Interests allowed by the Bankruptcy Court. However, the Plan provides for the allowance of the Proponent's Claim in the amount of $28,773,710.16, plus interest from the Petition Date at the default rate specified in the notes underlying the Proponent's Claim and applicable fees and charges, though the amount of such claim that is a 159 Broadway 1 Secured Claim will depend on the results of the sale process.

Notwithstanding any provision of the Plan to the contrary, definitions and descriptions contained herein respecting pre-Petition documents, agreements, or claims are provided solely for the purpose of identification and classification thereof and do not constitute an admission by the Proponent of the existence, validity, allowance, or amount of any such claim, document or agreement. The Proponent expressly reserves the right to challenge the existence, validity, allowance, or amount of any such claim, document or agreement.

This Disclosure Statement contains a summary of certain provisions of the Plan and the transactions contemplated thereunder, as well as descriptions of certain other related documents.

While the Proponent believes that these summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents. Reference is made to the Plan and the documents referred to herein and therein for a complete statement of the terms and provisions thereof. In the event of any inconsistency between the terms of the Plan and this Disclosure Statement, the terms of the Plan shall be controlling. In reviewing the Plan and this Disclosure Statement, the reader should give special attention to "RISK FACTORS." No statements or information concerning the Debtors or their assets, results of business operations or financial condition are authorized by the Proponent, other than as set forth in this Disclosure Statement, its exhibit(s) and the Plan.

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified herein. The delivery of this Disclosure Statement shall not create, under any circumstances, an implication that there has been no change in the facts set forth herein since the date hereof.

This Disclosure Statement is intended for the sole use of Creditors and Interest Holders to be informed about the Plan. Each holder of a Claim or Interest should review this Disclosure Statement, its exhibit(s) and the Plan. Holders of Claims or Interests are urged to consult with their own legal and financial advisors.

No solicitation of votes to accept or reject the Plan may be made except pursuant to this Disclosure Statement and Section 1125 of the Bankruptcy Code. No Person has been authorized to use or promulgate any information concerning the Debtors or their business or the Plan, other than the information contained in this Disclosure Statement and the exhibits hereto. You should not rely on any information relating to the Debtors or their business or the Plan other than that contained in this Disclosure Statement and the exhibits hereto.

7

**BACKGROUND**

**THE DEBTORS AND THEIR PROPERTY**

The Debtor WB Bridge business consists of ownership and operating of the Property. The Debtor 159 Member business is owning the Debtor WB Bridge. Both Debtors are managed by GC Realty Advisors, LLC ("GC Realty"), which has an address of 3284 N. 29th Court, Hollywood, Florida 33020. The Property is an undeveloped property located at 159 Broadway, Brooklyn, New York, though the Debtors claim that certain preliminary work has been done to prepare the Property for construction.

**THE PROPONENT & THE LOAN**

    The Land Loan

On or about June 18, 2019, WB Bridge executed, acknowledged and delivered to 159 Broadway 1 a Consolidated, Amended and Restated Note (the "Land Loan Note"), in the original principal amount of $21,350,000.00 (the "Land Loan"). As security for the Land Loan Note, WB Bridge on or about that same date executed, acknowledged and delivered to the lender (159 Broadway 1 or its predecessor) (the "Lender"), as mortgagee, a certain Consolidated, Amended and Restated Mortgage and Security Agreement (the "Land Loan Mortgage"), pursuant to which WB Bridge mortgaged the Property to 159 Broadway 1, which mortgage consolidated, amended and modified certain previously existing mortgage(s). The Land Loan Mortgage was duly recorded in the office of the recording of mortgages in Brooklyn, New York, on or about July 6, 2019, bearing CRFN No. 2019000210728.

As further security for the indebtedness of the Land Loan Note, on or about June 18, 2019, Yitzchok Hager and Shifra Hager (collectively, the "Guarantor"), jointly, severally, individually, duly executed, acknowledged and delivered to Lender, a certain Guaranty (the "Land Loan Guaranty"), wherein the Guarantor, absolutely and unconditionally guaranteed the performance and repayment of all sums due under the Land Loan. To further induce Lender, on or about June 18, 2019, Guarantor, jointly, severally, individually, duly executed, acknowledged and delivered to Lender, a certain Debt Service and Carry Guaranty (the "Land Loan Debt Service Guaranty"), wherein the Guarantor, unconditionally guaranteed the performance and repayment of all costs incurred in connection with the operation, maintenance and management of the Property. To further induce Lender, on or about June 18, 2019, Guarantor, jointly, severally, individually, duly executed, acknowledged, and delivered to Lender, a certain Conditional Guaranty (the "Land Loan Conditional Guaranty"), wherein the Guarantor, unconditionally guaranteed the performance and repayment of certain losses incurred by the Lender.

To further induce Lender, on or about June 18, 2019, Guarantor, jointly, severally, individually, duly executed, acknowledged and delivered to Lender, that certain Guaranty of

8

Completion (the "Land Loan Guaranty of Completion"), wherein Guarantor, absolutely and unconditionally guaranteed the performance by WB Bridge of all the terms and provisions of the Land Loan pertaining to WB Bridge's obligations.

On or about November 1, 2019, WB Bridge and Lender agreed to amend the Land Loan Note pursuant to that certain First Amendment to Consolidated, Amended and Restated Note (the "Amendment to Land Loan Note" and, together with the Land Loan Note, Land Loan Mortgage, Land Loan Guaranty, Land Loan Conditional Guaranty, Land Loan Debt Service Guaranty, Land Loan Completion Guaranty, and all other documents and/or agreements that were executed and/or delivered in connection with the Land Loan, the "Land Loan Documents").

The Building Loan

On or about November 1, 2019, WB Bridge executed, acknowledged and delivered to 159 Broadway 1 a certain Building Loan Note (the "Building Loan Note"), in the original principal amount of $2,280,998.31 (the "Building Loan").  As security for the Building Loan Note, WB Bridge on or about that same date executed, acknowledged and delivered to Lender, as mortgagee, a certain Building Loan Mortgage (the "Building Loan Mortgage"), pursuant to which WB Bridge mortgaged the Property to 159 Broadway 1.  The Building Loan Mortgage was duly recorded in the office of the recording of mortgages in Brooklyn, New York, on or about November 15, 2019, bearing CRFN No. 2019000373427.

In further connection with the Building Loan, on or about November 1, 2019, WB Bridge, duly acknowledged and delivered to 159 Broadway 1 that certain Building Loan Agreement in the amount of $2,280,998.31 (the "Building Loan Agreement").  Said Building Loan Agreement was docketed on November 8, 2019 as Control No.: 003907289-01.

As further security for the indebtedness of the Building Loan Note, on or about November 1, 2019, the Guarantor, jointly, severally, individually, duly executed, acknowledged and delivered to 159 Broadway 1, a certain Guaranty (the "Building Loan Guaranty"), wherein the Guarantor, absolutely and unconditionally guaranteed the performance and repayment of all sums due under the Building Loan.  To further induce 159 Broadway 1, on or about November 1, 2019, Guarantor, jointly, severally, individually, duly executed, acknowledged and delivered to 159 Broadway 1, a certain Conditional Guaranty (the "Building Loan Conditional Guaranty"), wherein the Guarantor, unconditionally guaranteed the performance and repayment of certain losses incurred by the 159 Broadway 1.  To further induce Lender, on or about November 1, 2019, Guarantor, jointly, severally, individually, duly executed, acknowledged and delivered to Lender, a certain Debt Service and Carry Guaranty (the "Building Loan Debt Service Guaranty"), wherein the Guarantor, unconditionally guaranteed the performance and repayment of all costs incurred in connection with the operation, maintenance and management of the Property.  To further induce Lender, on or about November 1, 2019, Guarantor, jointly, severally, individually, duly executed, acknowledged and delivered to Lender, that certain Guaranty of Completion (the "Building Loan Guaranty of Completion" and, together with the Building Loan Note, Building Loan Mortgage, Building Loan Agreement, Building Loan

9

Guaranty, Building Loan Conditional Guaranty, Building Loan Debt Service Guaranty, and all other documents and/or agreements that were executed and/or delivered in connection with the Building Loan, the "Building Loan Documents"), wherein Guarantor, absolutely and unconditionally guaranteed the performance by WB Bridge of all the terms and provisions of the Building Loan pertaining to WB Bridge's obligations.

The Project Loan

On or about November 1, 2019, WB Bridge executed, acknowledged and delivered to 159 Broadway 1 a certain Project Loan Note (the "Project Loan Note") in the original principal amount of $369,001.69 (the "Project Loan"). As security for the Project Loan Note, WB Bridge on or about that same date executed, acknowledged and delivered to Lender, as mortgagee, a certain Project Loan Mortgage (the "Project Loan Mortgage"), pursuant to which WB Bridge mortgaged the Property to 159 Broadway 1. The Project Loan Mortgage was duly recorded in the office of the recording of mortgages in Brooklyn, New York, on or about November 15, 2019, bearing CRFN No. 2019000373430. In further connection with the Project Loan, on or about November 1, 2019, the WB Bridge, duly acknowledged and delivered to Lender that certain Project Loan Agreement in the amount of $369,001.69 (the "Project Loan Agreement" and, together with the Project Loan Note, the Project Loan Mortgage and all other documents and/or agreements that were executed and/or delivered in connection with the Project Loan, the "Project Loan Documents").

**THE DEFAULT AND FORECLOSURE ACTION**

WB Bridge defaulted under the Land Loan Documents, the Building Loan Documents and the Project Loan Documents by, among other things: (i) failing to pay the real estate taxes due on January 1, 2020 and July 1, 2020; and (ii) failing to pay the monthly interest payment due on April 1, 2020 and every subsequent payment thereafter, in accordance with the terms of the Land Loan Documents. In addition, the Land Loan, the Building Loan and the Project Loan's maturity date of July 1, 2020 has come and gone and no repayment of the Loans has been made, which is a further default under the applicable Loan Documents.

On or about July 29, 2020, 159 Broadway 1 filed a summons and complaint seeking, among other things, a judgment of foreclosure and sale in an action entitled *159 Broadway 1 LLC v. WB Bridge Hotel LLC, et al.,* Index No. 513660/2020 (the "Foreclosure Action") in the New York State Supreme Court for Kings County (the "State Court"). On or about September 4, 2020 and September 18, 2020, answers were filed by Sub Enterprises Inc. and Simpson Gumpertz & Heger Inc. ("Simpson"), respectively, in the Foreclosure Action. Simpson also had a third party claim against WB Bridge and Cornell Realty Management LLC. On or about August 31, 2021, the State Court entered an order granting a default judgment against WB Bridge and Cornell Realty Management LLC.

**THE DEBTORS' BANKRUPTCY FILING**

On December 21, 2020 (the "Petition Date"), the Debtors WB Bridge, under Case No. 20-23288, and 159 Broadway Member, under Case No. 20-23289, filed petitions (the "Petitions") for Chapter 11 bankruptcy relief before this Court, which was executed by GC Realty, as manager of the Debtors.

## SIGNIFICANT POST-PETITION EVENTS IN THIS CHAPTER 11 CASE

### THE PETITION AND SCHEDULES

WB Bridge, in its Schedules (including Amended Schedules), identifies eight secured creditors and sixty four unsecured creditors. To date, sixteen creditors have filed proofs of claim. 159 Broadway Member, in its Schedules, identifies one secured creditor and seven unsecured creditors. To date, there are outstanding proofs of claim by 159 Broadway Mezz.

A Section 341 Meeting of Creditors was held on March 9, 2021.

### JOINT ADMINISTRATION

On December 30, 2020, the Debtors filed a motion for joint administration of their cases [ECF No. 9]. An order granting this motion and designating that WB Bridge case as the lead case was entered on January 4, 2021.

### RETENTION OF DEBTORS' COUNSEL

On January 23, 2021, Robinson Brog Leinwand Green Genovese & Gluck P.C. filed an application to be retained as Debtors' counsel [ECF No. 23], which was amended on March 12, 2021 [ECF No. 43], to be retained as Debtors' counsel. On or about March 19, 2021, this Court entered an order granting the application [ECF No. 49].

### OPERATING REPORTS

As of the date hereof, the Debtors have filed monthly operating reports for January 2021 through January 2022 [ECF Nos. 40, 41, 46, 47, 53, 54, 63, 64, 74, 75, 84, 85, 97, 98, 107-115 and 117-120].

### BAR DATE

In accordance with the requirements of Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, the Debtors filed their Schedules of assets and liabilities, including schedules of all of its known creditors and the amounts and priorities of the Claims the Debtors believe are owed to such creditors. On March 15, 2021, the Bankruptcy Court entered an Order (the "Bar Date Order") [ECF No. 45] fixing April 21, 2021 as the last date for filing any and all

11

non-governmental claims in this matter and June 21, 2021 for claims by governmental units (the "Bar Date").

The Plan provides that the Proponent may file and serve any objection to any Claim or Interest at any time, but in no event after the Effective Date for Claims that are otherwise entitled to payment on the Effective Date or, for all Claims that are otherwise entitled to payment after the Effective Date, the later to occur of (i) ninety (90) days following the Effective Date; or (ii) sixty (60) days after the date proof of such Claim or Interest or a request for payment of such Claim is filed with the Bankruptcy Court, unless the time is extended by the Bankruptcy Court.

## THE CREDITORS COMMITTEE

On or about February 10, 2021, the U.S. Trustee filed an appointment for the Official Committee of Unsecured Creditors (the "Creditors' Committee") [ECF No. 26]. On or about February 22, 2021, Silverman Acampora LLP filed an application to be employed as counsel to the Creditors' Committee [ECF No. 35]. To date, no order on such application has been entered.

## THE EXPIRATION OF THE EXCLUSIVE PERIOD

On or about June 25, 2021, this Court entered an order [ECF No. 81] extending the exclusive periods to file and solicit acceptances to a chapter 11 plan to August 18, 2021 and October 19, 2021, respectively. On or about September 21, 2021, this Court entered an order [ECF No. 103] further extending such periods to November 24, 2021 and January 24, 2022, respectively. On or about November 24, 2021, the Debtors filed a chapter 11 plan, but have not, to date, filed any disclosure statement for such plan. Accordingly, the Debtors' exclusive periods to file and solicit a chapter 11 plan have expired.

4858-3941-7361, v. 4

## SUMMARY OF THE PLAN

The following summary of the terms of the Plan is qualified in its entirety by reference to the provisions of the Plan, a copy of which accompanies this Disclosure Statement, and which is incorporated herein by reference.

The Proponent submits that the treatment of Creditors under the Plan is the same or better than the treatment Creditors would receive if the Chapter 11 Case were converted to a Chapter 7. Therefore, the Proponent submits that the Plan is in the best interests of the Creditors and the Proponent recommends acceptance of the Plan by holders of Claims in all Classes.

## THE PROPOSED SALE

The Plan provides for the liquidation of the Debtors by selling the Debtors' only material asset, the Property (along with the Property Causes of Action), to generate proceeds to pay Allowed Claims of the Debtors' estates as more fully described herein and in the Plan.

The Proponent intends to sell the Property (and the Property Causes of Action) to obtain its highest and best price, in accordance with applicable provisions of the Bankruptcy Code. The closing of the Sale shall take place following the Auction in accordance with the Bid Procedures. In summary, the Broker will market the Property (and the Property Causes of Action) and conduct an Auction following confirmation and the lifting of the moratorium at which the Proponent will be entitled, within its discretion, to submit a credit bid in the Allowed amount of the 159 Broadway 1 Claim. The Closing shall take place after the Auction.

The winning bidder at the auction (the "Successful Bidder") shall take title to the Property (and the Property Causes of Action) free and clear of all liens, claims and encumbrances pursuant to Sections 363(f) and 1123(a)(5) of the Bankruptcy Code, except that at the Successful Bidder's discretion, the Successful Bidder may take the Property subject to the Proponent's mortgage.

In the event that the Available Cash on the Effective Date is insufficient to provide creditors of the Debtors' estates with the distributions required to be made on the Effective Date, any shortfall will be funded by the Proponent by either reducing the distribution to be made on account of the 159 Broadway 1 Secured Claim in Class 2, or through Cash to be provided by the Proponent with any such shortfall funding constituting an administrative claim against the Debtors' estates payable from Available Cash after the Effective Date (but not from distributions made from the Creditor Trust).

Upon completion of the Sale, Kriss & Feuerstein LLP, the Proponent's Disbursing Agent, shall be authorized to execute any and all documents necessary to effectuate the conveyance of the Property (and the Property Causes of Action) in accordance with the terms of the Plan, including without limitation, Bargain and Sale Deeds with Covenants, a Bills of Sale and all

4858-3941-7361, v. 4

required transfer tax returns and ACRIS documents. Furthermore, on the Effective Date, the Debtors will provide the Successful Bidder, or its nominee, with an assignment and assumption of all unexpired leases or executory contracts that are subject of an Assumption Notice at the Property.

**Classification of Claims and Interests**

Classification of claims is governed, in part, by Sections 1122 and 1123(a) of the Bankruptcy Code. 11 U.S.C. § 1123(a) requires that a plan designate classes of claims, requires that the plan specify the treatment of any impaired class of claims, and requires that the plan provide the same treatment for each claim of a particular class, unless the holder of a claim receiving less favorable treatment consents to such treatment. 11 U.S.C. § 1123(a)(1), (3) and (4). 11 U.S.C. § 1122(a) of the Bankruptcy Code provides, subject to an exception for administrative convenience, that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."

Article 3 of the Plan classifies the various Claims against and Interests in the Debtors into five (5) classes of Claims and one (1) class of Interests:

| | | |
|---|---|---|
| **Class 1** - | **WB Bridge Other Secured Claims** | |
| **Class 2** - | **159 Broadway 1 Secured Claim** | |
| **Class 3** - | **159 Broadway Mezz WB Bridge Secured Claim** | |
| **Class 4** - | **WB Bridge Priority Claims** | |
| **Class 5** - | **WB Bridge General Unsecured Claims** | |
| **Class 6** - | **159 Member Other Secured Claims** | |
| **Class 7** - | **159 Broadway Mezz 159 Member Secured Claim** | |
| **Class 8** - | **159 Member Priority Claims** | |
| **Class 9** - | **159 Member General Unsecured Claims** | |
| **Class 10** - | **Interests in 159 Member** | |

As discussed above, Class 1 and Class 10 are unimpaired under the Plan and holders of claims or interests in such Classes are conclusively deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code and no voting or balloting will be conducted of the creditors or interest holders in such Classes under the Plan. Classes 2, 3, 4, 5, 6, 7, 8, and 9 are impaired under the Plan and holders of claims or interests in such classes will receive a ballot to vote on the Plan. As set forth in Article 2 of the Plan, pursuant to Section 1123(a)(1) of the Bankruptcy Code, certain Administrative Claims against the Debtors have not been classified. See "SUMMARY OF THE PLAN -- Treatment of Non-Classified Claims."

**Class 1 – WB Bridge Other Secured Claims.** Class 1 consists of all Other Secured Claims against WB Bridge (*i.e.*, other than the Secured Claims of 159 Broadway 1 or 159 Broadway Mezz). The WB Bridge Other Secured Claims in Class 1 are not impaired under the Plan.

14

**Class 2 – 159 Broadway 1 Secured Claim**.  Class 2 consists of the 159 Broadway 1 Secured Claim, which comprises the secured portion of the 159 Broadway 1 Claim, which is secured by a first priority security interest in the Property.  The Plan allows the 159 Broadway 1 Claim at $28,773,710.16 as of the Petition Date, plus default interest, fees and costs after the Petition Date.  The amount of the 159 Broadway 1 Secured Claim shall be determined based on the extent to which the 159 Broadway 1 Claim is secured by an interest in the Property, which shall be determined by the amount of net proceeds received from the Sale of the Property. To the extent that the 159 Broadway 1 Claim is not secured by an interest in the Property (which shall be determined by the proceeds received from the Sale of the Property), the resulting unsecured portion of the 159 Broadway 1 Claim shall constitute the 159 Broadway 1 Unsecured Claim, a claim in Class 5. The 159 Broadway 1 Secured Claim is impaired under the Plan.

**Class 3 – 159 Broadway Mezz WB Bridge Secured Claim**.  Class 3 consists of the 159 Broadway Mezz WB Bridge Secured Claim, which comprises the secured portion of the 159 Broadway Mezz Claim as against WB Bridge, which is secured by a security interest in the Property that is subordinate to the 159 Broadway 1 Secured Claim's security interest.  The amount of the 159 Broadway Mezz WB Bridge Secured Claim shall be determined based on the extent to which the 159 Broadway Mezz WB Bridge Claim is secured by an interest in the Property, which shall be determined by the amount of the proceeds received from the Sale of the Property.  To the extent that the 159 Broadway Mezz WB Bridge Claim is not secured by an interest in the Property (which shall be determined by the proceeds received from the Sale of the Property), the resulting unsecured portion of the 159 Broadway Mezz WB Bridge Claim shall constitute the 159 Broadway Mezz WB Bridge Unsecured Claim, a claim in Class 5. The 159 Broadway Mezz WB Bridge Secured Claim is impaired under the Plan.

**Class 4 – WB Bridge Priority Claims**.   Class 4 consists of all WB Bridge Priority Claims against the WB Bridge Estate.  The WB Bridge Priority Claims in Class 4 are impaired under the Plan.

**Class 5 – WB Bridge General Unsecured Claims**.  Class 5 consists of all General Unsecured Claims against WB Bridge. The WB Bridge General Unsecured Claims in Class 5 are impaired under the Plan.

**Class 6 – 159 Member Other Secured Claims**.  Class 1 consists of all Other Secured Claims against 159 Member (*i.e.*, other than the Secured Claim of 159 Broadway Mezz). The 159 Member Other Secured Claims in Class 1 are unimpaired under the Plan.

**Class 7 – 159 Broadway Mezz 159 Member Secured Claim**.  Class 7 consists of the 159 Broadway Mezz 159 Member Secured Claim, which comprises the secured portion of the 159 Broadway Mezz Claim as against 159 Broadway Mezz.  The amount of the 159 Broadway Mezz 159 Member Secured Claim shall be determined based on the extent to which the 159 Broadway Mezz 159 Member Claim is secured by an interest in the property of 159 Member.  To the extent that the 159 Broadway Mezz 159 Member Claim is not secured by an interest in property of 159 Member, the resulting unsecured portion of the 159 Broadway Mezz

15

159 Member Claim shall constitute the 159 Broadway Mezz 159 Member Unsecured Claim, a claim in Class 9. The 159 Broadway Mezz 159 Member Secured Claim is impaired under the Plan.

**Class 8 – 159 Member Priority Claims**.  Class 8 consists of all 159 Member Priority Claims against the 159 Member Estate.  The 159 Member Priority Claims in Class 8 are impaired under the Plan.

**Class 9 – 159 Member General Unsecured Claims**.  Class 9 consists of all General Unsecured Claims against 159 Member. The 159 Member General Unsecured Claims in Class 9 are impaired under the Plan.

**Class 10 – Interests.** Class 10 consists of all Equity Interests in the 159 Member. The Interests in Class 10 are unimpaired under this Plan.

TREATMENT OF CLAIMS AND INTERESTS CLASSIFIED UNDER THE PLAN

Article 4 of the Plan provides for the treatment of Claims classified in Article 3 of the Plan as follows:

**Class 1 – WB Bridge Other Secured Claims.**  The holders of the Allowed Class 1 Other Secured Claims will receive on account of such claims Available Cash sufficient to pay such Claims in full, on the Effective Date or as soon thereafter as is reasonably practicable.

**Class 2 – 159 Broadway 1 Secured Claim**.  The holder of the Allowed Class 2 159 Broadway 1 Secured Claim will receive on account of such claim on or about the Effective Date either a distribution of Available Cash sufficient to allow for payment in full of the 159 Broadway 1 Secured Claim or the Property following a successful credit bid; provided, however, that such payment may be reduced pursuant to section 6.2 of the Plan in order to allow for payment in full on the Effective Date of the Claims in Class 1, the Statutory Fees and Administrative Claims and any other payments required to be made under the Plan.

**Class 3 –159 Broadway Mezz WB Bridge Secured Claim**.  Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, the holder of the Allowed Class 3 159 Broadway Mezz WB Bridge Secured Claim will receive on or about the Effective Date on account of such claim a distribution of Available Cash after all payments to Class 1 and Class 2 Claims with interest from the Petition Date onwards at the rates set forth in the applicable Notes as to Claim in Class 2 and interest from the Petition Date onwards at the Federal Judgment Rate as to Claims in Class 1, with principal as to all such Classes being paid in full prior to any payments being made on account of such interest.

**Class 4 – Priority Claims**.  Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, and with the exception of holders of WB Bridge Priority Claims who waive any distribution under the Plan on account of their Class 4 WB Bridge Priority

Claims, each holder of an Allowed Class 4 WB Bridge Priority Claim will receive on or about the Effective Date on account of such claim a distribution from Available Cash up to payment in full after payment in full on Claims in Class 1, Class 2 and Class 3, Statutory Fees owed by WB Bridge and Administrative Claims against WB Bridge, with interest from the Petition Date onwards at the rates set forth in the applicable Notes as to Claims in Class 2 and Class 3 and interest from the Petition Date onwards at the Federal Judgment Rate as to Claims in Class 1, with principal as to all such Classes being paid in full prior to any payments being made on account of such interest.

      **Class 5 – WB Bridge General Unsecured Claims**. Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, and with the exception of holders of WB Bridge General Unsecured Claims who waive any distribution under the Plan on account of their Class 5 WB Bridge General Unsecured Claims, each holder of an Allowed Class 5 WB Bridge General Unsecured Claim will receive on account of such claim a pro rata distribution of Available Cash after all payments to Class 1 Claims, the Class 2 Claim, the Class 3 Claim, the Class 4 Claims, Statutory Fees owed by WB Bridge and Administrative Claims against WB Bridge, with interest from the Petition Date onwards at the rates set forth in the applicable Notes as to Claims in Class 2 and Class 3 and interest from the Petition Date onwards at the Federal Judgment Rate as to Claims in Class 1 and Class 4, with principal as to all such Classes being paid in full prior to any payments being made on account of such interest; provided, however, that if the Proponent is the Successful Bidder based on a credit bid, the Proponent will provide a distribution of $350,000 to holders of Claims in Class 5 other than the 159 Broadway 1 Unsecured Claim, the Proponent agreeing to waive the right to receive any distribution from such $350,000 as a member of this Class. The Proponent has also agreed to waive any right to receive any distribution from the proceeds of the Creditor Trust on account of its 159 Broadway 1 Unsecured Claim. All funds to be distributed to the holders of Claims in Class 5 on the Effective Date shall be transferred to and fund the Creditor Trust, as provided in section 7.3(c) of the Plan.

      **Class 6 – 159 Member Other Secured Claims**. The holders of the Allowed Class 6 159 Member Other Secured Claims will receive on account of such claims at the Proponent's sole and absolute discretion either Available Cash sufficient to pay such Claims in full or the property securing the 159 Member Other Secured Claim, on the Effective Date or as soon thereafter as is reasonably practicable.

      **Class 7 – 159 Broadway Mezz 159 Member Secured Claim.** Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, the holder of the Allowed Class 3 159 Broadway Mezz WB Bridge Secured Claim will receive on or about the Effective Date on account of such claim a distribution of Available Cash after all payments to Class 1 Claims, the Class 2 Claim, the Class 3 Claim, the Class 4 Claims, the Class 5 Claim, the Class 6 Claim, Statutory Fees and Administrative Claims, with interest from the Petition Date onwards at the rates set forth in the applicable Notes as to Claims in Class 2 and Class 3 and interest from the Petition Date onwards at the Federal Judgment Rate as to Claims in Class 1, Class

4, Class 5 and Class 6, with principal as to all such Classes being paid in full prior to any payments being made on account of such interest.

**Class 8 – 159 Member Priority Claims**.  Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, and with the exception of holders of 159 Member Priority Claims who waive any distribution under the Plan on account of their Class 8 159 Member Priority Claims, each holder of an Allowed Class 8 159 Member Priority Claim will receive on or about the Effective Date on account of such claim a distribution from Available Cash up to payment in full after payment in full on Claims in Class 1, Class 2, Class 3, Class 4, Class 5, Class 6 and Class 7, and Statutory Fees and Administrative Claims, with interest from the Petition Date onwards at the rates set forth in the applicable Notes as to the Claims in Class 2, Class 3 and Class 7 and interest from the Petition Date onwards at the Federal Judgment Rate as to Claims in Class 1, Class 4, Class 5, and Class 6, with principal as to all such Classes being paid in full prior to any payments being made on account of such interest.

**Class 9 – 159 Member General Unsecured Claims**.  Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, and with the exception of holders of 159 Member General Unsecured Claims who waive any distribution under the Plan on account of their Class 9 159 Member General Unsecured Claims, each holder of an Allowed Class 9 159 Member General Unsecured Claim will receive on or about the Effective Date on account of such claim a distribution from Available Cash up to payment in full after payment in full on Claims in Class 1, Class 2, Class 3, Class 4, Class 5, Class 6, Class 7, Class 8, Statutory Fees and Administrative Claims, with interest from the Petition Date onwards at the rates set forth in the applicable Notes as to the Claims in Class 2, Class 3 and Class 7, and interest from the Petition Date onwards at the Federal Judgment Rate as to Claims in Class 1, Class 4, Class 5, Class 6 and Class 8, with principal as to all such Classes being paid in full prior to any payments being made on account of such interest.

**Class 10 – Interests**.  Holders of Allowed Class 10 Interests shall continue to retain and maintain such Interests in 159 Member and the Post-Confirmation 159 Member following the Effective Date of the Plan in the same percentages as existed as of the Petition Date. Additionally, to the extent that there is any Available Cash after full payment of all Statutory Fees, Administrative Claims and all Claims, with interest from the Petition Date onwards at the rates set forth in the applicable Notes as to the Claims in Class 2, Class 3 and Class 7, and interest from the Petition Date onwards at the Federal Judgment Rate as to Claims in Class 1, Class 4, Class 5, Class 6, Class 8 and Class 9, with principal as to all such Classes being paid in full prior to any payments being made on account of such interest, each holder of an Allowed Class 10 Interest shall receive such remaining Available Cash, pro rata, in accordance with their respective percentage interests in 159 Member.

TREATMENT OF NON-CLASSIFIED CLAIMS

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims entitled to priority treatment under Section 507(a)(2) of the Bankruptcy

18

Code or Claims of Governmental Units entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code. Article 2 of the Plan provides for the manner of treatment of such non-classified Claims.

**Administrative Claims.** Administrative Claims are the costs and expenses of administration of this Case, allowable under Section 503(b) of the Bankruptcy Code, other than Bankruptcy Fees. Administrative Claims include Claims for the provision of goods and service to the Debtors after the Petition Date, the liabilities incurred in the ordinary course of the Debtors' business (other than claims of governmental units for taxes or interest or penalties related to such taxes) after the Petition Date, Claims of professionals, such as attorneys, brokers, appraisers, and accountants, retained pursuant to an order of the Bankruptcy Court, for compensation and reimbursement of expenses under Section 330 of the Bankruptcy Code, and tax claims for the period from the Petition Date to the Effective Date of the Plan.

Each holder of an Allowed Administrative Claim shall receive cash in the full amount of its Administrative Claim. The Debtors estimate that the total amount of professional fees and expenses for both WB Bridge Hotel LLC and 159 Broadway LLC total approximately $217,511.60 as of March 30, 2022, and will increase between March 30, 2022 and the Effective Date of the Plan. The Proponent does not necessarily agree that that amount will be allowed and reserves all rights to object to any fee applications. It is not believed that there will be any other Administrative Claims in this case (aside from the Broker's commission, which shall be paid via a buyer's premium).

Each Administrative Claim, shall be paid by the Disbursing Agent in Cash in full on (i) the later of the Effective Date, the date payment of such Claim is due under the terms thereof or applicable law, or three business days after such Claim becomes an Allowed Administrative Claim, or (ii) as may be otherwise mutually agreed in writing between the Disbursing Agent and the holder of such Claim, provided, however, that any Allowed Administrative Claim incurred by the Debtors in the ordinary course of its business shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim and any agreements relating thereto.

Article 2 of the Plan sets a final date for the filing of Administrative Claims against the Debtor. The Administrative Bar Date is fourteen (14) days after entry of the Confirmation Order.

**Bankruptcy Fees.** All fees and charges assessed against the Debtors of its Estate under Section 1930 of title 28 of the United States Code and any applicable interest thereon shall be paid by the Disbursing Agent in Cash in full as required by statute, and until the closing, conversion or dismissal of this case, whichever is earlier. The Disbursing Agent shall continue to be responsible for the payment of any such fees and charges. It is estimated that Bankruptcy Fees and charges will be approximately $0, as it is estimated that the sale of the Property will not generate interest above the Proponent's credit bid, or such greater sum as necessary to satisfy the Office of the United States Trustee.

19

4858-3941-7361, v. 4

**Professional Fees.**  11 U.S.C. § 330 of the Bankruptcy Code sets the standard for the determination by the Bankruptcy Court of the appropriateness of fees to be awarded to Professionals retained by the Debtors in a case under the Bankruptcy Code.  In general, bankruptcy legal services are entitled to command the same competency of counsel as other cases.  "In that light, the policy of this section is to compensate attorneys and other professionals serving in a case under title 11 at the same rate as the attorney or other professional would be compensated for performing comparable service other than in a case under title 11."  124 Cong. Rec. H11091 (Daily ed. Sept. 28, 1978).

Reasonable compensation due to the Debtors' retained professionals pursuant to Section 330 of the Bankruptcy Code, as determined by the Bankruptcy Court, shall be payable in full and in Cash on the Effective Date unless otherwise agreed to in writing between the holder of such claim and the Debtors and approved by the Bankruptcy Court.

## DISPUTED CLAIMS

Article 8 of the Plan contains a mechanism for resolving disputes concerning the amount of certain Claims asserted against the Debtors by any Entity.

**Time to Object.**  After the Effective Date, the Creditor Trust, in consultation with the Oversight Committee, shall have authority to file, prosecute, settle, compromise, withdraw or resolve objections to Claims as they see fit in its discretion.  The rights of anyone who has objected to such Claim(s) prior to the Effective Date as to such objection shall be transferred to the Creditor Trust.  After the Effective Date, the Creditor Trust, in consultation with the Oversight Committee, may file, prosecute, settle, compromise, withdraw or resolve objections to any other Claims.  Unless otherwise ordered by the Bankruptcy Court or provided in the Plan, the Creditor Trust, in consultation with the Oversight Committee,  may file and serve any objection to any Claim or Interest at any time, but in no event after the Effective Date for Claims that are otherwise entitled to payment on the Effective Date or, for all Claims that are otherwise entitled to payment after the Effective, the later to occur of (i) ninety (90) days following the Effective Date; or (ii) sixty (60) days after the date proof of such Claim or Interest or a request for payment of such Claim is filed with the Bankruptcy Court, unless the time is extended by the Bankruptcy Court.

## DISTRIBUTIONS UNDER THE PLAN

Article 8 contains provisions governing the making of Distributions on account of Claims and Interests.  In general, except as otherwise provided in the Plan, and subject to Sections 8.7, 8.8 and 8.9 of the Plan, any payments, distributions or other performance to be made pursuant to this Plan on account of any Disputed Claim shall be deemed to be timely made if made on or within five (5) days following the later of (i) the Effective Date, (ii) the expiration of any applicable objection deadline with respect to such Disputed Claim, or (iii) such other times provided in this Plan.  All Cash payments to be made pursuant to the Plan

20

shall be made by check drawn on a domestic bank. Any escrowed, reserved or segregated funds will be held at a banking institution that is an authorized banking depository in the Southern District of New York.

**Disbursing Agent.** Kriss & Feuerstein LLP will act as the Disbursing Agent in order to make Distributions under the Plan for all claims against the Debtors' Estate. The Disbursing Agent shall not be compensated for services rendered under the Plan and shall not be required to secure a bond. The Disbursing Agent shall not incur any liability, other than for gross negligence, willful misconduct, criminal conduct, or for any claim for liability pursuant to 28 U.S.C. § 959 in connection with carrying out its duties under the Plan, which liability shall be expressly limited to the period commencing from the date of the Disbursing Agent's receipt of the Available Cash and ending on the date that all disbursements contemplated by the Plan have been distributed.

Distributions shall be made: (1) at the addresses set forth on the Proofs of Claim or Proofs of Interests filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim or Proof of Interest; or (3) at the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Disbursing Agent has not received a written notice of a change of address.

UNCLAIMED DISTRIBUTIONS

Any distribution that is returned to the Disbursing Agent shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution (each, an "Unclaimed Distribution"). A distribution becomes an Unclaimed Distribution if three months have elapsed since a distribution is returned to the Disbursing Agent as undeliverable or six months have elapsed since a distribution check has gone uncashed and if no notice has been provided to the Disbursing Agent by the holder of the claim to which such distribution relates containing a valid address for such holder. If such a notice is provided, then, after receipt of such additional information as the Disbursing Agent may require to confirm the identity, address and ownership of such Claim, the Disbursing Agent shall make a distribution of all amounts reserved for such undeliverable distribution or unclaimed check to such Claim holder at the address provided in such notice within 14 days thereafter. All Unclaimed Distributions shall become Available Cash and shall be distributed in accordance with this Plan.

DISTRIBUTIONS WITH RESPECT TO DISPUTED CLAIMS

During the pendency of any objection to any Claim, no Distribution under the Plan will be made to the holder of such Claim. However, there will be set aside and reserved on behalf of such disputed Claim such cash or property as the holder thereof would be entitled to receive in the event such Claim was an Allowed Claim on the date of such Distribution. The Proponent

21

may seek an order of the Bankruptcy Court estimating or limiting the amount of Cash or property that must be deposited in respect of any such Disputed Claims. Cash held in reserve for Disputed Claims will be held in trust for the benefit of the holders of such Claims.

## SURRENDER OF INSTRUMENTS

No Creditor that holds a note or other instrument of the Debtors evidencing such Creditor's Claim may receive any distribution with respect to such Claim or Interest unless and until the note or other instrument evidencing such Claim is surrendered pursuant to the provisions of the Plan, except the mortgage of WB Bridge held by 159 Broadway 1 to the extent it is assigned to the Successful Bidder's lender. In the event an instrument evidencing a claim has been lost, stolen or mutilated, the Disbursing Agent may request reasonable affidavits and indemnification by a financially responsible party before making any distribution(s) to such Creditor.

## COMPLIANCE WITH TAX REQUIREMENTS

In connection with the Plan, the Debtors shall not be relieved of, and shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and distributions under the Plan shall be subject to such withholding and reporting requirements.

## EFFECTIVE DATE

The Effective Date of the Plan is defined as the later of (i) one Business Day after the Confirmation Order becomes a Final Order; or (ii) the date all conditions to the Effective Date have been satisfied or waived by the entity entitled by this Plan to waive such condition and the Sale has closed.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

All Executory Contracts or Unexpired Leases to which one of the Debtors is a party as of the Effective Date, other than residential leases, which were not previously rejected, assumed, or assumed and assigned by the Debtors shall be rejected and disaffirmed under the Plan as of the Effective Date in accordance with the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code, unless an Executory Contract or Lease is listed as assumed and assigned to a Successful Bidder on a notice to be filed by the Successful Bidder with the Bankruptcy Court (the "**Assumption Notice**"), with such notice being served by the Successful Bidder on the counterparty to each such Executory Contract or Unexpired Lease, no later than fourteen (14) days prior to the Effective Date.

**Rejection Claims**. Holders of Claims created by the rejection of executory contracts and unexpired leases or the expiration or termination of any executory contract or unexpired lease must file in the Bankruptcy Court and serve on the Proponent a proof of claim within 21 days after service of the Assumption Notice or the expiration of the deadline to serve the Assumption

22

Notice.  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan as against the applicable Debtor, subject to objection by the Proponent.  After receipt of such proof of claim, the Proponent shall have 14 days to file an objection, failing which such Claim shall be an Allowed Claim.

## TRANSFER OF THE PROPERTY

Except as otherwise provided in the Plan, including with respect to Creditor Trust Causes of Action (which shall be transferred to the Creditor Trust on the Effective Date), all of the assets and Property of the Debtors' Estate shall vest in the Disbursing Agent or, as to the Property and the Property Causes of Action, the Successful Bidder, free and clear of all Liens, Claims and encumbrances (except to the extent such Property is sold subject to the Proponent's lien). The Debtors shall cooperate with the execution of any and all documents needed to facilitate all transfers pursuant to the Plan, including the Property, the Property Causes of Action and the Creditor Trust Causes of Action. On the Effective Date, any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.  Furthermore, on the Effective Date or as soon as practicable thereafter, all insurance claims and proceeds thereof to which the Debtors were entitled, shall be assigned to the Disbursing Agent for liquidation and distribution in accordance with the Plan.

## FUNDING

The Plan will be funded by monies made available from the Sale of the Property (and the Property Causes of Action); however, the Proponent shall advance such funds as are necessary to make payments required under the Plan if the Sale proceeds are insufficient to fund all payments required under the Plan, as provided in section 6.2 of the Plan.

The Disbursing Agent shall take all necessary steps and perform all acts to consummate the terms and conditions for the Plan, and the Debtors shall not interfere with the Disbursing Agent in the performance of its duties. The Confirmation Order shall contain appropriate provisions consistent with Section 1142 of the Bankruptcy Code, directing the Debtors and any other necessary party to execute or deliver or to join in the extension or delivery of any instrument required to affect the Plan or to perform any act necessary to consummate the Plan.

Except as set forth elsewhere in the Plan, all payments required to be made under the Plan shall be made by the Disbursing Agent for disbursement in accordance with the terms of the Plan.

4858-3941-7361, v. 4

**PRESERVATION OF RIGHTS OF ACTION**

On the Effective Date: (a) all Creditor Trust Causes of Action shall be contributed and/or transferred to the Creditor Trust; (b) all Property Causes of Action shall be transferred to the Successful Bidder; (c) all Privileges (including attorney-client and attorney work product) and all rights under any confidentiality agreements owned by the Debtors on the Effective Date that relate to the Creditor Trust Causes of Action shall be transferred to the Creditor Trust; and (d) all Privileges (including attorney-client and attorney work product) and all rights under any confidentiality agreements owned by the Debtors on the Effective Date that relate to the Property Causes of Action shall be transferred to the Successful Bidder.  The Creditor Trust, in consultation with the Oversight Committee, and the Successful Bidder, as the case may be, shall have the right to enforce or waive such Privileges and rights as they see fit in their discretion, including transfer to the Successful Bidder.  The Creditor Trust Causes of Action do not include any Causes of Action against the Proponent.  No Causes of Action have been asserted by or on behalf of the Debtors against the Proponent, nor have any other Causes of Action been asserted against the Proponent by third parties in connection with the Debtors and the Property.  The Proponent is not aware that any such Causes of Action against the Proponent exist.

**CREDITOR TRUST**

The Creditor Trust Causes of Action will be transferred and contributed to the Creditor Trust, which will be formed on the Effective Date.  The Creditor Trust will be governed by the Trust Declaration, which shall be included in the Plan Supplement, which shall be filed no later than 14 days before the Confirmation Hearing.  The Creditor Trust will be run by the Creditor Trustee, who shall be identified in the Plan Supplement, in consultation with the Oversight Committee, which shall consist of three members of the Official Committee and shall be identified in the Plan Supplement.  The purposes of the Creditor Trust is to liquidate the Creditor Trust Causes of Action and to prosecute objections to Claim(s) after the Effective Date.  The Official Committee's analysis of such Creditor Trust Causes of Action is in the early stages.  Accordingly, the Proponent and the Official Committee cannot state whether any such Causes of Action will be brought or estimate any recoveries that may had therefrom.  The Creditor Trust Causes of Action and the Property Causes of Action are fully reserved and are not waived in this Disclosure Statement or Plan.

The Creditor Trust shall be funded by the cash distribution that would otherwise be made on the Effective Date to the holders of Claims in Class 5 (WB Bridge General Unsecured Creditors).  All distributions from the Creditor Trust shall be considered Available Cash and shall be distributed by the Creditor Trustee as Disbursing Agent on behalf of the Creditor Trust to the Creditors and/or Interest Holders in accordance with the Plan.

Article VII of the Plan provides more details concerning the Creditor Trust, the Creditor Trustee and the Oversight Committee.

4858-3941-7361, v. 4

## POST-CONFIRMATION OPERATING REPORTS AND UNITED STATES TRUSTEE'S FEES

The Debtors' duty to prepare and file post-confirmation monthly operating reports shall continue until the closing of this case by means of a final decree, dismissal or conversion of this case, whichever is earlier. Within 10 days of the Effective Date or as soon as practicable thereafter, the Disbursing agent shall file a closing report detailing all disbursements made at the closing on the Property. All outstanding quarterly fees and any applicable interest due thereon payable to the Office of the United States Trustee shall be paid by the Disbursing Agent until entry of a final decree, conversion or dismissal, whichever is earlier.

## TRANSFER TAXES

Pursuant to Section 1146(a) of the Bankruptcy Code, the initial issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan (including any instrument executed in furtherance of the transactions contemplated by the Plan including but not limited to the deed conveying the Property in accordance with the Sale and any deed further conveying the Property with two years following the Sale by the Successful Bidder or its affiliate or designee) shall be exempt and shall not be subject to tax under any law imposing a Transfer Tax, mortgage recording tax or similar tax as set forth in the Plan. In connection therewith, the Successful Bidder shall have the protections afforded under the "good faith" purchaser provisions of Section 363(m) of the Bankruptcy Code and all stay provisions under Bankruptcy Rule 6004(h) or elsewhere will be waived.

## REVOCATION OF THE PLAN

The Plan may be altered, amended, modified or withdrawn by the Proponent at any time before Substantial Consummation of the Plan, as provided in Sections 1101(2)(A) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. Section 1127 of the Bankruptcy Code authorizes the proponent of a plan of reorganization to modify such plan at any time prior to confirmation of the plan so long as the plan, as modified, continues to meet certain technical requirements of Sections 1122 and 1123 of the Bankruptcy Code with respect to the classification of Claims and Interests and the contents of a plan. Prior to Confirmation, if the Proponent files a modification to the Plan, pursuant to Section 1127(a) "the plan as modified becomes the plan." No order of the Court is required to modify the Plan under the terms of Section 1127(a); however, the proponent of a modification to a plan must comply with Section 1125 of the Bankruptcy Code with respect to the plan as modified.

4858-3941-7361, v. 4

The Proponent may revoke or withdraw the Plan at any time prior to Substantial Consummation of the Plan.  If the Proponent revokes or withdraws the Plan, or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall constitute a waiver or release of any Claims by or against, or any Interest in the Debtors in any further proceedings involving the Debtors.

RETENTION OF JURISDICTION

The Plan contains detailed provisions providing for the retention of jurisdiction by the Bankruptcy Court over the Case for the purposes of, *inter alia,* determining all disputes relating to Claims or Interests and other issues presented by or arising under the interpretation, implementation or enforcement of the Plan.

RISK FACTORS

Plan payments are to be made from the Sale proceeds and, if necessary, the funds provided by the Proponent if there is a shortfall of the amounts necessary to make the Plan Effective as provided in section 6.2 of the Plan. There can be no assurance that the Sale of the Property will occur.

## CONFIRMATION OF THE PLAN

All Distributions to holders of Allowed Claims are contingent on the Plan being confirmed by this Court.  Otherwise, neither the Disbursing Agent nor the Proponent is obligated to make the payments required hereunder.

CONFIRMATION HEARING

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider confirmation of the Plan. **The Confirmation Hearing is scheduled to commence on June 14, 2022 at 10:00 a.m. in the United States Bankruptcy Court, 300 Quarropas Street, White Plains, NY 10601** (although the hearing may be conducted remotely due to COVID)**.** The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing.  Due to the COVID epidemic and related concerns, the Confirmation Hearing may be conducted telephonically or by video conference.  Please check with the website for the Bankruptcy Court to obtain more details:  https://www.nyeb.uscourts.gov/content/judge-nancy-hershey-lord

The Bankruptcy Court has directed **that objections, if any, to confirmation of the Plan be filed and served on or before June 7, 2022 at 5:00 p.m.**  Objections must be served upon (i) Counsel to the Proponent, Kriss & Feuerstein LLP., 360 Lexington Avenue, Suite 1200, New York, New York, New York 10017 – Attn:  Jerold C. Feuerstein, Esq., Daniel N. Zinman, Esq. & Stuart L. Kossar, Esq. (iii) The United States Trustee, U.S. Federal Office Building, 201

26

Varick Street, Suite 1006, New York, New York 10014-9449 and be filed electronically in accordance with the Court's ECF procedures.

## REQUIREMENTS FOR CONFIRMATION

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. These requirements include determinations by the Bankruptcy Court that: (i) the Plan has classified Claims and Interests in a permissible manner, (ii) the contents of the Plan comply with various technical requirements of the Bankruptcy Code, (iii) the Proponent has proposed the Plan in good faith, (iv) the Proponent has made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan and the Case, (v) the Plan is in the "best interests" of all Creditors and Interest Holders; and (vi) the Plan is feasible. The Proponent believes that all of these conditions have been or will be met prior to the Confirmation Hearing.

**Best Interest Test.** The so-called "best interest" test requires that each impaired Creditor and impaired Interest Holder either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such entity would receive or retain if the Debtors were to be liquidated under chapter 7 of the Bankruptcy Code.

To determine what the holders in each Class of Claims or Interest would receive if the Debtors were liquidated under Chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtors' assets in a chapter 7 liquidation case. The amount that would be available for satisfaction of Allowed Claims against and Allowed Interests in the Debtors would consist of the proceeds resulting from the disposition of the Debtors' assets, augmented by the cash held by the Debtors. Such amount would be reduced by the amount of any Claim or Claims secured by the Debtors' assets, the costs and expenses of the liquidation, and such additional Administrative Claims and Priority Claims that may result from the termination of the Debtors' business. Such value is then juxtaposed against the amount creditors are receiving under the Plan to determine if the value each impaired creditor is receiving is the same or more than such creditor would receive from a Chapter 7 liquidation on the Confirmation Date.

The costs of liquidation under Chapter 7 would become Administrative Claims with the highest priority against the proceeds of liquidation. Such costs would include the fees payable to a Chapter 7 trustee, as well as those which might be payable to attorneys, financial advisors, appraisers, accountants and other professionals that such trustee may engage to assist in the liquidation. In addition, Chapter 7 costs would include any liabilities incurred or assumed pursuant to the transactions necessary to effectuate the liquidation. Moreover, claims entitled to administrative priority may arise by reason of any breach or rejection of any executory contracts entered into by the Debtors during the pendency of the Case in chapter 11.

4858-3941-7361, v. 4

After satisfying Administrative Claims arising in the course of the chapter 7 liquidation, the proceeds of the liquidation would then be payable to satisfy any unpaid expenses incurred during the time this Case was pending under chapter 11, including compensation for attorneys, financial advisors, appraisers, accountants and other professionals retained by the Debtors.

**Liquidation Analysis.**  The Proponent has concluded that the Plan provides to each Creditor and Interest Holder a recovery with a *present value* which equals or exceeds the distribution that such person would receive if the Debtors were to be liquidated under Chapter 7 of the Bankruptcy Code.  The Plan provides for the liquidation of the Debtors' assets, but avoids the additional costs and expenses that would be incurred in Chapter 7, such as trustee's fees.  In addition, the Plan provides for the payment by the Proponent to WB General Unsecured Claims in the amount of $350,000 if the Proponent is the Successful Bidder with a credit bid.  In Chapter 7, such payment would not occur.

**Feasibility.**  For the Plan to be confirmed, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors. This Plan calls for the Sale of the Debtors' Property to the Successful Bidder and for the Proponent to satisfy any shortfall in the event such Sale does not generate sufficient cash to make the payments required under the Plan.  Thus, the Plan meets the feasibility requirements of the Bankruptcy Code.

### EFFECT OF CONFIRMATION

### LIMITATION OF LIABILITY

Section 1125(e) of the Bankruptcy Code, commonly referred to as the "safe harbor," protects persons acting in good faith, from civil claims arising in connection with solicitations of acceptances of plans of reorganization or participating in the offer, issuance, sale or purchase of a security under the Plan.  Pursuant to Section 1125(e), as set forth in Article 8 of the Plan, neither the Proponent or its nominee(s), nor any of their respective officers, directors, members, general partner, managers or employees (acting in such capacity), nor any professional person employed by any of them shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any other action taken or omitted to be taken in connection with the Plan except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts. Nothing contained herein shall limit the liability of professionals pursuant to Rule 1.8(h)(1) of the New York State Rules of Professional Conduct.  From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any claim or liability released to the extent provided by Article 9 of the Plan.

28

**INJUNCTION**

Except (a) as otherwise provided in the Plan; (b) as otherwise provided under the Confirmation Order entered by the Bankruptcy Court; or (c) as to the Proponent's lien to the extent the Property is sold subject to such lien, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin with respect to any claim or interest held as of the Effective Date: (y) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Property or property of the Estate that has been, or is to be, distributed under the Plan, and (z) the creation, perfection or enforcement of any lien or encumbrance against the Property or any property of the Estate that has been, or is to be transferred or distributed under the Plan.

Except as otherwise provided in the Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset, from the Debtors, Proponent or from the Property or property of the Estate, any claim, obligation or debt that was held by any person or entity as of the Effective Date except pursuant to the terms of the Plan.

**RELEASE**

Except (i) as otherwise provided in the Plan, (ii) as otherwise provided under Final Order entered by the Bankruptcy Court, or (iii) with respect to the Debtors' obligations under this Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin on and after the Confirmation Date: (a) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the any property of the Estate, including the Property sold under this Plan (except to the extent such Property is sold subject to the Proponent's liens); or (b) the creation, perfection or enforcement of any lien or encumbrance against any property of the Estate, including the Property sold under this Plan (except to the extent that such Property is sold subject to the Proponent's liens). Since this Plan provides for the liquidation of all or substantially all of the property of the Estate, the Confirmation of the Plan will not result in a discharge of the Debtors' pre-Petition Date Claims.

### ALTERNATIVES TO THE PLAN

If the Plan is not confirmed by the Bankruptcy Court the alternatives may include (a) liquidation of the Debtors under chapter 7 of the Bankruptcy Code or (b) the formulation, promulgation and confirmation or an alternative plan of reorganization involving a sale to a different purchaser; or (c) the dismissal of the Debtors' cases.

The Proponent believes that the Plan provides a recovery to all Creditors and Interest Holders equal to or greater than would be obtainable in chapter 7 liquidation or foreclosure sale and believes that the Plan enables Creditors to realize the most value under the circumstances.

The Proponent reserves its right to file an amended plan and/or disclosure statement.

### CERTAIN FEDERAL INCOME TAX CONSEQUENCES

The following summary of certain U.S. Federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the particular circumstances pertaining to each holder of an Allowed Claim. Each holder of an Allowed Claim is urged to consult his own tax advisors. This summary does not cover all potential U.S. federal income tax consequences that could possible arise under the Plan and does not address the Plan's U.S. federal income tax consequences for any holder of an Allowed Claim that is a partnership (or other pass-through entity) or otherwise subject to special tax rules.

The Proponent has not requested any ruling from the Internal Revenue Service or any other taxing authority with respect to such matters nor will the Proponent, with respect to the federal income tax consequences of the Plan, obtain any opinion of counsel.  Consequently, there can be no assurance that the treatment set forth in the following discussion will be accepted by the IRS.  The Proponent offers no statements or opinions that are to be relied upon by the creditors as to the treatment of creditors' claims under the Plan.  Matters not discussed in this Disclosure Statement may affect the tax consequences of the Plan on any particular holder of a Claim or Equity Interest

This summary is based upon the laws in effect on the date of this Disclosure Statement and existing judicial and administrative interpretations thereof, all of which are subject to change, possibly with retroactive effect. Holders of Allowed Claims should consult their own tax advisors as to the Plan's specific federal, state, local and foreign income and other tax consequences.

The tax consequences to Creditors and Interest Holders will differ and will depend on factors specific to each Creditor or Interest Holder, including but not limited to: (i) whether the Claim or Interest (or portion thereof) constitutes a claim for principal or interest; (ii) the origin of the Claim or Interest; (iii) the type of consideration received by the Creditor or Interest Holder in exchange for the Claim or Interest; (iv) whether the Creditor or Interest Holder is a United States person or foreign person for tax purposes; (v) whether the Creditor or Interest Holder reports income on the accrual or cash basis method; and (vi) whether the Creditor or Interest Holder has taken a bad debt deduction or otherwise recognized loss with respect to a Claim or Interest.

**THERE ARE MANY FACTORS WHICH WILL DETERMINE THE TAX CONSEQUENCES TO EACH CREDITOR OR INTEREST HOLDER. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX, AND IN SOME CASES, UNCERTAIN. THEREFORE, IT IS IMPORTANT THAT EACH CREDITOR OR INTEREST HOLDER OBTAIN HIS, HER OR ITS OWN TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH CREDITOR OR INTEREST HOLDER AS A RESULT OF THE PLAN.**

4858-3941-7361, v. 4

**THE DISCUSSION HEREIN IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY CREDITOR OR INTEREST HOLDER FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON A TAX PAYER. THE DISCUSSION HEREIN WAS WRITTEN TO SUPPORT THE TRANSACTIONS DESCRIBED IN THIS DISCLOSURE STATEMENT. EACH CREDITOR OR INTEREST HOLDER SHOULD SEEK ADVICE BASED UPON THE CREDITOR'S OR INTEREST HOLDER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

### ADDITIONAL INFORMATION

Requests for information and additional copies of this Disclosure Statement and the other materials delivered together herewith and all deliveries, correspondence and questions, as the case may be, relating to the Plan should be directed to (i) Counsel to the Proponent, Kriss & Feuerstein LLP., 360 Lexington Avenue, Suite 1200, New York, New York, New York 10017 – Attn: Jerold C. Feuerstein, Esq., Daniel N. Zinman, Esq. & Stuart L. Kossar, Esq., (iii) The United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014-9449 and be filed electronically in accordance with the Court's ECF procedures. Documents submitted in these cases are on file in the Office of the Clerk of the United States Bankruptcy Court, Southern District of New York, 300 Quarropas Street, White Plains, NY 10601, and are ordinarily available for public inspection Monday through Friday, between the hours of 8:30 a.m. and 5:00 p.m.

[The remainder of this page has been left intentionally blank]

4858-3941-7361, v. 4

## CONCLUSION

The Proponent believes that confirmation of the Plan is in the best interests of all Creditors.


Dated: New York, New York
       May 11, 2022

**KRISS & FEUERSTEIN LLP**

By:    */s/ Jerold C. Feuerstein*
       Jerold C. Feuerstein, Esq.
       Daniel N. Zinman, Esq.
       Stuart L. Kossar, Esq.
       360 Lexington Avenue, Suite 1200
       New York, New York 10017
       (212) 661-2900

       *Attorneys for 159 Broadway 1 LLC*


**159 Broadway 1 LLC**

By:    */s/ Shoshana Carmel*
       Shoshana Carmel, Director

32