# Exhibit A

**(Immediately Follows This Page)**

## BID PROCEDURES

The following bid procedures (the "Bid Procedures"), which were approved by an order for the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") dated May __, 2022 in the bankruptcy cases of *WB Bridge Hotel LLC* (Case No. 20-23288-RDD), and *In re 159 Broadway Member LLC* (Case No. 20-23289-RDD), shall govern the auction and sale of the real property and related fixtures of WB Bridge Hotel LLC ("WB Bridge" and, together with 159 Broadway Member LLC, the "Debtors"), commonly known as and located at 159 Broadway, Brooklyn, New York 11211 (Block 2457, Lots 34 and 9039), New York (together with the Property Causes of Action,[1] the "Property"), described in that certain *159 Broadway 1 LLC's First Amended Plan of Liquidation for Debtors* filed in the Debtors' bankruptcy cases (the "Plan").[2] 159 Broadway 1 LLC (the "Proponent"), a secured creditor of the WB Bridge, has filed the Plan and is seeking confirmation of the Plan at a confirmation hearing scheduled to begin on June 14, 2022 at 10:00 a.m. Pursuant to an order entered in the Debtors' bankruptcy cases on May __, 2022 [ECF No. __] (the "Bid Procedures Approval Order"), this Court approved these Bid Procedures (and granted other relief). Following the auction, which shall take following the confirmation of the Plan, the Proponent will seek entry of an order from the Bankruptcy Court authorizing and approving the Sale of the Property free and clear of liens, claims, encumbrances, and interests (subject to certain exceptions listed in paragraph B(ii) and B(iii) below), to the Successful Bidder (as defined in the Plan) as may be made at the Auction (as defined below).

    A.    <u>Approvals</u>. The proposed sale shall in all respects be subject to approval by the Bankruptcy Court and in compliance with (i) the applicable provisions of the Bankruptcy Code, (ii) the Bankruptcy Rules, and (iii) other applicable rules and law.

    B.    <u>Assets to be Sold</u>. The assets to be sold shall consist of the Property, which will be sold as follows:

        (i)    The sale (the "Sale") of the Property will be auctioned by Rosewood Realty Group (the "Broker") or its affiliates or agents, who has been previously retained by the Debtors as their exclusive broker. Such sale shall be free and clear of liens, claims, encumbrances and interests, except as provided in B.(ii) and (iii) below.

        (ii)    All unexpired leases and executory contracts (if any) shall be rejected unless the Successful Bidder files an assumption notice at least 14 days prior to the Effective Date of the Plan, as provided in section 11.2 of the Plan. Bidders should note that even if an unexpired lease is rejected, the lessee retains certain rights, including its rights under 11 U.S.C. § 365(h), which may include the right of the lessee to "retain its rights under such lease (including

---

[1] "Property Causes of Action" is defined in section 1.71 of the Plan as, "Causes of Action that run with or directly relate to the Property, including tax abatements, but and excluding any Causes of Action against the Proponent, or its partners, members, assignees, employees, directors or agents acting in their capacity as such."

[2] All capitalized terms not defined herein shall have the definition set forth in the Plan.

1

        rights such as those relating to the amount and timing of payment of rent and other amounts payable by the lessee and any right of use, possession, quiet enjoyment, subletting, assignment, or hypothecation) that are in or appurtenant to the [Property] for the balance of the term of such lease and for any renewal or extension of such rights to the extent that such rights are enforceable under applicable nonbankruptcy law." 11 U.S.C. § 365(h)(1)(A)(ii).

    (iii)    Under section 6.1(a) of the Plan, the Successful Bidder may take the Property subject to the Proponent's mortgage at the Proponent's sole and absolute discretion.

C.    <u>Sale As Is, Where Is</u>. The Property shall be sold as is, where is, without any representation or warranty of any type whatsoever.

D.    <u>Qualification of Bidders</u>. Any potential bidder, other than the Proponent or its nominee, designee or assignee (the "<u>Secured Creditor</u>"), who wishes to submit a bid with respect to the Property must demonstrate to the satisfaction of the Broker that such potential bidder is a "Qualified Bidder." A Qualified Bidder is a potential bidder who delivers to the Broker a written and signed, binding offer **on or before the Bid Deadline** (as defined below) that:

    (i)    is a bid for the Property in its entirety for a cash price equal to or greater than $28,000,000.00;

    (ii)    states that the bidder is prepared to enter into a legally binding purchase and sale agreement ("<u>PSA</u>") for the acquisition of the applicable Property on terms and conditions reasonably acceptable to the Secured Creditor and the Broker (as determined by the Secured Creditor and the Broker in their reasonable business judgment), including by marking up the PSA, which will be provided to the Bidder at least 14 days prior to the Bid Deadline, to indicate what the Bidder would be willing to execute;

    (iii)    states the bidder's offer is irrevocable, and not contingent;

    (iv)    does not request or entitle the bidder to any transaction or break-up fee, expense reimbursement or similar type of payment;

    (v)    fully discloses the identity of each entity that will be bidding for the Property (the "<u>Potential Bidder</u>") or otherwise participating in connection with such bid on behalf of the Potential Bidder, the terms of any such participation (including if the Potential Bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by the bid, the equity holder or other financial backer), the Potential Bidder's address, telephone number and email address where the bidder may be contacted;

    (vi)    is accompanied by evidence that a good faith deposit in the amount of $2,500,000.00 (the "<u>Good Faith Deposit</u>"), in immediately available funds,

        has been made (or is concurrently being made) by wire transfer to Gotham Abstract & Settlement LLC, as escrow agent (the "Escrow Agent"), pursuant to wire instructions to be provided by the Broker and/or the Escrow Agent, and acknowledges that the Good Faith Deposit shall be held by the Escrow Agent in a non-interest bearing, segregated, account of the Escrow Agent for the WB Bridge estate in accordance with the terms hereof;

(vii) states that the bidder is financially capable of consummating the transaction contemplated by the bidder's bid and any increased or modified bid that may be made at the Auction;

(viii) is accompanied by financial information satisfactory to the Broker that fairly and reasonably demonstrates the Potential Bidder's ability (and the sources of the Potential Bidder's ability) to close on its purchase of the Property if the Potential Bidder should be the Successful Bidder (as defined below), in an amount at least as much as its bid as necessary to consummate the transaction contemplated by the bidder's bid and any increased or modified bid that may be made at the Auction;

(ix) includes an executed original of these Bid Procedures acknowledging and agreeing to these Bid Procedures and all the terms thereof, including the following:

    1. If the Potential Bidder is a partner, officer, director, stockholder, agent, employee, insider or affiliate of the Debtor, the Debtor's principals, the Broker or any relative of any of the foregoing, such a Potential Bidder must so disclose the exact nature of its relationship with the foregoing entities;

    2. the Potential Bidder relied solely on its own independent investigation, analysis, appraisal, and evaluation of the Property and it did not rely upon and did not receive any written or oral statements, representations, warranties, promises or guarantees whatsoever, whether express or implied or by operation of law or otherwise, with respect to the Property; and

    3. the Potential Bidder's bid is irrevocable until the earlier of the Closing Date (as defined herein) or until its bid is affirmatively rejected;

(x) includes evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of a PSA, if applicable; and

(xi) contains other information reasonably requested by the Proponent and/or Broker.

3

        A competing bid meeting the above requirements shall constitute a "Qualified Bid". The Broker shall make a determination regarding whether a bid is a Qualified Bid and shall notify bidders whether their bids have been determined to be qualified by no later than 4:00 p.m. three business days prior to the date of the applicable Auction.

E.      <u>Buyer's Premium</u>. Consistent with the retention agreement between the Debtors and the Broker approved by the Bankruptcy Court in an order dated October 12, 2021 [ECF No. 106], the Buyer's Premium shall be the amount of the Broker's expenses approved by the Bankruptcy Court <u>and</u>: (1) $125,000 to be paid by the Secured Creditor, if the Secured Creditor or its affiliate is the Successful Bidder (or the Back-up Bidder if the sale closes with the Back-up Bidder) at the auction and closes on its purchase; (2) 1.25% of the Successful Bid (or the Back-up Bid if the Backup Bidder is successful and closes on its purchase) if the Secured Creditor is the Successful Bidder (or the Back-up Bidder if the sale closes with the Back-up Bidder) at the auction and an assignee of the Secured Creditor not affiliated with the Secured Creditor closes on the purchase; or (3) 1.5% of the amount of the Successful Bid (defined below) (or the Back-up Bid if the sale closes with the Back-up Bidder) on a direct deal or 2% on a co-broke, to be paid by the Successful Bidder (or the Back-up Bidder if the sale closes with the Back-up Bidder), if anyone other than the Secured Creditor (or its nominee, designee or assignee) is the Successful Bidder (or the Back-up Bidder if the sale closes with the Back-up Bidder); or (4) 1.5% of the amount of the purchase price of the note, on a direct deal, or 2% on a co-broke from a purchaser of the Secured Creditor's Note if purchased before the Auction where such purchaser is the Successful Bidder (or the Back-up Bidder, if the sale closes with the Back-up Bidder). Any Buyer's Premium payable must be paid to the Broker at closing.

F.      <u>Deposits Following Auction</u>. Subject only to Section (E) hereinabove, if the Potential Bidder becomes a Successful Bidder as to the Property, it shall, within two (2) business days after the Auction, increase the Deposit as necessary to an amount equal to ten (10%) percent of (i) the final bid at the Auction, plus (ii) the Buyer's Premium (not counting to be approved expenses), within 48 hours of the Auction TIME BEING OF THE ESSENCE. Failure to comply with this requirement shall result in an immediate (i) default under the terms of these Bid Procedures; and (ii) forfeiture of the Successful Bidder's Deposit. If a Potential Bidder is not the Successful Bidder or the Back-up Bidder (as defined below) as to the Property, such Potential Bidder's Deposit shall be returned to such Potential Bidder within 5 business days after the conclusion of the Auction. The Successful Bidder and Back-up Bidder's Deposits shall be held pending the closing. If the Sale to the Successful Bidder closes as to a particular Property, the Back-up Bidder's Deposit for such Property shall be returned within 5 business days of such closing.

G.      <u>Closing Deadline</u>. The Successful Bidder as to the Property shall close on the purchase of the applicable Property within twenty-one (21) days after the completion of the applicable Auction and entry of an order by the Bankruptcy Court

approving the Sale to the Successful Bidder as to such Property; provided however, that the Closing Date may be extended up to an additional 30 days if the Successful Bidder pays the per diem carrying costs (including taxes, water and sewer charges, and interest owed on the Secured Creditor's debt) for each day that the Closing Date is extended; provided further that the Closing Date may take place on such other date as the Secured Creditor and the Successful Bidder may mutually agree to in writing, or on such other date as may otherwise be directed by Order of the Bankruptcy Court (such date, the "Closing Date"), with TIME BEING OF THE ESSENCE AS TO THE SUCCESSFUL BIDDER'S OBLIGATION TO CLOSE ON THE CLOSING DATE AND TO PAY THE BALANCE OF THE PURCHASE PRICE AT THE CLOSING. The Proponent will use its reasonable best efforts to obtain an order of the Bankruptcy Court approving each sale and a finding of good faith and non-collusive behavior of such sale pursuant to Section 363(m) and (n) of the Bankruptcy Code within two weeks of the completion of the Auction. The Successful Bidder will file any affirmation or similar document (with exhibits if necessary) the Bankruptcy Court or the Proponent requires to enable the Proponent to obtain such an order from the Bankruptcy Court.

H. The Secured Creditor as a Qualified Bidder. Notwithstanding anything herein to the contrary, the Secured Creditor or its nominee, designee or assignee is a Qualified Bidder and, although under no obligation to do so, is entitled to credit bid jointly up to and including the total Allowed amount of its claim as of the Auction Date for the Property pursuant to 11 U.S.C. § 363(k), without the need for any deposit or fulfilling the other requirements for a Potential Bidder to be a Qualifying Bidder.

I. Bid Deadline. **All Qualified Bids must be submitted on or before _____ __, 2022 (the "Bid Deadline")** unless extended by the Proponent in its discretion with notice to be provided to all parties that have expressed serious interest (as determined by the Broker) in potentially bidding on the Property. On or prior to the Bid Deadline, Qualified Bidders shall deliver written copies of their bids to: (1) the Broker; (2) counsel to the Proponent, Kriss & Feuerstein, LLP, 360 Lexington Avenue, Suite 1200, New York, NY 10017, Attn: Jerold C. Feuerstein, Esq., Daniel N. Zinman, Esq., and Stuart L. Kossar, Esq. with a copy to the following email addresses: dzinman@kandfllp.com and skossar@kandfllp.com; and (3) counsel to the Debtor, Robinson Brog PC, 875 Third Avenue, 9th Floor, New York, NY 10022, Attn: Fred B. Ringel, Esq. with a copy to fbr@robinsonbrog.com.

J. Auction. In the event that the Broker and the Proponent receives before the Bid Deadline one or more bids that the Secured Creditor and the Broker deem in their discretion to constitute Qualified Bids (other than by the Secured Creditor or its nominee, designee or assignee) as to a Property, the Broker shall conduct an auction with respect to each such Property (the "Auction"). The Auction shall take place on _____ __, 2022 at 11:00 a.m. (ET) (the "Auction Time") at _____ or such other place and time as the Broker shall notify all Qualified Bidders, the Debtors, the Secured Creditor, and other invitees via e-mail or facsimile not later than one (1) business day before the Auction Time (or re-scheduled Auction Time, as

5

applicable), but in no event shall the Auction take place on a date that is earlier than sixty (60) days from the date of the entry of the Bid Procedures Approval Order; provided, however, that the Broker may designate the Auction as an on-line auction and provide each Qualified Bidder with the appropriate instructions to participate in same, if the Broker deems it necessary or advisable, in the Broker's sole and absolute discretion. If, however, no such other Qualified Bid is received by the Bid Deadline with respect to the Property, then the Auction will not be held as to the Property, and Broker shall so notify the Proponent no later than one (1) business day after the Bid Deadline and the Proponent shall proceed to seek approval of the Bankruptcy Court of the sale of such Property to the Secured Creditor (or its nominee, designee, or assignee) based on the Secured Creditor's credit bid. The Auction shall be governed by the following procedures:

(i) Only authorized representatives and respective counsel of each of the Qualified Bidders, the Proponent, the Debtor, and the Broker shall be permitted to attend and participate at the Auction, unless otherwise agreed to by the Broker in its sole discretion;

(ii) Only the Secured Creditor (or its nominee, designee or assignee) and other Qualified Bidders shall be entitled to make any subsequent bids at the Auction;

(iii) The Secured Creditor (or its nominee, designee or assignee) and each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

(iv) Bidding shall commence at the amount of the highest and best Qualified Bid submitted by the Qualified Bidders by the Bid Deadline;

(v) The Broker shall have the exclusive right to set the bidding increments;

(vi) The Secured Creditor (or its nominee, designee or assignee) and other Qualified Bidders shall participate in person at the Auction (or through a method designated by Broker, including physically present or present through electronic means, such as Zoom), through a duly authorized representative with authority to bind the entity;

(vii) The Auction will be conducted so that the Secured Creditor (or its nominee, designee or assignee), and each other Qualified Bidder will be informed of the previous bid;

(viii) The Auction shall continue until there is only one final offer for the Property that the Broker determines, subject to Bankruptcy Court approval, is the highest and best offer submitted at the Auction from among the Secured Creditor (or its nominee, designee or assignee) and the other Qualified Bidders (the "Successful Bid"). The bidder submitting such Successful Bid shall become a "Successful Bidder" as to the Property and shall have such

6

                rights and responsibilities set forth herein, in the applicable Plan and in the PSA;

    (ix)    At the end of the Auction, the Broker shall also announce the next highest and otherwise best offer after the Successful Bid (the "<u>Next Highest Bid</u>," and the Qualified Bidder that submitted such bid, the "<u>Next Highest Bidder</u>");

    (x)    The Proponent reserves the right to seek approval of the Next Highest Bid as a back–up bid and may seek approval at the Sale Hearing to close the Sale to the Next Highest Bidder if the Successful Bidder fails to close for any reason or if it otherwise fails to satisfy any requirements hereof or of the PSA;

    (xi)    if the Next Highest Bidder is determined by the Broker to have submitted the Next Highest Bid, or next best bid (the "<u>Next Best Bid</u>") at the Auction, it will be considered a back-up bid (the "<u>Backup Bid</u>") and, the Next Highest Bidder, therefore, to be designated the back-up bidder (the "<u>Back-up Bidder</u>"), who shall be notified in writing that the Proponent has determined to proceed with the Back-up Bid after default by the Successful Bidder, the Potential Bidder shall close on the purchase of the Property on the Back-up Closing Date (as hereinafter defined), with TIME BEING OF THE ESSENCE AS TO THE BACK-UP BIDDER'S OBLIGATION TO CLOSE AND TO PAY THE BALANCE OF THE PURCHASE PRICE ON THE BACK-UP CLOSING DATE; and

    (xii)    if (a) a Qualified Bidder is a Successful Bidder as to the Property, the Deposit as to the Property shall become non-refundable and shall be forfeited by the Successful Bidder as liquidated damages in the event the Successful Bidder shall fail to close the purchase of the Property on the Closing Date, except as otherwise expressly permitted under the PSA entered into between WB Bridge (or the Proponent on behalf of WB Bridge) and the Successful Bidder; and (b) if the Proponent and the Broker determine to proceed with the Back-up Bid after default by the Successful Bidder, the applicable Deposit shall become non-refundable and shall be forfeited by such Back-up Bidder as liquidated damages if the Back-up Bidder shall fail to close the purchase of such Property on the Backup Closing Date (as defined below), except as otherwise expressly permitted under the PSA entered into between WB Bridge (or the Proponent on behalf of WB Bridge) and such Back-up Bidder.

K.    <u>Closing on Back-up Bid</u>. If for any reason the Successful Bidder shall fail to timely close the sale of the Property, and the Proponent determines to proceed with the Back-up Bid, the Back-up Bidder shall close on the purchase of the Property and pay the amount of the Back-up Bid, less its Deposit previously posted, on the later of the Closing Date and twenty one (21) days after written notice of the Successful Bidder's default in closing (the "<u>Back-up Closing Date</u>"), with TIME BEING OF

7

THE ESSENCE AS TO THE BACK-UP BIDDER'S OBLIGATION TO CLOSE ON THE BACK-UP CLOSING DATE AND TO PAY THE BALANCE OF THE PURCHASE PRICE AT THE CLOSING. In any case, the Proponent has until 80 days after the Auction to determine to proceed with the Back-up Bid. If the applicable Proponent proceeds with such Back-up Bid, then the Back-up Bidder shall be obligated to close title to the Property and there shall be no contingency of any kind or nature that will permit the Back-up Bidder not to proceed on the Back-up Closing Date other than the inability of WB Bridge (or the Proponent on behalf of WB Bridge) to deliver title to the Property. In the event the Back-up Bidder shall be obliged, but shall fail, to close purchase of the Property timely in accordance with the provisions of the PSA entered into between WB Bridge (or the Proponent on behalf of WB Bridge) and the Back-up Bidder, the Back-up Bidder shall be in default, and the Back-up Bidder shall forfeit its Deposit. Notwithstanding the foregoing, the Proponent shall have the right, but not the obligation, to extend the Back-up Closing Date up to an additional ten (10) business days (the "Adjourned Back-up Closing Period"), with TIME BEING OF THE ESSENCE as to such Back-up Bidder's obligation to close prior to the expiration of the Adjourned Back-up Closing Period; and in such event, if the Back-up Bidder shall fail to close the purchase of the Property prior to expiration of the Adjourned Back-up Closing Period in accordance with the provisions of its PSA, the Backup Bidder shall be in default and the Back-up Bidder shall forfeit its Deposit.

4875-1281-3854, v. 3