UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

In re:                                                                                    Case No.: 20-23288 (RDD)

**WB BRIDGE HOTEL LLC and 159
BROADWAY MEMBER LLC,**

                                                                 Jointly Administered

              Debtors.

------------------------------------------------------------X

### DECLARATION OF MARK GORMLEY IN SUPPORT OF CONFIRMATION OF 159 BROADWAY 1 LLC'S FIRST AMENDED PLAN OF LIQUIDATION FOR THE DEBTORS[1]

MARK GORMLEY hereby declares under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge, information and belief:

1. I am the Director of secured creditor, 159 Broadway 1 LLC (the "Secured Creditor" or "Proponent"), as secured creditor and mortgagee of WB Bridge Hotel LLC ("WB Bridge"), which, together with 159 Broadway Member LLC ("159 Member" and together with WB Bridge, the "Debtors") constitute the above captioned debtors and debtors-in-possession, and as interested parties in these Chapter 11 case (the "Chapter 11 Cases") and have personal knowledge of the facts of this case and the events that transpired to date based upon the files maintained by Proponent in the ordinary course of its business. As such, I am fully familiar with the facts and circumstances of this matter.

2. By and through this Declaration (the "Gormley Declaration"), if called to testify, I would testify under oath as set forth below, from my own personal knowledge and information provided to me by Proponent's employees, professionals, from my review of business records

---

[1] Capitalized terms used herein but not otherwise defined shall have the same meanings ascribed to them as set forth in the Plan (as defined herein) and/or Disclosure Statement (as defined herein).

maintained by the Proponent in the ordinary course of its regularly conducted business activities, from my knowledge concerning the operations and financial affairs of the Proponent, and the Debtors, and as an expert on the financial affairs, management and operation of the Proponent.

3.  I submit this offer of proof to demonstrate the Proponent's compliance with 11 U.S.C. § 1129, in support of confirmation of its First Amended Plan of Liquidation for the Debtors (the "Plan") [ECF No. 129], which is in connection with the approved Proponent's First Amended Disclosure Statement for the Plan [ECF No. 128] (the "Disclosure Statement") having been duly transmitted to creditors, interested parties and equity security holders, and upon the hearing to be held before this Court on June 14, 2022 or adjourned thereafter (the "Confirmation Hearing"), and respectfully urge the Court to find that the requirements for confirmation of the Plan set forth in 11 U.S.C. § 1129(a) have been satisfied.

## I. Sources of Evidence of Compliance with 11 U.S.C. § 1129.

4.  Judicial Notice. The Proponent asks the Court to take judicial notice of all documents filed in Debtors' Chapter 11 Cases, including proofs of claim.

**Proffered Testimony and Background**[2]

5.  On December 21, 2020 (the "Petition Date"), the Debtors WB Bridge, under Case No. 20-23288, and 159 Broadway Member, under Case No. 20-23289, filed petitions (the "Petitions") for Chapter 11 bankruptcy relief before this Court. The Debtors continue in possession of their assets and management of their business as debtors-in-possession pursuant to Bankruptcy Code Sections 1107 and 1108.

---

[2] For a more detailed recitation of the pre-petition background of this matter, the Court is respectfully referred to Proponent's Disclosure Statement.

6.      The Debtors' business consists of ownership the Property.  As explained more fully below and in the Disclosure Statement, the Property is an undeveloped property.

7.      On December 30, 2020, the Debtors filed a motion for joint administration of their cases [ECF No. 9].  An order granting this motion and designating that WB Bridge case as the lead case was entered on January 4, 2021.

**The Proponent & The Loans[3]**

8.      On or about June 18, 2019, WB Bridge executed, acknowledged and delivered to 159 Broadway 1 a Consolidated, Amended and Restated Note (the "Land Loan Note"), in the original principal amount of $21,350,000.00 (the "Land Loan").  As security for the Land Loan Note, WB Bridge on or about that same date executed, acknowledged and delivered to the lender (the Proponent or its predecessor) (the "Lender"), as mortgagee, a certain Consolidated, Amended and Restated Mortgage and Security Agreement (the "Land Loan Mortgage"), pursuant to which WB Bridge mortgaged the Property to 159 Broadway 1, which mortgage consolidated, amended and modified certain previously existing mortgage(s).  The Land Loan Mortgage was duly recorded in the office of the recording of mortgages in Brooklyn, New York, on or about July 6, 2019, bearing CRFN No. 2019000210728.  On or about November 1, 2019, WB Bridge and Lender agreed to amend the Land Loan Note pursuant to that certain First Amendment to Consolidated, Amended and Restated Note

9.      On or about November 1, 2019, WB Bridge executed, acknowledged and delivered to 159 Broadway 1 a certain Building Loan Note (the "Building Loan Note"), in the original principal amount of $2,280,998.31 (the "Building Loan").  As security for the Building Loan Note, WB Bridge on or about that same date executed, acknowledged and delivered to Lender, as

---

[3] For more information concerning the Proponent's Claim, please see the Proponent's proof of claim, Claim No. 10-2.

3

mortgagee, a certain Building Loan Mortgage (the "Building Loan Mortgage"), pursuant to which WB Bridge mortgaged the Property to the Lender. The Building Loan Mortgage was duly recorded in the office of the recording of mortgages in Brooklyn, New York, on or about November 15, 2019, bearing CRFN No. 2019000373427.

10. In further connection with the Building Loan, on or about November 1, 2019, WB Bridge, duly acknowledged and delivered to the Lender that certain Building Loan Agreement in the amount of $2,280,998.31 (the "Building Loan Agreement"). Said Building Loan Agreement was docketed on November 8, 2019 as Control No.: 003907289-01.

11. On or about November 1, 2019, WB Bridge executed, acknowledged and delivered to 159 Broadway 1 a certain Project Loan Note (the "Project Loan Note") in the original principal amount of $369,001.69 (the "Project Loan"). As security for the Project Loan Note, WB Bridge on or about that same date executed, acknowledged and delivered to Lender, as mortgagee, a certain Project Loan Mortgage (the "Project Loan Mortgage"), pursuant to which WB Bridge mortgaged the Property to the Lender. The Project Loan Mortgage was duly recorded in the office of the recording of mortgages in Brooklyn, New York, on or about November 15, 2019, bearing CRFN No. 2019000373430. In further connection with the Project Loan, on or about November 1, 2019, the WB Bridge, duly acknowledged and delivered to Lender that certain Project Loan Agreement in the amount of $369,001.69 (the "Project Loan Agreement").

12. WB Bridge defaulted under the Land Loan Documents, the Building Loan Documents and the Project Loan Documents by, among other things: (i) failing to pay the real estate taxes due on January 1, 2020 and July 1, 2020; and (ii) failing to pay the monthly interest payment due on April 1, 2020 and every subsequent payment thereafter, in accordance with the terms of the Land Loan Documents. In addition, the Land Loan, the Building Loan and the Project

Loan's maturity date of July 1, 2020 has come and gone and no repayment of the Loans has been made, which is a further default under the applicable Loan Documents.

13. On or about July 29, 2020, 159 Broadway 1 filed a summons and complaint seeking, among other things, a judgment of foreclosure and sale in an action entitled *159 Broadway 1 LLC v. WB Bridge Hotel LLC, et al.,* Index No. 513660/2020 (the "Foreclosure Action") in the New York State Supreme Court for Kings County (the "State Court").  On or about September 4, 2020 and September 18, 2020, answers were filed by Sub Enterprises Inc. and Simpson Gumpertz & Heger Inc. ("Simpson"), respectively, in the Foreclosure Action.  Simpson also had a third party claim against WB Bridge and Cornell Realty Management LLC.  On or about August 31, 2021, the State Court entered an order granting a default judgment against WB Bridge and Cornell Realty Management LLC.

**The Petition, Schedules, and Other Post-Filing Events**

14. On March 15, 2021, the Bankruptcy Court entered an Order (the "Bar Date Order") [ECF No. 45] fixing April 21, 2021 as the last date for filing any and all non-governmental claims in this matter and June 21, 2021 for claims by governmental units (the "Bar Date").

15. WB Bridge, in its Schedules (including Amended Schedules), identifies eight secured creditors and sixty four unsecured creditors.  To date, sixteen creditors have filed proofs of claim.  159 Broadway Member, in its Schedules, identifies one secured creditor and seven unsecured creditors.  To date, there is one non-withdrawn proof of claim filed against 159 Member, filed by 159 Broadway Mezz.

16. On or about June 25, 2021, this Court entered an order [ECF No. 81] extending the exclusive periods to file and solicit acceptances to a chapter 11 plan to August 18, 2021 and October 19, 2021, respectively.  On or about September 21, 2021, this Court entered an order [ECF

5

No. 103] further extending such periods to November 24, 2021 and January 24, 2022, respectively. On or about November 24, 2021, the Debtors filed a chapter 11 plan, but have not, to date, filed any disclosure statement for such plan. Accordingly, the Debtors' exclusive periods to file and solicit a chapter 11 plan have expired.

17. On May 11, 2022, the Proponent filed the Disclosure Statement and the Plan.

18. On May 12, 2022, this Court entered an order (the "Disclosure Statement Approval Order") [ECF No. 130] that approved the Disclosure Statement, scheduled the confirmation hearing and approved notice thereof, approved ballots, and approved bid procedures to govern the sale of the Property.

19. Since May 12, 2022, the Broker has been marketing the Property. The bid deadline has been set as July 25, 2022, with an auction date (if necessary) set as July 27, 2022 at 11:00 a.m.

**Summary of Plan**[4]

20. The Plan represents the culmination of significant progress made by Proponent working with multiple constituencies, including (without limitation): (i) the Debtor; (ii) the broker for the sale of the Property, Rosewood Realty Group (the "Broker" or "Rosewood"), who will be marketing and auctioning the Property pursuant to the Plan; (iii) the Official Committee of Unsecured Creditors (the "Committee"); and (iv) the Office of the United States Trustee (the "U.S. Trustee").

21. In short, as further set forth in the Plan and Disclosure Statement, the Proponent, through the Broker, will market the Property for sale. If the Proponent is the Successful Bidder with a credit bid, the Proponent will provide sufficient cash to ensure payment of those claims and fees that are required to be paid in cash under the Plan, including Statutory Fees, Administrative

---

[4] The summary of the Plan is provided for the Court's convenience and parties in interest. In the event of any inconsistency between the summary set forth herein and the Plan, the terms of the Plan shall control.

Claims, and the minimum distribution to General Unsecured Creditors in Class 5 of $350,000. The Sale will permit the Property to realize its full market value for the benefit of the estate and all parties in interest.

### I.   Compliance with 11 U.S.C. § 1129

22.    11 U.S.C. § 1129(a)(1). A review of the Plan, together with my proffer of testimony by and through this Declaration, will show that the Proponent has satisfied 11 U.S.C. § 1129(a)(1). The Plan complies with the mandatory Plan requirements set forth in 11 U.S.C. § 1123(a), and all Plan provisions are permitted by 11 U.S.C. § 1123. The Plan provides for the liquidation of the Debtors through the sale of the Property (the "Sale"), in accordance with applicable provisions of the Bankruptcy Code and the approved bid procedures, which Sale shall be conducted following confirmation of the Plan and subject to Court approval.

23.    In addition to proceeds from the Sale, if the Proponent is the Successful Bidder with a credit bid, the Proponent will provide sufficient cash in order to pay all Statutory Fees, Administrative Claims, and the minimum distribution of $350,000 to General Unsecured Creditors in Class 5. Holders of Class 5 General Unsecured Claims will receive a *pro rata* distribution of Available Cash after payment in full of all holders of senior claims from Available Cash with a guaranteed minimum distribution. The Proponent has more than ample capital to fund any such payments.

24.    The Plan also complies with Bankruptcy Code Section 1124. Valid business, legal and factual reasons exist for the separate classification of each of the classes of claims created and treated under the Plan. The claims in each class are substantially similar to the other claims in the same class. All unsecured non-priority claims, including claims arising from the rejection of executory contracts and unexpired leases, are in the same class.

25. <u>11 U.S.C. § 1129(a)(2)</u>. To the best of my knowledge, the Plan complies with the requirements of the Bankruptcy Code. Together with documents on file in these Chapter 11 Cases, including the monthly operating reports, the Disclosure Statement, the Disclosure Statement Order fixing the applicable deadlines in connection with Plan confirmation, approved ballots and the certificate of service of each of the aforementioned documents, establish that Bankruptcy Code Section 1129(a)(2) has been satisfied.

26. <u>11 U.S.C. § 1129(a)(3)</u>. The Plan, Disclosure Statement, proof of claims and the Debtors' schedules reflect the creditors that have claims in these cases.

27. The Proponent has worked in good faith toward Confirmation of the Plan and not by any means known to be forbidden by law. Thus, it is submitted that the Plan satisfies Section 1129(a)(3).

28. <u>11 U.S.C. § 1129(a)(4)</u>. The Proponent is unaware of any payments made by the Debtors to any professional person for services or for costs and expenses in connection with this bankruptcy case which has not been approved by this Court. There are no persons issuing securities or acquiring property under the Plan other than the Proponent, and such Plan is subject to the approval of this Court. Thus, Bankruptcy Code Section 1129(a)(4) has been satisfied.

29. <u>11 U.S.C. § 1129(a)(5)</u>. The Proponent has fully and accurately disclosed in the Disclosure Statement under the section entitled *Treatment of Claims and Interests* that the Plan provides for the continuation of the current interests in the Debtors. Thus, Bankruptcy Code Section 1129(a)(5) has been satisfied.

30. <u>11 U.S.C. § 1129(a)(6)</u>. In connection with the Plan, neither the Debtors nor the Proponent shall have the need to charge any rate that is subject to the jurisdiction of any

governmental regulatory commission which would require it to seek such commission's approval of any rate changes. Thus, Bankruptcy Code Section 1129(a)(6) has been satisfied.

31. <u>11 U.S.C. § 1129(a)(7)</u>. With respect to an analysis of the expected proceeds after a liquidation of Debtors' assets in the hypothetical event that all of Debtors' assets were to be liquidated pursuant to chapter 7 of the Bankruptcy Code, the Proponent refers the Court to the Liquidation Analysis in the Proponents' Disclosure Statement. For purposes of the Liquidation Analysis, the Proponent has assumed that this Chapter 11 case would have been converted to a case under Chapter 7 on the Plan's Effective Date, that a Chapter 7 Trustee would be appointed, that the Trustee would abandon an asset if there is no realizable equity for the trustee after payment of claims secured by the collateral and any estate tax liabilities resulting from the sale, and that hypothetical liquidation sales for cash would be made with the assistance of professional brokers as appropriate. In this regard, the liquidation analysis reflects a reasonable estimate of liquidation values; and, based on the amount of secured debt held by creditors and the nature of their collateral and the tax liabilities resulting from the sale of the collateral, holders of unsecured non-priority claims are not likely to receive any distribution in a chapter 7 liquidation. By contrast, under the Plan, such holders of allowed Administrative Claims shall receive 100% of their allowed claims on the Effective Date and holders of General Unsecured Claims in Class 6 shall receive at least a pro rata distribution of $350,000. All creditors holding pre-petition Claims shall receive funds in a waterfall that matches the priority such Claims have under applicable law. Accordingly, all Classes of Claims shall receive equal to or more than such Claims would receive in a hypothetical chapter 7 liquidation. Thus, Bankruptcy Code Section 1129(a)(7) has been satisfied.

32. <u>11 U.S.C. § 1129(a)(8)</u>. Classes 1, 6 and 9 are unimpaired and are conclusively presumed to have accepted the Plan. As per the Declaration of Daniel N. Zinman in Support of

Confirmation of the Plan, filed concurrently herewith, the Proponent has received a vote in favor of confirmation in Classes 2 and 3 and two votes in favor in Class 5, with no other ballots received. As such, those classes have voted in favor of the Plan. As per the Memorandum of Law in Support of Confirmation of the Plan, filed concurrently herewith, the Classes in which no votes have been made should be deemed to have accepted the Plan. Accordingly, Bankruptcy Code Section 1129(a)(8) has been satisfied.

33.  <u>11 U.S.C. § 1129(a)(9)</u>.  Pursuant to Section 1129(a), Article 2 of Plan provides that, subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of (a) the Effective Date, (b) the date payment of such Claim is due under the terms thereof or applicable law, or (c) three (3) Business Days after such Claim becomes an Allowed Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Debtors and the holder of such Claim; <u>provided, however</u>, that any Administrative Claim incurred by the Debtors in the ordinary course of its business shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto. There are no Priority Claims. Thus, the Plan complies with Section 1129(a)(9).

34.  <u>11 U.S.C. § 1129(a)(10)</u>.  As evidenced by the Voting Certification, creditors in Classes 2, 3 and 5 have voted in favor of the Plan. There have been no votes in Classes 4, 7, 8, or 9. Accordingly, such Classes should be deemed to have voted in favor on the Plan. Thus, Section 1129(a)(10) is satisfied.

4867-2496-4644, v. 1

35. <u>11 U.S.C. § 1129(a)(11)</u>. Since the Proponent is selling the Property by way of the Plan, the Plan is not likely to be followed by the need for further financial reorganization of the Debtors. Thus, Bankruptcy Code Section 1129(a)(11) has been satisfied.

36. <u>11 U.S.C</u>. § 1129(a)(12). The Plan provides that the Proponent shall remit all outstanding payments to the United States Trustee on the Effective Date. Thus, Bankruptcy Code Section 1129(a)(12) has been satisfied.

37. <u>11 U.S.C. § 1129(a)(13)</u>. The Debtors did not prior to, or after their Chapter 11 filings, provide any retiree benefits to their employees, if any. Thus, Bankruptcy Code Section 1129(a)(13) is not applicable and therefore has been satisfied.

38. <u>11 U.S.C. § 1129(a)(14) and (15)</u>. Since the Debtors are limited liability corporations, Bankruptcy Code Sections 1129(a)(14) and (15), which relate to domestic support obligations and required payments by individual debtors, are not applicable and therefore are satisfied.

39. <u>11 U.S.C. § 1129(a)(16)</u>. The transfer of the Property to the Successful Bidder, shall be effectuated at a closing to happen after Confirmation, and in accordance with any applicable provisions of non-bankruptcy law that governs the transfer of real property by a limited liability corporation. Thus, Bankruptcy Code Section 1129(a)(16) is satisfied.

40. Based on the foregoing, I respectfully request that the Plan should be confirmed.

[**THE REMAINDER OF THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK**]

**WHEREFORE**, the Proponent respectfully requests that this Court enter an Order Confirming the Plan.

Dated: New York, New York
      June 9, 2022

                                                            MARK GORMLEY