**KRISS & FEUERSTEIN LLP**
Jerold C. Feuerstein, Esq.
Daniel N. Zinman, Esq.
Stuart L. Kossar, Esq.
360 Lexington Avenue, Suite 1200
New York, NY 10017
(212) 661-2900 – telephone
(212) 661-9397 – facsimile

*Attorneys for 159 Broadway 1 LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------X

In re:                                                                  Chapter 11

**WB BRIDGE HOTEL LLC and 159**
**BROADWAY MEMBER LLC,**                         Case No.:  20-23288 (RDD)

                                                                        Jointly Administered

                              Debtors.

----------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION**
**OF 159 BROADWAY 1 LLC'S FIRST AMENDED PLAN**
**OF LIQUIDATION OF DEBTORS**


**KRISS & FEUERSTEIN LLP**
*Attorneys for 159 Broadway 1 LLC*
360 Lexington Avenue, Suite 1200
New York, New York 10017
(212) 661-2900

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF RELEVANT FACTS ........................................................................... 2

    A.  The Chapter 11 Case ............................................................................................ 2

    B.  Summary of Plan.................................................................................................. 2

    C.  Plan Solicitation ................................................................................................. 3

    D.  Voting Tabulation Summary............................................................................... 3

ARGUMENT ...................................................................................................................... 4

  I.   The Plan Satisfies the Requirements of Section 1129 for Confirmation ............................ 4

    A.  The Plan Complies With Applicable Provisions of the Bankruptcy Code (Section 1129(a)(1)).................................................................................................4

        (i)  The Plan Satisfies the Requirements of Section 1122 ...................................4
        (ii) The Plan Complies with Section 1123 of the Bankruptcy Code ..................5

    B.  The Plan Complies With Applicable Provisions of the Bankruptcy Code (Section 1129(a)(2)) ................................................................................................7

    C.  The Plan Has been Proposed in Good Faith and Not By Any Means Forbidden by Law (Section 1129(a)(3))................................................................................8

    D.  The Plan Has been Proposed in Good Faith and Not By Any Means Forbidden by Law (Section 1129(a)(3))................................................................................9

    E.  The Proponents Have Disclosed All Necessary Information Regarding Trustees, Officers, And Insiders (Section 1129(a)(5)) ..............................................9

    F.  The Plan Does Not Contain Any Rate Changes Subjection to the Jurisdiction of Any Governmental Regulatory Commission (Section 1129(a)(6))...............................10

    G.  The Plan Satisfies the "Best Interest" Test (Section 1129(a)(7)) ....................10

    H.  The Plan Satisfies (Section 1129(a)(8)) .........................................................11

    I.   The Plan Provides for Payment in Full of Allowed Administrative and Priority Claims (Section 1129(a)(9)).........................................................................12

    J.   At Least One Class of Impaired Claims Has Accepted the Plan (Section 1129(a)(10))..................................................................................................13

    K.  The Plan Meets the Feasibility Requirement of the Bankruptcy Code (Section 1129(a)(11)) ........................................................................................13

    L.  The Plan Provides for Full Payment of all Statutory Fees (Section 1129(a)(12)) ..........14

    M.  (Section 1129(a)(13-16) of the Bankruptcy Code are Inapplicable ...............14

    N.  The Plan Meets the Cramdown Requirements under (Section 1129(b)........................15

    O.  The Plan Complies with Section 1129(c-e)....................................................16

  II.  The Plan's Injunction, Settlement, and Exculpation Provisions Should Be Approved...... 16

III.  The Assumption and Rejection of Executory Contracts and Unexpired Leases Should be Approved......................................................................................................................17

IV.  The Proceeds from the Sale of the Property are Exempted From Taxes ...........................18

CONCLUSION......................................................................................................................... 19

4893-1318-3003, v. 1

## TABLE OF AUTHORITIES

**CASES**                                                                                     **PAGES**

*In re Adelphia Communications Corp*,
  368 B.R. 140, n. 273 (Bankr. S.D.N.Y 2007) ...................................................................... 12,17

*In re Drexel Burnham Lambert Grp. Inc.*,
  138 B.R. 714 (Bankr. S.D.N.Y. 1992) ................................................................................... 7,8

*In re Johns-Manville Corp.*,
  68 B.R. 618 (Bankr. S.D.N.Y. 1986) ..................................................................................... 5,8

*In re LightSquared Inc.*,
  513 B.R. 56 (Bankr. S.D.N.Y. 2014) ...................................................................................... 5

*In re Oneida Ltd.*,
  351 B.R. 79 (Bankr. S.D.N.Y. 2006) ................................................................................... 8,17

*In re Ruti-Sweetwater, Inc.*,
  836 F.2d 1263 (10th Cir. 1988) ............................................................................................ 12

*In re Sabine Oil & Gas Corp.*,
  555 B.R. 180 (Bankr. S.D.N.Y. 2016) ................................................................................. 4,17

*J.P. Morgan Chase Bank, N.A. V. Charter Commc'ns Operating, LLC (In re Charter Commun'ns, Inc.*
  419 B.R. 221 (S.D.N.Y. 2009) ............................................................................................... 4

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*
  843 F.2d 636 (2d Cir. 1988) ................................................................................................. 4,8

*Pub. Fin. Corp. v. Freeman (In re Pub. Fin. Corp.*),
  712 F.2d 219 (5th Cir. 1983) ................................................................................................. 8

4893-1318-3003, v. 1

STATUTES AND RULES

11 U.S.C. § 507 .................................................................................................5, 6,12

11 U.S.C. § 1107 ........................................................................................................2

11 U.S.C. § 1108 ....................................................................................................... 2

11 U.S.C. § 1122 .................................................................................................... 4, 5

11 U.S.C. § 1123 ................................................................................................ Passim

11 U.S.C. § 1125 .................................................................................................... 7, 8

11 U.S.C. § 1126 ................................................................................................. 7, 8,10

11 U.S.C. § 1129 ............................................................................................... Passim

11 U.S.C. § 1146 .................................................................................................... 18

4893-1318-3003, v. 1

Secured creditor 159 Broadway 1 LLC (the "Secured Creditor" and the "Proponent"), as secured creditor and mortgagee of WB Bridge Hotel LLC ("WB Bridge"), which, together with 159 Broadway Member LLC ("159 Member" and together with WB Bridge, the "Debtors") constitute the above captioned debtors and debtors-in-possession, and as interested parties in this Chapter 11 cases (the "Chapter 11 Cases"), pursuant to Section 1129 of the Bankruptcy Code (the "Bankruptcy Code") respectfully submit this memorandum of law in support of approval of Proponent's First Amended Plan of Liquidation for the Debtors [ECF No. 129] (the "Plan"),[1] together with the Declaration of Mark Gormley in Support of Confirmation of the Plan (the "Gormley Declaration") and the Declaration of Daniel N. Zinman in Support of Confirmation of the Plan (the "Zinman Declaration"), filed concurrently herewith.

## PRELIMINARY STATEMENT

As set forth in the First Amended Disclosure Statement for the Plan [ECF No. 128] (the "Disclosure Statement"), the Debtors filed these Chapter 11 cases following entry of a default judgment against, among others, WB Bridge in a pre-petition foreclosure sale brought by the Proponent.  The Plan represents the culmination of significant progress made by the Proponent working with multiple constituencies, including (without limitation): (i) the Debtor; (ii) the broker for the sale of the Property, Rosewood Realty Group (the "Broker" or "Rosewood"); (iii) the Official Committee of Unsecured Creditors (the "Committee"); and (iv) the Office of the United States Trustee (the "U.S. Trustee").

In short, as further set forth in the Plan and Disclosure Statement, the Proponent, through the Broker, will market the Property for sale.  If the Proponent is the Successful Bidder with a credit bid, the Proponent will provide sufficient cash to ensure payment of those claims and fees

---

[1] Capitalized terms used herein but not otherwise defined shall have the same meanings ascribed to them as set forth in the Plan (as defined herein) and/or Disclosure Statement (as defined herein).

that are required to be paid in cash under the Plan, including Statutory Fees, Administrative Claims, and the minimum distribution to General Unsecured Creditors in Class 5 of $350,000.  All other distributions under the Plan shall be made in priority order.  The Sale will permit the Property to realize its full market value for the benefit of the estate and all parties in interest.

As demonstrated herein, the Plan satisfies all requirements for confirmation under Section 1129 of the Bankruptcy Code and should be confirmed.

## STATEMENT OF RELEVANT FACTS[2]

A.  The Chapter 11 Case

5.    On December 21, 2020 (the "Petition Date"), the Debtors WB Bridge, under Case No. 20-23288, and 159 Broadway Member, under Case No. 20-23289, filed petitions (the "Petitions") for Chapter 11 bankruptcy relief before this Court.  The Debtors continue in possession of their assets and management of their business as debtors-in-possession pursuant to Bankruptcy Code Sections 1107 and 1108.

16.    On May 11, 2022, the Proponent filed the Disclosure Statement and the Plan.  On May 12, 2022, this Court entered an order (the "Disclosure Statement Approval Order") [ECF No. 130] that approved the Disclosure Statement, scheduled the confirmation hearing and approved notice thereof, approved ballots, and approved bid procedures to govern the sale of the Property.

B.  Summary of the Plan

The Proponent has worked diligently to prepare a liquidation plan with the primary goal to maximize value the value of the Property for the benefit of the Debtors' estates and all parties in

---

[2] For a more detailed recitation of the factual and procedural background of this matter, the Court is respectfully referred to the Plan, the Disclosure Statement, the Gormley Declaration, and the Zinman Declaration and requests such documents be incorporated herein by reference.

interest. To accomplish that result, the Plan provides for the sale of the Property, the proceeds of which shall be used to pay Claims, as more fully described below and in the Plan. The Sale shall be conducted following confirmation of the Plan. The bid procedures that will govern the Sale process were approved by this Court in the Disclosure Statement Approval Order. Since the Court entered that order, the Broker has been marketing the Property. The bid deadline has been set as July 25, 2022, with an auction date (if necessary) set as July 27, 2022 at 11:00 a.m.

If the Proponent is the Successful Bidder with a credit bid, the Proponent will provide sufficient cash to ensure payment of those claims and fees that are required to be paid in cash under the Plan, including Statutory Fees, Administrative Claims, and the minimum distribution to General Unsecured Creditors in Class 5 of $350,000. The Sale will permit the Property to realize its full market value for the benefit of the estate and all parties in interest.

C. Plan Solicitation

Pursuant to the Disclosure Statement Approval Order establishing Plan confirmation procedures, the Proponent has timely completed solicitation of votes on the Plan pursuant to the Disclosure Statement by transmitting: (a) the Confirmation Notice, (b) the Disclosure Statement Approval Order; (c) the Disclosure Statement, with exhibits; (d) the Plan; and (e) the appropriate Ballots to creditors.

D. Voting Tabulation Summary

Pursuant to the Disclosure Statement Order, the deadline to return ballots accepting or rejecting the Plan was set at June 7, 2022 (the "Voting Deadline") and are further detailed in the Zinman Declaration filed simultaneously herewith but can be summarized as follows:

| Voting Class | Accept | Reject |
|---|---|---|
| Class 2 – 159 Broadway 1 Secured Claim | 1 | 0 |
| Class 3 – 159 Broadway Mezz WB Bridge Secured Claim | 1 | 0 |
| Class 4 – WB Bridge Priority Claims | 0 | 0 |
| Class 5 – General Unsecured Claims | 2 | 0 |
| Class 7 – 159 Broadway Mezz 159 Member Secured Claim | 0 | 0 |
| Class 8 – 159 Member Priority Claims | 0 | 0 |
| Class 9 – 159 Member General Unsecured Claims | 0 | 0 |

## ARGUMENT

### I.    The Plan Satisfies the Requirement of Section 1129 For Confirmation

To confirm the Plan, the proponent must demonstrate by a preponderance of evidence that the plan satisfies each of the requirements of under Section 1129 of the Bankruptcy Code. *See* 11 U.S.C. § 1129(a); *J.P. Morgan Chase Bank, N.A. V. Charter Commc'ns Operating, LLC (In re Charter Commun'ns, Inc.* 419 B.R. 221, 244 (S.D.N.Y. 2009); *In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 310 (Bankr. S.D.N.Y. 2016). As shall be set forth herein, the Plan complies with Section 1129 and should be confirmed.

#### A.    The Plan Complies With Applicable Provisions of the Bankruptcy Code (Section 1129(a)(1))

Section 1129(a)(1) provides that a court may confirm a chapter 11 plan only if "[t]he plan complies with the applicable provisions of [title 11]." 11 U.S.C. § 1129(a)(1). The phrase "applicable provisions" has been interpreted to include sections 1122 and 1123, which govern the classification of claims and interests and the contents of a chapter 11 plan. *See Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.),* 843 F.2d 636, 648 (2d Cir. 1988).

##### (i)    The Plan Satisfies the Requirements of Section 1122

4

Section 1122(a) provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). In general, "substantially similar" has been interpreted to mean similar in legal character to other claims against a debtor's assets or to other interests in a debtor. *See In re Drexel Burnham Lambert Grp. Inc.*, 138 B.R. 714, 715-716 (Bankr. S.D.N.Y. 1992). In addition, Proponents have flexibility for classification. *See In re LightSquared Inc.*, 513 B.R. 56, 82–83 (Bankr. S.D.N.Y. 2014) ("Courts that have considered the issue [of classification], including the Court of Appeals for the Second Circuit as well as numerous courts in this District, have concluded that the separate classification of otherwise substantially similar claims and interests is appropriate so long as the plan proponent can articulate a 'reasonable' (or 'rational') justification for separate classification.").

The Plan complies with Section 1122(a) by classifying claims and interests into classes based on the legal rights, priority, and business considerations underlying such claims and interests. Each of the Classes are separately classified because each Class contains distinct types of Claims. Accordingly, the Proponent submits that the classification structure embodied in the Plan complies with Section 1122(a).

### (ii)  The Plan Complies with Section 1123 of the Bankruptcy Code

The Plan satisfies all applicable requirements of Section 1123(a) which requires the Plan shall: (1) designate classes of claims and interests, other than administrative expense claims under Section 507(a)(2) of the Bankruptcy Code, and priority tax claims under Section 507(a)(8) of the Bankruptcy Code (11 U.S.C. § 1123(a)(1)); (2) specify any class of claims or interests that is not impaired under the plan (11 U.S.C. § 1123(a)(2)); (3) specify the treatment of any class of claims or interests that is impaired under the plan (11 U.S.C. § 1123(a)(3)); (4) provide the same treatment

5

for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest (11 U.S.C. § 1123(a)(4)); (5) provide adequate means for the plan's implementation (11 U.S.C. § 1123(a)(5)); (6) provide that the debtor's organizational documents prohibit the issuance of non-voting securities (11 U.S.C. § 1123(a)(6)); (7) contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee (11 U.S.C. § 1123(a)(7)); and (8) in the case of an individual, provide for the payment of claims from certain future income of the Debtors (11 U.S.C. § 1123(a)(8)).

Articles II, III, and IV of the Plan satisfy Section 1123(a)'s first four requirements by: (a) designating Classes of Claims for all Claims that are not of the kinds specified in sections 507(a)(2), (a)(3), and (a)(8); (b) specifying the classes of Claims and interests unimpaired under the Plan; and (c) specifying the treatment of each Class of Claims and interests impaired under the Plan. Further, the Plan also satisfies Section 1123(a)(4) because the treatment of each Claim or interest within a Class is the same as the treatment of each other Claim or interest within that Class, except to the extent the holder agrees otherwise.

Section 1123(a)(5) requires that a plan provide "adequate means" for its implementation. 11 U.S.C. § 1123(a)(5). Articles 4 and 5 of the Plan satisfies this requirement by providing for (among other things) the sale of the Property and distribution of sale proceeds to holders of Allowed Claims in largely priority order.

Section 1123(a)(6) provides that the debtor's organizational documents prohibit the issuance of non-voting securities. 11 U.S.C. § 1123(a)(6). This section is inapplicable, however,

6

as the Debtors (upon information and belief) have no equity securities and, at any rate, the Plan does not create or issue any such securities.

Section 1123(a)(7) provides that a plan shall "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee." 11 U.S.C. § 1123(a)(7). Section 4.10 of the Plan provides that "Holders of Allowed Class 10 Interests shall continue to maintain such Interests in the 159 Member and the Post-Confirmation 159 Member following Confirmation of the Plan in the same percentages as existed as of the Petition Date." In addition, section 9.4, provides for the revesting of any assets remaining after payment in full of senior classes. The continuance of the interests in 159 Member is consistent with the interest of creditors and with public policy.

Section 1123(a)(8) is inapplicable is it only applies to an individual.

Section 1123(b) sets forth certain provisions that may, but need not be, included in a chapter 11 plan. 11 U.S.C. § 1123. Among other things, the Plan provides for: (a) impairing certain Classes of Claims and Interests; (b) rejection or assumption of executory contracts and unexpired leases; (c) sale of the Property; and (d) injunction, release and exculpation provisions. Each of these provisions of the Plan is consistent with Section 1123(b) of the Bankruptcy Code and permissible under applicable law. Accordingly, the Plan satisfies Section 1129(a)(1).

**B.     The Plan Complies With Applicable Provisions
of the Bankruptcy Code (Section 1129(a)(2))**

Section 1129(a)(2) of the Bankruptcy Code also requires the proponent of a Chapter 11 plan to comply with the applicable provisions of the Bankruptcy Code. *See* 11 U.S.C. § 1129(a)(2). A proponent must comply with the solicitation provisions of the Bankruptcy Code, including Sections 1125 and 1126. *See* 11 U.S.C. § 1129(a)(2); *see also In re Johns-Manville Corp.*, 68 B.R.

4858-5163-1908, v. 1

618, 630 (Bankr. S.D.N.Y. 1986) ("Objections to confirmation raised under § 1129(a)(2) generally involve the alleged failure of the plan proponent to comply with § 1125 and § 1126 of the [Bankruptcy] Code."), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd*, 843 F.2d 636 (2d Cir. 1988). As set forth in the Disclosure Statement Approval Order, the Proponent has complied with Section 1125. In accordance with the Disclosure Statement Approval Order, on May 13, 2022, the Proponent served, by first-class mail, the Disclosure Statement (with exhibits), the Plan, the Disclosure Statement Approval Order, the Confirmation Hearing Notice and appropriate voting ballots and, on November 8, 2021, filed proof of service thereof [as amended at ECF No. 142]. As such, the Proponent has complied with Sections 1125 and 1126 of the Bankruptcy Code.

**C.    The Plan Has Been Proposed in Good Faith and Not
By Any Means Forbidden by Law (Section 1129(a)(3))**

Section 1129(a)(3) requires a plan to have been "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). The Second Circuit has construed the good faith standard to be that "the plan was proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected." *In re Johns-Manville Corp.*, 68 B.R. 618, 631-32 (Bankr. S.D.N.Y. 1986) (internal quotation marks omitted), aff'd in part, rev'd in part on other grounds, 78 B.R. 407 (S.D.N.Y. 1987), aff'd sub nom., *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636. Additionally, good faith is to be determined "in light of the totality of circumstances surrounding" the formulation of the plan. *Pub. Fin. Corp. v. Freeman (In re Pub. Fin. Corp.)*, 712 F.2d 219, 221 (5th Cir. 1983). *See also In re Oneida Ltd.*, 351 B.R. 79, 85 (Bankr. S.D.N.Y. 2006) ("Good faith should be evaluated 'in light of the totality of the circumstances surrounding confirmation.'").

The Proponent proposed the Plan in good faith, in compliance with all applicable laws, rules and regulations, and not by any means forbidden by law. The Plan is the product of extensive,

8

good faith, arm's length negotiations among key constituencies and resulted in a Plan that will maximize the value of the Property to the benefit of all creditors. Accordingly, the Plan satisfies the requirements of Section 1129(a)(3).

**D.      The Plan Provides That Payments Made by the Proponents for Services or Costs and Expenses are Subject to Court Approval (Section 1129(a)(4))**

Section 1129(a)(4) requires that payments for services or costs and expenses incurred in or in connection with a chapter 11 case, or in connection with a plan and incident to the case, either be approved by or be subject to approval of the Court as reasonable. 11 U.S.C. § 1129(a)(4). This section requires all payments of compensation and reimbursement of expenses to retained professionals be subject to bankruptcy court review and approval as to reasonableness. Article 2 of the Plan sets forth procedures for filing and payment of professional fees that ensure these claims will be subject to Court approval. As such, the Plan complies with Section 1129(a)(4).

**E.      The Proponents Have Disclosed All Necessary Information Regarding Trustees, Officers, And Insiders (Section 1129(a)(5))**

Section 1129(a)(5)(A) requires that the plan proponent must disclose the identity and affiliations of the proposed officers and directors of the reorganized debtor, as well as the identity of any "insider" who will be employed or retained by the reorganized debtor and any compensation they will receive. 11 U.S.C. § 1129(a)(5). Additionally, the appointment or continuance of such officers and directors must be consistent with the interests of creditors and equity security holders and with public policy. 11 U.S.C. § 1129(a)(5)(A)(i)–(ii).

The Plan provides that the current equity holders, identified in the Debtor's schedules and/or statement of financial affairs, shall continue to hold their equity interests after the Effective Date of the Plan. The reorganized Debtor, however, will likely have no assets, as the Plan provides for the liquidation of all of the Debtor's known assets for distribution to creditors. In addition, the

Creditor Trust Causes of Action will be transferred to the Creditor Trust.  On June 6, 2022, the Proponent filed the Trust Declaration [ECF No. 140], which will govern the Creditor Trust, and identified Nat Wasserstein of Lindenwood Associates, LLC as the Creditor Trustee for the Creditor Trust, and Sam Maintenance Service Inc., a creditor, as the member of the Oversight Committee. Given the foregoing, the Plan complies with Section 1129(a)(5).

### F.    The Plan Does Not Contain Any Rate Changes Subject to the Jurisdiction of Any Governmental Regulatory Commission (Section 1129(a)(6))

Section 1129(a)(6) permits confirmation of a chapter 11 plan only if any regulatory commission that will have jurisdiction over the reorganized debtor has approved any rate change provided for in the plan.  Section 1129(a)(6) is inapplicable here because the Plan does not provide for any rate changes.

### G.    The Plan Satisfies the "Best Interests" Test (Section 1129(a)(7))

The "best interests" test set forth in Section 1129(a)(7) requires that each holder of a claim or interest in an impaired class either accept the plan or receive or retain property that is not worth less, as of the effective date of the plan, than the amount such holder would receive or retain if the debtor were liquidated under chapter 7.

Pursuant to Section 1126(f), each holder of a Claim or interest in a Class that is not impaired is conclusively presumed to have accepted the Plan.  Holders of claims and/or Interests in Class 1 (WB Bridge Other Secured Claims), Class 6 (159 Member Other Secured Claims), and Class 10 (Equity Interests) are not implicated under Section 1129(a)(7) because those claims or interests in such classes are unimpaired and are conclusively presumed to have accepted the Plan.

The remaining Classes (2, 3, 4, 7, 8, and 9) are impaired.  Based on the Zinman Declaration, there was one vote in each of Class 2 and Class 3 in favor of the Plan, two votes in Class 5 in favor of the Plan, and no other votes.  Accordingly, Classes 2, 3 and 5 have voted in favor of the Plan.

10

As discussed below, the Classes with no votes at all – Classes 4, 7, 8 and 9 – are deemed to accept the Plan.

Regardless, however, the best interest test is satisfied as the estimated recovery under the Plan available to holders of Claims in impaired classes equals or exceeds the estimated recovery that would be available to such holders in a hypothetical chapter 7 liquidation.  The Plan provides for the liquidation of Debtors' assets, but avoids the costs and expenses that would be incurred in a chapter 7 case such as Trustee's fees.  In addition, the Plan provides for a minimum payment to Class 5 Claims of $350,000 in the event the Proponent is the Successful Bidder with a credit bid. In Chapter 7, it is unlikely that any Claims other than the Proponent's Claims would receive a distribution. In addition, under the Plan, if the proceeds of the sale are sufficient, Claims junior to the Proponent's Claim will receive an additional distribution in priority order.  Given the increased fees in a Chapter 7 case and the lack of any agreement by the Proponent to give up some of the proceeds of the Sale to which it is entitled (to fund the Plan), it is likely that no Creditors other than the Proponent would receive a distribution in a Chapter 7 liquidation and, as to at least chapter 11 administrative expenses, the Cases in chapter 7 would be administratively insolvent.

Accordingly, the Plan satisfies the "best interests" test set forth in Section 1129(a)(7).

**H.      The Plan Satisfies Section 1129(a)(8)**

Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a debtor's plan or be unimpaired under the plan. *See* 11 U.S.C. § 1129(a)(8).

Holders of claims and/or Interests in Class 1 (WB Bridge Other Secured Claim), Class 6 (159 Member Other Secured Claims), and Class 10 (Interests in 159 Member) are not implicated because those claims or interests in such classes are unimpaired and are conclusively presumed to have accepted the Plan. In addition, as demonstrated by the Zinman Declaration, the holders of

Claims in Class 2 (159 Broadway 1 Secured Claim) and Class 3 (159 Broadway Mezz WB Bridge Secured Claim), and Class 5 (WB Bridge General Unsecured Claims) have voted in favor of confirmation of the Plan.

As for Class 4 (WB Bridge Priority Claims), Class 7(159 Broadway Mezz 159 Member Secured Claim), Class 8 (159 Member Priority Claims), and Class 9 (159 Member General Unsecured Claims) (collectively, the "Non-Voting Classes"), no creditor in such Non-Voting Classes voted on the Plan.  Given such non-vote, the Class should be deemed to have supported the Plan. As the Tenth Circuit Court of Appeals has explained, inaction by a non-voting creditor constitutes acceptance of plan:

> . . . the district court correctly affirmed the bankruptcy court's ruling that Heins' inaction constituted an acceptance of the Plan. To hold otherwise would be to endorse the proposition that a creditor may sit idly by, not participate in any manner in the formulation and adoption of a plan in reorganization and thereafter, subsequent to the adoption of the plan, raise a challenge to the plan for the first time. Adoption of the Heins' approach would effectively place all reorganization plans at risk in terms of reliance and finality.
>
> Adoption of the Heins' approach would relieve creditors from taking an active role in protecting their claims. We agree with the District Court's finding that creditors are obligated to take an active role in protecting their claims . . . .

*See In re Adelphia Communications Corp*, 368 B.R. 140, n. 273 (Bankr. S.D.N.Y 2007) (quoting *In re Ruti-Sweetwater, Inc.*, 836 F.2d 1263, at 1266–67 (10th Cir. 1988)).  Accordingly, the Plan satisfies Section 1129(a)(8).

I.    **The Plan Provides for Payment in Full of Allowed Administrative and Priority Claims (Section 1129(a)(9))**

Section 1129(a)(9) of the Bankruptcy Code requires that, unless a holder of a particular claim agrees to a different treatment with respect to such claim, such holder, entitled to priority under Section 507(a), shall receive the statutorily specified cash payments under a Chapter 11 plan.

4858-5163-1908, v. 1

See 11 U.S.C. § 1129(a)(9). Pursuant to Section 1129(a), Article 2 of Plan provides that (subject to the provisions of Article 8 of the Plan with respect to Disputed Claims), each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of (a) the Effective Date, (b) the date payment of such Claim is due under the terms thereof or applicable law, or (c) three (3) Business Days after such Claim becomes an Allowed Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Debtor and the holder of such Claim; _provided, however_, that any Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto.

In addition, section 4.4 of the Plan provides all priority claims are to be paid full. Thus, the Plan complies with Section 1129(a)(9).

### J.    At Least One Class of Impaired Claims Has Accepted the Plan (Section 1129(a)(10))

Section 1129(a)(10) requires at least one class of impaired claims to accept the Plan, excluding acceptance by any insider. As evidenced by the Zinman Declaration, and as previously set forth herein, the impaired Classes 2, 3 and 5 have voted in favor of the Plan. In addition, as set forth above, the Non-Voting Classes should be deemed to have voted in favor of the Plan. Accordingly, Section 1129(a)(10) is satisfied.

### K.    The Plan Meets the Feasibility Requirement of the Bankruptcy Code (Section 1129(a)(11))

Section 1129(a)(11) of the Bankruptcy Code requires that the Bankruptcy Court find that the Plan is feasible, as a condition precedent to confirmation. _See_ 11 U.S.C. § 1129(a)(11). This requirement, commonly known as the "feasibility" standard, requires that "the Plan is workable

13

and has a reasonable likelihood of success." *In re Drexel Burnham Lambert Grp. Inc.,* 138 B.R. at 762.

Here, the payments required under the Plan are funded from Sale proceeds. In addition, if the Proponent is the Successful Bidder with a credit bid, the Proponent will provide sufficient cash to ensure payment of those claims and fees that are required to be paid in cash under the Plan, including Statutory Fees, Administrative Claims, and the minimum distribution to General Unsecured Creditors in Class 5 of $350,000.

Thus, the Plan is feasible and complies with Section 1129(a)(11).

### L.    The Plan Provides for Full Payment of all Statutory Fees (Section 1129(a)(12))

Section 1129(a)(12) provides that a court may confirm a plan only if "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan." 11 U.S.C. § 1129(a)(12).  Here, pursuant to section 2.1 of the Plan,

> [a]ll fees and charges payable to the United States Trustee, including the Statutory Fees and any applicable interest thereon, that are due on or prior to the Effective Date, shall be paid no later than ten (10) days after the Effective Date from Available Cash.  Such fees, together with any applicable interest thereon, that may become due after the Effective Date shall be paid as they become due by the Proponents until the entry of a final decree closing the Chapter 11 Case, or until the Chapter 11 Case is converted or dismissed, whichever occurs earlier from Available Cash.

Thus, the Plan provides for full payment of statutory fees in accordance with Section 1129 (a)(12).

### M.    Sections 1129(a)(13-16) of the Bankruptcy Code are Inapplicable

Section 1129(a)(13) provides that a plan shall provide for the "continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of [the Bankruptcy Code] . . . for the duration of the period the debtor has obligated itself to provide such

benefits." 11 U.S.C. § 1129(a)(13). Section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Debtor's business operations.

Section 1129(a)(14) of the Bankruptcy Code requires the payment of certain domestic support obligations and Section 1129(a)(15) applies only in cases in which the debtor is an individual. See 11 U.S.C. § 1129(a)(15).  The Debtor is not an individual so these requirements are not applicable.

Section 1129(a)(16) provides that applicable non-bankruptcy law will govern all transfers of property under a plan to be made by "a corporation or trust that is not a moneyed, business, or commercial corporation or trust." 11 U.S.C. § 1129(a)(16). However, Section 1129(a)(16) does not apply because the Debtor is a moneyed, business, or commercial corporation.

### N. The Plan Meets the Cramdown Requirements under Section 1129(b)

Section 1129(b) of the Bankruptcy Code provides that if all applicable requirements of Section 1129(a) are met, other than Section 1129(a)(8), a plan may be confirmed so long as the requirements set forth in Section 1129(b) are met, commonly known as a "cram down".  As set forth above, all impaired Classes have voted in favor of the Plan or should be deemed to have voted in favor of the Plan.  If, however, this Court does not agree, the Proponent respectfully asserts that the Plan can be confirmed under a cram down.

Under Section 1129(b), the Court may cramdown the Plan over the dissenting vote of such impaired dissenting classes as long as the plan does not "discriminate unfairly" and is "fair and equitable" respecting the non-accepting classes.  Under Section 1129(b)(2)(A), a plan is fair and equitable as to secured creditors where, among other things, the secured creditor receives on account of such claim payment(s) totaling "at least the value of such holder's interest in the estate's interest in such property."  11 U.S.C. § 1129(b)(2)(A)(ii).  Under Section 1129(b)(2)(B), a plan is

fair and equitable as to unsecured creditors where, among other things, no junior creditor or interest holder will receive are retain any property.  11 U.S.C. § 1129(b)(2)(B)(ii).

Here, the Plan does not discriminate unfairly and is fair and equitable to each of the Non-Voting Classes.  As to Class 7 (159 Broadway Mezz 159 Member Secured Claim), the Plan provides in section 4.7 that such Claim will receive a distribution of Available Cash after payment of all Claims against WB Bridge, 159 Member's parent, up to payment in full with interest.  Thus, to the extent 159 Member has any property subject to the 159 Broadway Mezz's lien, 159 Member will receive the value of such property up to payment in full with interest.  Accordingly, the Plan satisfies Section 1129(b)(2)(A)(ii) as to Class 7.  As to the other Non-Voting Classes, such creditors will receive on account of such Claims a pro rata distribution of Available Cash after payment in full (with interest) to all senior Classes of Claims.  *See* Plan, §§ 4.4, 4.8, and 4.9.  Accordingly, the Plan satisfies Section 1129(b)(2)(B)(ii) as to such Classes.  Thus, it is respectfully submitted that the Plan does not discriminate unfairly and is fair and equitable under Section 1129(b).

> **O.    The Plan Complies with Section 1129(c-e)**

The Plan does not implicate Section 1129(c), which prohibits confirmation of multiple plans, because there is only one proposed plan. *See* 11 U.S.C. § 1129(c). The Plan also does not violate Section 1129(d) because the Plan's purpose is not to avoid taxes or the application of Section 5 of the Securities Act of 1933.  *See* 11 U.S.C. § 1129(d).  Finally, Section 1129(e) is inapplicable because the Debtor's chapter 11 cases is not a "small business case." *See* 11 U.S.C. § 1129(e).

> **II.    The Plan's Injunction, Settlement, and Exculpation Provisions Should Be Approved**

Article 9 of the Plan, entitled "Injunction and Releases", provides an injunction, limitation of liability and release.  Section 1123(b)(3) expressly provides that a chapter 11 plan may include

"the settlement or adjustment of any claim or interest belonging to the debtor or to the estate." 11 U.S.C. § 1123(b)(3)(A). Additionally, it is well settled that debtors are authorized to settle or release their claims in a chapter 11 plan. *See, e.g., In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 263 n.289 (Bankr. S.D.N.Y. 2007) (a debtor may release its own claims); *In re Oneida Ltd.*, 351 B.R. 79, 94 n.21 (Bankr. S.D.N.Y. 2006). *See In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 309 (Bankr. S.D.N.Y. 2016) ("Debtor releases are approved by courts in the Second Circuit when the Debtors establish that such releases are in the 'best interests of the estate[.]'").

The Plan's provisions regarding injunction, limitation of liability and release are: (a) the product of arm's-length negotiations, (b) critical to obtaining the support of the various constituencies for the Plan, (c) given for valuable consideration, (d) fair and equitable and in the best interests of the Debtors and their estates, and (e) consistent with Second Circuit law, and reflect the important contributions, concessions, and compromises made by the various parties involved in the process of formulating and supporting the Plan. Without the injunction, limitation of liability and release, these stakeholders may not have participated in the negotiations and compromises that led to the Plan and the Plan may not be workable. Accordingly, the Plan's injunction, limitation of liability and release provisions should be approved by this Court.

## III.    The Assumption and Rejection of Executory Contracts and Unexpired Leases Should Be Approved

Section 1123(b)(2) of the Bankruptcy Code allows a plan, subject to Section 365, to provide for the assumption, rejection, or assignment of any executory contract or unexpired lease not previously assumed or rejected under Section 365 of the Bankruptcy Code. 11 U.S.C. § 1123(b)(2). In accordance with Section 1123(b)(2), Article V of the Plan, all Executory Contracts or Unexpired Leases to which a Debtor is a party as of the Effective Date that were not previously rejected, assumed, or assumed and assigned by the Debtors shall be rejected and disaffirmed under

the Plan as of the Effective Date, unless assumed by the Successful Bidder pursuant to an Assumption Notice, as more fully provided in section 5.1 of the Plan. The Proponents respectfully submit that this Court should approve the procedure outlined in section 5.1 and any resulting rejections.

**IV.    The Proceeds from the Sale of the Property Are Exempted From Taxes**

Pursuant to Section 1146(a) of the Bankruptcy Code "[t]he issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any State or local law imposing a stamp tax or similar tax." Here, pursuant to section 6.1(c) of the Plan,

> [p]ursuant to Section 1146(a) of the Bankruptcy Code, the deed conveying the Property in accordance with the Sale and any deed further conveying the property with two years following the Sale by the Proponents or their affiliate or designee shall be an instrument of transfer in connection with or in furtherance of the Plan shall not be subject to tax under any law imposing a stamp tax, real estate Transfer Taxes, mortgage recording tax or similar tax, and, to the extent provided by Section 1146(a) of the Bankruptcy Code, if any, shall not be subject to any state, local or federal law imposing sales tax. All proceeds of the Auction (after applicable expenses) shall be deposited with the Distribution Agent and become Available Cash.

It is respectfully submitted that this Court permit all such transfers under the Plan to be exempt under Section 1146(a) as provided in section 6.1(c) of the Plan, as this is integral to confirmation of the Plan.

**[REMINDER OF PAGE INTENTIONALLY LEFT BLANK]**

18

## <u>CONCLUSION</u>

The Proponent respectfully submits that the Plan represents the best means to ensure the payment to Creditors in these cases in a manner that fairly reflects Creditor priorities and complies with all applicable requirements under the Bankruptcy Code and the Bankruptcy Rules.  Thus, the Plan should be confirmed.

Dated: New York, New York
          June 10, 2022

                              KRISS & FEUERSTEIN LLP


                              By:     */s/ Jerold C. Feuerstein*
                                       Jerold C. Feuerstein, Esq.
                                       Daniel N. Zinman, Esq.
                                       Stuart L. Kossar, Esq.
                                       360 Lexington Avenue, 12th Floor
                                       New York, New York 10017
                                       (212) 661-2900


                              *Attorneys for 159 Broadway 1 LLC*

19