**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------X

In re:

**WB BRIDGE HOTEL LLC and 159 BROADWAY MEMBER LLC,**

Debtors.
---------------------------------------------------------X

Chapter 11

Case No.: 20-23288 (SHL)

Jointly Administered

**DECLARATION OF GREG CORBIN REGARDING SALE**
**PURSUANT TO LOCAL BANKRUPTCY RULE 6004-1(f)**

GREG CORBIN hereby declares under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge, information and belief:

1. I am a licensed real estate agent in the state of New York and am the President of Bankruptcy and Restructuring at Rosewood Realty Group ("Rosewood"). Rosewood is a duly licensed broker under the laws of the State of New York and its license number is 31JU1174401.

2. Rosewood's principal place of business is 152 West 57th Street, 5th Floor, New York, NY 10019.

3. I am authorized to execute this Declaration on behalf of Rosewood.

4. Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.

5. I respectfully submit this Declaration to inform the Court as to the results of the sale conducted pursuant to the *159 Broadway 1 LLC's First Amended Plan of Liquidation for Debtors* [ECF No. 129] (the "Plan"), as confirmed by Court order entered on July 7, 2022 [ECF No. 160] and the bid procedures approved by an order entered on May 12, 2022 [ECF No. 130]

(the "Bid Procedures") in connection with the sale of the real property commonly known as 159 Broadway, Brooklyn, New York 11211 (Block: 2457, Lots 34 and 9039) (the "Property").

6. The Debtor retained Rosewood as broker pursuant to an order entered on October 12, 2021 [ECF No. 106] (the "Retention Order"). A copy of the Retention Order is attached hereto as **Exhibit A.**

7. Under my direction, Rosewood has extensively marketed the sale of the Property, including, among many other things, sending HTML email campaigns to approximately 39,000 investors, sent emails to 2,540 bankruptcy and real estate attorneys and trustees, launched social media campaigns on numerous platforms, designed and sent an 82 page offering memorandum to investors, hired a third party service to take aerial drone photos and create amenities maps, posted the listing to numerous real estate websites, featured as New York Real Estate Journal Property of the Month, ran banner ads in Pincus Media Co's newsletter, ran online and print ads in Epoch Times, cover of Chinese Daily and called and emailed numerous potentially interest parties using Rosewood's proprietary database. To the extent any party requested to inspect the Property, I arranged for such inspection.

8. A few weeks prior to auction there were multiple bidders who were prepared to outbid the Proponent. They had engaged in advanced negotiations, but it subsequently came to light that the ICAP tax abatement, providing an annual savings of approximately $3,000,000, had expired and could not be reinstated. This fact was unknown until the 18th hour and had drastic impact on value. Unfortunately, after learning this information, no party other than 159 Broadway 1 LLC (the "Proponent"), the proponent under the Plan and the Debtor's secured creditor submitted a qualified bid under the Bid Procedures. Accordingly, the Successful Bidder under the Bid

Procedures is the Proponent using a credit bid (plus the amounts of cash necessary to be paid under the Plan).

9. Attached hereto as **Exhibit B** is the invoice of the auctioneer, which constitutes the sole expense for which Rosewood is seeking reimbursement, which I submit complies with S.D.N.Y. Local Bankruptcy Rule 6005-1. The buyer's premium is $125,000, which was previously approved by this Court in the Retention Order. The expenditures and disbursements, which total $2,000.00, are reasonable and necessary expenses directly related to the sale of the Property.

10. It is my opinion that the Proponent has acted in good faith in making its qualified bid. I did not make any information available to the Proponent that was not also available to all other potential bidders.

11. Based on my extensive contacts with the potential bidders, I do not believe that there was any collusion between the Proponent and any other potential bidder. I believe that the Proponent acted in good faith in making its bid.

WHEREFORE, I respectfully request entry of an order approving the sale to the Buyer, with a finding under Section 363(m) and (n) of the Bankruptcy Code and for approval of my fees and expenses.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: New York, New York
November 9th, 2022

Greg Corbin

# Exhibit A

**(Immediately Follows This Page)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

In re:

WB BRIDGE HOTEL LLC and
159 BROADWAY MEMBER LLC,

Debtors.
--------------------------------------------------------X

Chapter 11

Case No.: 20-23288 (RDD) and
20-23289 (RDD)
(Jointly Administered)

ORDER AUTHORIZING RETENTION OF
REAL ESTATE ADVISOR AND RELATED RELIEF

Uponthe application ("Application") of the debtors and debtors in possession WB Bridge Hotel LLC and 159 Broadway Member LLC (together, "Debtors") by their attorneys, Robinson Brog Leinwand Greene Genovese & Gluck P.C., dated September 2, 2021 and the Declaration of Greg Corbin, dated September 2, 2021, seeking authorization for the Debtors' retention of Rosewood Realty Group ("Rosewood") as their exclusive real estate advisor for the marketing of the real property located at 159 Broadway, Brooklyn, New York ("Property"); and 159 Broadway Avenue 1 LLC's ("Senior Secured Lender") having filed its Limited Objection and Reservation of Rights ("Limited Objection") to the Application; and counsel having informed the Court that the Debtors and the Senior Secured Lender having resolved the Limited Objection on the terms set forth in this Order; and there being no other objections to the Application; and no additional notice or a hearing being required; and after due deliberation it appearing that Rosewood does not hold or represent an adverse interest to the Debtors or their estate, that it is

disinterested under 11 U.S.C. § 101(14), and that its retention on the terms of this Order is necessary and in the best interests of the estates; and good and sufficient cause appearing, it is hereby

**ORDERED**, that the Debtors are authorized, under sections 327(a), and 328 of the Bankruptcy Code, enter into the Retention Agreement ("Agreement"), between the Debtors and Rosewood in the form attached to this order as **Exhibit 1**, to employ Rosewood, effective as of August 31, 2021, as its exclusive real estate advisor under the terms set forth in the Agreement and incorporated herein as modified by this Order; and it is further

**ORDERED**, that to the extent there is a conflict between this Order and the Application or the Agreement, if any, the terms of this Order shall govern; and it is further

**ORDERED**, that Rosewood shall be compensated on the terms of the Agreement pursuant to an order of this Court granting a proper application therefor under sections 328(a) and 330 of the Bankruptcy Code; provided, that such application may be included in a motion for approval of the sale of the Property; and it is further

**ORDERED**, that (i) Rosewood shall not have to keep time records for services performed in connection with its engagement, (ii) none of the fees payable to Rosewood shall constitute a "bonus" under applicable law, (iii) any unpaid Rosewood's fees and expenses shall be treated as administrative expense claims in

the Debtors' bankruptcy cases, and (iv) neither the Debtors nor Rosewood shall be required to seek authorization from any other jurisdiction with respect to the relief granted by the Order approving this Agreement; and it is further

**ORDERED**, that this Court shall retain jurisdiction to hear and determine all matters arising from or related to implementation of this Order.

**DATED:** White Plains, New York
October 11, 2021

/s/ Robert D. Drain______________________
**HONORABLE ROBERT D. DRAIN**
**UNITED STATES BANKRUPTCY JUDGE**

# Exhibit 1



**RETENTION AGREEMENT**

This Retention Agreement ("Agreement") is between WB Bridge Hotel LLC and 159 Broadway Member LLC ("Debtor") and Rosewood Realty Group ("Rosewood"). Debtor hereby employs and retains Rosewood, granting Rosewood for a period of time as set forth herein to act as special real estate advisor for the Debtor having, among other things, the sole and exclusive and irrevocable right and authority to arrange a joint venture, financing or recapitalization, negotiate refinancing, sell, net lease or otherwise dispose of all or any portion of the real property known as, and/or air rights pertaining to 159 Broadway, Brooklyn, NY (all or a portion of the property and/or air rights related thereto are referred to hereinafter as the "Property").

1. Subject to approval of the Bankruptcy Court (defined hereinafter), the term of Debtor's retention of Rosewood shall be effective and commence on the date this Agreement is executed by both parties and shall continue in effect for one hundred eighty (180) days from the date of entry an order of the Bankruptcy Court approving this Agreement (the "Term"). Thereafter, the Term shall be automatically extended for successive thirty (30) day periods until terminated by either party upon at least thirty (30) days advance written notice to the other party.

2. Should, during the Term, Debtor enter into an agreement to refinance, borrow against, restructure its existing debt encumbering the Property, and/or recapitalize the Property, in whole or in part, and/or enter into a joint venture agreement relating to the Property, then Debtor will pay Rosewood, at closing, a fee in an amount equal to two and one half percent (2.5%) on a direct deal and three and one half percent (3.5%) on a co-broke, of the aggregate amount of gross refinancing or restructured indebtedness, recapitalization, and/or joint venture investment received or obtained, or to be received or obtained by Debtor, as the case may be, regardless of when the closing of same takes place.

3. For the purposes of this Agreement, the "Additional Period" will be one year after expiration of the Term. Should, during the Additional Term, Debtor enter into an agreement to refinance, borrow against, restructure its existing debt encumbering the Property, and/or recapitalize the Property, in whole or in part, and/or enter into a joint venture agreement relating to the Property, in each case with a person or entity with whom Rosewood has negotiated concerning the Property, or to whose attention the Property has been brought by Rosewood, or who was introduced to Debtor by Rosewood during the Term, then Debtor will pay Rosewood, at closing, a fee in an amount equal to two and one half percent (2.5%) on a direct deal and three and one half percent (3.5%) on a co-broke, of the aggregate amount of gross refinancing or restructured indebtedness, recapitalization, and/or joint venture investment received or obtained, or to be received or obtained by Debtor, as the case may be, regardless of when the closing of same takes place.

4. Rosewood will be paid a commission equal to one and one half percent (1.5%) on a direct deal and two percent (2%) on a co-broke, of the gross purchase price of the Property, which will be paid directly to Rosewood at closing without further order of the Court, by the successful purchaser, separate from and in addition to the consideration (or gross purchase price) that the successful purchaser pays for the Property, upon the occurrence of any of the following events:

    a. Debtor enters into an agreement during the Term to sell, transfer or convey ownership of the Property in whole or in part, whether individually or as part of a package, or a sale of the Property at a bankruptcy auction, or other sale permitted by the bankruptcy court, such as a sale under Section 363 of the Bankruptcy Code or pursuant to a confirmed plan of reorganization, regardless of whether the

{01120736.DOCX;1 }



closing occurs after the expiration of the Term and regardless of whether the Debtor engages a different broker or advisor to close a transaction; or

b. If a sale, exchange or other conveyance of the Property or ownership or control of the Property is made or takes place within the "Additional Period" after expiration of the Term to a Prospective Purchaser with whom Debtor had not reached an agreement during the Term, but with whom Rosewood has negotiated concerning the Property, or to whose attention the Property has been brought by Rosewood, or who was introduced to Debtor by Rosewood during the Term, or to a credit bidder. For these purposes, a "Prospective Purchaser" shall include partnerships, joint ventures, limited liability companies, corporations, trusts or other similar entities which the prospective buyer represents, is involved with, or in which it holds an ownership, management or beneficial interest.

c. In the event the senior secured mortgagee signing off on this Agreement below or an affiliated entity (the "Loan Holder") is the successful bidder for the Property and closes on the purchase, it agrees to pay Rosewood a fee at closing of $125,000 plus reimbursement of reasonable out of pocket expenses, which, in such circumstances, shall be the only fee to which Rosewood shall be entitled. If any assignee of the Loan Holder not affiliated with the Loan Holder is the successful purchaser and closes on the purchase of the Property, then the assignee must pay a buyer's premium equal to one and one quarter percent (1.25%) on the amount of the credit bid made by such assignee, which buyer's premium will be paid directly to Rosewood at closing without further order of the Court and shall be the only fee to which Rosewood is entitled.

For the purposes of this Agreement, the term "gross purchase price" includes the sum of the total consideration transferred to, or for the benefit of, the Debtor and value of debt and liabilities assumed and liabilities reduced, and any credit bid by a secured lender, and any consideration transferred to or for the benefit of the secured lender for the assignment of its credit bid or claim, and contingent, earned or other consideration paid or payable, directly or indirectly, in connection with a sale or transfer of title to the Property. For the purposes of this Agreement, the gross purchase price and the commission due to Rosewood will not be offset or reduced by the costs of advertising, the Debtor's legal fees, any break-up fees, broker's expenses or closing costs and/or closing adjustments, including any adjustments and/or payments of whatever kind to lienholders, secured parties or offerors. Debtor will not close on any sale or transfer of the Property unless Rosewood is paid at the closing the commission to which Rosewood is entitled hereunder.

For the avoidance of doubt, if Debtor enters into a contract for the sale of the Property, the result of which would entitle Rosewood to a commission hereunder, and a higher or better offer is approved by the Bankruptcy Court, then regardless of who may be the successful purchaser, Rosewood will be entitled to a commission pursuant to the terms of this Agreement, as, if and when the closing with the successful purchaser occurs, based on the successful purchaser's gross purchase price.

5. All inquiries, offers, expressions of interest and communications from principals, outside brokers and other parties or professionals will be re-directed and referred to Rosewood by Debtor, its principals, officers, counsel, accountants and other professionals or representatives. Debtor agrees to conduct all negotiations through Rosewood exclusively and to advise all interested persons of this exclusive right. Debtor agrees to conduct all negotiations through Rosewood exclusively. Should another broker be involved in a sale, refinancing, recapitalization or restructuring of the Property, it may seek compensation only from its client.



**RETENTION AGREEMENT**

Subject to Bankruptcy Court approval of this Agreement, Rosewood will be authorized to act as agent for Debtor, and to advertise, market, negotiate and coordinate the closing on the sale or refinancing of the Property. In order to coordinate efforts concerning a possible transaction, neither Debtor nor any representative of Debtor will initiate any discussions with a third party regarding a potential transaction involving the property except through Rosewood.

6. Debtor will reimburse the out-of-pocket expenses incurred by Rosewood in its performance under this Agreement, including without limitation reasonable expenses of marketing, advertising, promotion, travel and transportation, postage, courier and overnight express fees. Rosewood will be reimbursed for its out-of-pocket expenses at the time of closing, or alternatively, upon forwarding an invoice to Debtor, if the Property is not sold. For the avoidance of doubt, Rosewood's right to this expense reimbursement is separate and apart from any right it may have to a commission hereunder.

7. Debtor will, promptly after its execution of this Agreement, file an application and proposed order seeking from the Bankruptcy Court approval of its employment of Rosewood pursuant to the terms of this Agreement, pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code. Debtor agrees and acknowledges to attach a complete copy of this Agreement to the application. Debtor will provide Rosewood the employment application and proposed order authorizing Debtor's employment of Rosewood sufficiently in advance of their filing in order for Rosewood to have ample time to review and discuss any comments it may have with Debtor, and the employment application must be acceptable to Rosewood in its discretion. The proposed order will include, without limitation, the following terms and conditions: (a) finding that none of the fees or commissions to Rosewood hereunder constitute a "bonus" under applicable law; (b) directing that Rosewood will be exempt from keeping time records for its work hereunder (as Rosewood will not be billing on an hourly basis); (c) finding that the terms and conditions of this Agreement are reasonable. (d) all amounts due hereunder to Rosewood will be paid at closing without a further application or order of the Bankruptcy Court; and (e) directing that any unpaid commissions, fees, and marketing expenses owed to Rosewood shall be treated as an administrative claim under Section 507(a)(1) of the Bankruptcy Code.

8. If an order containing these terms is not obtained from the Bankruptcy Court within 30 days after both parties have signed this Agreement, then Rosewood may terminate this Agreement in which case it will be null and void. If Debtor obtains an order of the Bankruptcy Court authorizing its use of cash collateral or debtor in possession financing and if the order requires submission of a proposed budget specifying post-petition expenditures, then Debtor will include in the budget line items providing for the payment of commissions or fees to be paid or reimbursed under this Agreement. All amounts projected to be paid to Rosewood under this Agreement will be included in the carve-out for professionals provided in Debtor's bankruptcy case.

9. This Agreement may not be modified, assigned and or rescinded, and once approved by the Bankruptcy Court, will be binding on and inure to the benefit of all parties including any of Debtor's affiliates, representatives, designees, successors and assigns, unless it is changed in a writing signed by both parties. Debtor agrees to incorporate this Agreement into any sales contract for the Property.

10. Debtor will deliver to Rosewood all financial and other information requested by Rosewood for the purpose of its performance hereunder, including without limitation title reports, engineering and environmental reports, building plans, plot plans and surveys, income and expense statements, lease summaries, and rent roll. All information provided by Debtor to Rosewood will be, to the knowledge of Debtor, accurate and



**RETENTION AGREEMENT**

complete in all material respects, and if Debtor becomes aware that any information it has provided Rosewood is or has become materially inaccurate or incomplete, Debtor will promptly so notify Rosewood in writing. Debtor agrees to disclose to Rosewood any existing liens or encumbrances against the Property and further agrees to disclose any new liens which arise during the Term. Debtor will immediately inform Rosewood of any building code violations, environmental hazard or contamination relating to the Property, and of any existing or pending violation of federal, state or local environmental laws that become known to Debtor. If Debtor has ordered any environmental reports or studies, as soon as same become available, Debtor will immediately provide a true and complete copy to Rosewood, and Rosewood is hereby authorized to disseminate same to prospects. Rosewood will be entitled to rely, without independent verification, on the accuracy and completeness of all information supplied to it by Debtor and Rosewood will not be responsible to Debtor, its creditors, or any third party for the inaccuracy or incompleteness of any information provided to it by Debtor.

11. To the fullest extent permitted by applicable law, Debtor will indemnify and hold Rosewood and its employees (each a "Covered Person") from and against any and all losses, claims, demands, liabilities, expenses, judgments, fines, settlements and other amounts arising from any and all claims, demands, actions, suits, proceedings, civil, criminal, administrative or investigative in which the Covered Person may be involved, or threatened to be involved; as a party or otherwise, relating to or arising out of this Agreement or performance thereunder, except that no Covered Person shall be entitled to such indemnification with respect to any loss, claim, damage, demand, liability, expense, judgment, fine, or settlement incurred by such Covered Person by reason of such Covered Person's own gross negligence, willful misconduct or willful breach of this Agreement.

12. Within seven days of its execution of this Agreement, Debtor will deliver to Rosewood a list of all brokers, principals or other prospects who have expressed an interest in acquiring, refinancing, recapitalizing or entering into a joint venture with respect to the Property, along with all correspondence and other records that relate to that interest.

13. Debtor will share with Rosewood information Rosewood may request regarding the source of any sale, refinancing, recapitalization of the loan that Debtor asserts did not involve Rosewood or any of its agents or representatives to the extent such information may affect Rosewood's entitlement to payment hereunder.

14. Any commission or fee to which Rosewood is entitled under this Agreement, as the case may be, will be paid at closing, by official bank / certified check or wire, and Rosewood will be entitled to make demand of any escrow holder or closing attorney for payment from the proceeds of sale or refinance. For the avoidance of doubt, Rosewood will be entitled to a commission or fee, as the case may be, regardless of whether the buyer or other party entering into the subject transaction with Debtor was first introduced to the Property by Rosewood. Debtor hereby authorizes and instructs any escrow agent or counsel (without need for further authorization or permission) to pay Rosewood its commission or fee in strict compliance with the terms of this Agreement, time being of the essence, simultaneously with the closing or other consummation of the subject transaction.

15. Each party to this Agreement will deal with the other fairly so as to allow it to perform its duties and to receive the benefits of this Agreement and will not interfere, prevent or prohibit the other party, in any manner, before or during the closing of a sale of the Property, from carrying out its obligations under this Agreement.



**RETENTION AGREEMENT**

16. Should the Bankruptcy Court order a sale of the Property at auction, Rosewood is authorized to and will act as the exclusive auctioneer and all terms will remain the same.

17. Debtor represents and warrants to Rosewood that:

   a. Upon approval by the Bankruptcy Court, Debtor will have the right, power and authority to retain Rosewood and will be authorized and directed to perform this Agreement, and this Agreement will constitute a valid and legally binding obligation of Debtor, enforceable in accordance with its terms.

   b. To the best of Debtor's knowledge and unless otherwise previously disclosed, Debtor now holds (and, up to the moment of sale provided for under this Agreement, will hold) good and marketable or insurable title to each Property.

   c. If Debtor reaches agreement with a third party to refinance, borrow against, recapitalize or sell any of the Property, Debtor will use its best efforts to obtain, and will not delay, any effort, application, petition or motion to obtain any necessary approval of the Bankruptcy Court or any other judicial, governmental, or regulatory authority approval.

18. Debtor agrees that Rosewood and its affiliates, and their respective officers, directors, employees, agents and representatives will not be liable (whether directly or indirectly, in contract, tort or otherwise), to Debtor or its security holders or creditors for any matter, cause or thing related to or arising out of the retention of Rosewood pursuant to, or the performance by Rosewood of services under, this Agreement except to the extent that Rosewood if found by final judgment by a court of competent jurisdiction to have acted in bad faith, or with gross negligence or to have engaged in willful misconduct in providing services pursuant to this Agreement.

19. All fees payable to Rosewood hereunder will be free and clear of any liens, claims and encumbrances, including the liens of any secured creditor of Debtor.

20. Except as otherwise set forth herein, Rosewood will not be responsible for any other fees or commissions in connection with a disposition, refinancing or recapitalization by the Debtor, including any fees or commissions that may be owed to any other broker.

21. Debtor's obligations under this Agreement will survive any change in control of the Debtor. If a trustee in bankruptcy is appointed for the Debtor, this Agreement will survive and remain in full force and effect.

22. The Bankruptcy Court will retain jurisdiction over any and all disputes under or otherwise relating to the construction and enforcement of the transactions contemplated hereunder. If the Debtor's bankruptcy case is dismissed, or the Automatic Stay is lifted or modified with respect to a Property and that Property is not disposed of under Bankruptcy Court jurisdiction, then any dispute between the parties arising under this Agreement will be resolved in the New York State Supreme Court, County of New York, Commercial Division.

23. Rosewood may at its option and own expense place announcements and advertisements or otherwise publicize its role in connection with this Agreement, including on Rosewood's internet website, in



newspapers, periodicals, and in its marketing materials as it may choose, stating that it has acted as advisor to Debtor with respect to a transaction involving the Property.

24. Rosewood will have no liability for delays, failure in performance, or damages due to fire, explosion, lightning, power surges or failures, strikes or labor disputes, water, war, civil disturbances, acts of civil or military authorities, telecommunications failures, fuel or energy shortages, acts or omissions of communications carriers, or other causes beyond Rosewood's control whether or not similar to the foregoing.

25. From time to time, Rosewood or one of its affiliated entities may and shall have the right to advise or to provide services to several industry participants, some of which may be competitors of the Debtor. The Debtor, and its directors, officers, members and principals, waive any right to commence an action, suit or proceeding or to make any demand, complaint or claim against Rosewood, its subsidiaries, affiliates, directors, officers, members, principals or other personnel, that arises out of the right of Rosewood or one of its related entities to advise or provide services to an industry competitor of the Debtor. Notwithstanding the foregoing, because of the substantial number of brokers and salespersons employed by Rosewood, a broker or brokerage team employed by Rosewood may on occasion represent a prospect who may be interested in the Property, and which representation is intended to be independent of Rosewood's representation hereunder. In such a case, Rosewood will disclose its dual role in the potential transaction to the Debtor and to the prospect, will and implement reasonable industry safeguards to assure confidentiality to both the Debtor and the prospect. The Debtor acknowledges and agrees that: (a) such occasional dual representation may occur, subject to appropriate disclosure as provided above; (b) such brokerage team representing the prospect will be deemed to be a permitted independent engagement for purposes hereof, but Debtor will have no responsibility for same; and (c) Debtor agrees that Rosewood will be entitled to compensation and reimbursement of any and all amounts due and payable hereunder notwithstanding a disclosed dual engagement.

26. Rosewood's role will be as agent of the Debtor. The Debtor will remain fully responsible for all decisions and matters as to which Rosewood's advice is sought. Rosewood is not assuming any management responsibilities for or on behalf of the Debtor. Debtor and Rosewood acknowledge and agree that Debtor's engagement of Rosewood does not confer and is not intended to confer any rights upon any person or entity not a party hereto, including any security holders or creditors of the Debtor. Rosewood's duties hereunder run solely to the Debtor. All advice provided by Rosewood to the Debtor pursuant to this Agreement is intended solely for the use and benefit of the Debtor. Debtor agrees that Rosewood's advice may not be disclosed publicly or made available to third parties without Rosewood's prior written consent. Rosewood may condition the granting of such prior written consent upon obtaining a non-reliance letter and a release from any such third parties.

27. Any notice or communication sent with respect to this Agreement must be in writing and delivered via overnight mail (using a nationally recognized courier service):

<u>If to Debtor</u>:

159 Broadway Member LLC
c/o GC Realty Advisors LLC
3284 N. 29th Court
Hollywood, FL 33020



**RETENTION AGREEMENT**

With a copy to:
Robinson Brog Leinwand
Greene Genovese & Gluck P.C.
875 Third Avenue, 9th Floor
New York, NY 10022
Attn: Fred B. Ringel

If to Rosewood:
Rosewood Realty Group
38 East 29th Street, 5th Fl.
New York, New York 10016
Attn: Greg Corbin

All such notices or communications will be deemed to have been given one business day following the date of delivery by overnight mail addressed as aforesaid.

28. Signatures to this Agreement may be exchanged by hand, by mail, by fax, by photocopy, or in counterparts; any such method being binding on both sides when completed and exchanged.

29. This agreement is subject to approval of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). If this Agreement is not approved by the Bankruptcy Court, then this Agreement will be deemed terminated and Rosewood will have an allowed quantum meruit claim for its services. This paragraph will survive termination of this Agreement. This Agreement has been made under and will be governed by the laws of the State of New York., without giving effect to conflicts of law rules.

If the foregoing accurately sets forth our Agreement, please sign below and return this original Agreement to Rosewood. This Agreement contains the entire agreement between Debtor and Rosewood. Any prior discussions and agreements between the parties concerning this subject matter are superseded by this Agreement. This Agreement will be deemed to have been jointly drafted by the parties and there will be no presumption in interpretation against either party as the drafter of this Agreement. The terms of this Agreement may not be modified or changed except by a writing signed by the parties. Each of Debtor and Rosewood understands that this is a legal document, acknowledges that it has consulted with counsel of its choice regarding its terms before deciding whether to execute it, and agrees to the terms and conditions set forth herein.

**[Signatures on following page]**



**RETENTION AGREEMENT**

**WB Bridge Hotel LLC**
**and 159 Broadway Member LLC**

By: G.C Realty Advisors LLC

____________________________
By: David Goldwasser. Manager of
G.C. Realty Advisors LLC
Date: 10/7/21

**Rosewood Realty Group**

____________________________
By: Greg Corbin
President, Bankruptcy and Restructuring
Date: 10/7/21

**Agreed as to section 4.c only:**
**159 Broadway Avenue 1 LLC, as Loan Holder**

By: Kriss & Feuerstein LLP, its counsel
360 Lexington Avenue, Suite 1200
New York, NY 10017

By:______________________
Jerold C. Feuerstein
Counsel and Authorized Signatory
Date: 10/7/21

**RETENTION AGREEMENT**

**WB Bridge Hotel LLC**
**and 159 Broadway Member LLC**

By: G.C Realty Advisors LLC

By: David Goldwasser. Manager of
G.C. Realty Advisors LLC
Date: 10/7/21

**Rosewood Realty Group**

By: Greg Corbin
President, Bankruptcy and Restructuring
Date: 10/7/21

**Agreed as to section 4.c only:**
**159 Broadway Avenue 1 LLC, as Loan Holder**

By: Kriss & Feuerstein LLP, its counsel
360 Lexington Avenue, Suite 1200
New York, NY 10017

By:____________________
Jerold C. Feuerstein
Counsel and Authorized Signatory
Date: 10/7/21

{01120736.DOCX;1}



**RETENTION AGREEMENT**

**WB Bridge Hotel LLC**
**and 159 Broadway Member LLC**

By: G.C Realty Advisors LLC

______________________________

By: David Goldwasser, Manager of
G.C. Realty Advisors LLC
Date: 10/7/21

**Rosewood Realty Group**

______________________________

By: Greg Corbin
President, Bankruptcy and Restructuring
Date: 10/7/21

**Agreed as to section 4.c only:**
**159 Broadway Avenue 1 LLC, as Loan Holder**

By: Kriss & Feuerstein LLP, its counsel
360 Lexington Avenue, Suite 1200
New York, NY 10017

By: ______________________________
Jerold C. Feuerstein
Counsel and Authorized Signatory
Date: 10/7/21

{01120736.DOCX;1 }

# Exhibit B

**(Immediately Follows This Page)**

**Mannion Auctions, LLC**
305 Broadway, Suite
New York, NY  10007 US
212-267-6698
mdmannion@jpandr.com

# Invoice

| BILL TO | SHIP TO |
|---|---|
| Greg Corbin<br>Rosewood Realty Group<br>38 E. 29th St, 5th Floor<br>New York, NY  10016 | Greg Corbin<br>Rosewood Realty Group<br>38 E. 29th St, 5th Floor<br>New York, NY  10016 |

| INVOICE # | DATE | TOTAL DUE | DUE DATE | TERMS | ENCLOSED |
|---|---|---|---|---|---|
| 30924 | 08/04/2022 | $2,000.00 | 09/03/2022 | Net 30 | |

**P.O. NUMBER**
159 Broadway

| SERVICE | DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|---|
| **Auctioneer** | Bankruptcy auction held by William Mannion, Auctioneer of Mannion Auctions, LLC, on August 4th, 2022, at 2:00pm EST, via Cisco WebEx, regarding the auction of: 159 Broadway, Brooklyn, New York. | 1 | 2,000.00 | 2,000.00 |

159 Broadway                                      BALANCE DUE                     **$2,000.00**