UNITED STATES BANRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No.: 20-23288 (RDD) and |
| **WB BRIDGE HOTEL LLC and** | Case No.: 20-23289 (RDD) |
| **159 BROADWAY MEMBER LLC,** | |
| Debtors. | **Jointly Administered** |
| ------------------------------------------------------------X | |
| **NAT WASSERSTEIN, as TRUSTEE of the WB BRIDGE CREDITOR TRUST,** | **Ad Pro. No.: 22-07054 (SHL)** |
| Plaintiff, | |
| -against- | **ANSWER AND COUNTERCLAIMS** |
| **SUB ENTERPRISES, INC.,** | |
| Defendant | |

Defendant SUB ENTERPRISES, INC., (hereinafter "Defendant"), by and through its attorney of record, Scott C. Levenson, Esq., hereby submits this ANSWER and COUNTERCLAIMS to the Complaint of Plaintiff NAT WASSERSTEIN, as TRUSTEE (hereinafter "Plaintiff" or "Trustee") of the WB BRIDGE CREDITOR TRUST, (hereinafter "Creditor Trust") filed on December 20th, 2022.

Defendant did not receive notice or learn of this filing until February 10th, 2023, due to problems receiving ECF notifications for this sub-case, which is subordinate to the lead case Chapter 11 Bankruptcy Case Nos. 20-23288 and 20-23289, titled WB Bridge Hotel LLC.

On February 9th, 2023, Plaintiff also filed a Request for Entry of Default against Defendant, due to the fact that counsel for Defendant had not received notice of this filing and therefore had not responded to the Complaint. This Request was granted by the Clerk on the morning of February 13th, 2023.

In the afternoon of February 13th, 2023 Defendant filed a Letter Motion addressed to the Court requesting the Court to vacate the entry of default and for permission to file a late Answer with time up through and including February 21st, 2023. Plaintiff's counsel consented to this extension of time giving Defendant up through February 24th, 2023 in which to file this Answer. This Consent Stipulation was filed on February 21st, 2023.

## NATURE OF THE ADVERSARY PROCEEDING

1. It is denied that any pre-petition transfers of the Debtors' interest in the property were ever made to or for the benefit of Defendant. No sums were paid to or for the benefit of the Defendant under Bankruptcy Code §§ 544(b), 548 or 550, nor pursuant to NYDCL §§ 276. It is denied that there are any sums for Plaintiff to recover in this regard.

## JURISDICTION AND VENUE

2. Defendant does not contest Jurisdiction in this Court and admits that this Court has jurisdiction pursuant to 28 U.S.C. Section 1334.

3. Defendant does not contest Venue in this Court and admits that Venue is proper pursuant to 28 U.S.C. Sections 1408 and 1409.

4. Defendant agrees and admits that this is a core proceeding as defined in 28 U.S.C. §§ 157(b)(1), 157(b)(2)(A), 157(b)(2)(E), and 157(b)(2)(O).

5. Defendant denies that Plaintiff is entitled to anything from Defendant. On the contrary, Defendant is owed money from the Creditor Trust in the amount of $276,962.00, plus interest.

The amount Debtor owes to the Defendant is set forth therein as $276,962.00.  Not one penny of this Secured amount which is owed to Defendant was ever paid by the Debtor, the Creditor Trust, Nat Wasserstein, David Goldwasser, or anyone.  Plaintiff Trustee will have and recover nothing under Bankruptcy Code §§ 544(b), 548, 550 or NYDCL §§ 273-276 from Defendant.  In fact it is Defendant who, by way of its counterclaims, will recover the amounts due to it from the Creditor Trust.

## THE PARTIES

6. Defendant believes that Plaintiff is a citizen of New York, but is without sufficient to form a belief as to the truth or falsity of this allegation and the same is therefore denied. Defendant believes and and understands that Plaintiff has been appointed as Trustee for the Creditor Trust  pursuant to the Plan and the Confirmation Order.

7. Admitted.

## THE UNDERLYING FACTS

8. Admitted, upon information and belief.

9. Admitted, upon information and belief.

10. Admitted, upon information and belief.

11. Admitted, upon information and belief.

12. It is admitted, upon information and belief, that Plaintiff was designated the Trustee of the Creditor Trust.  Defendant is without sufficient information or knowledge to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 12 of Plaintiff's Complaint, and the same are therefore denied.

13. Defendant is without sufficient information or knowledge to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 13 of Plaintiff's Complaint, and the same are therefore denied.

14. It is admitted, upon information and belief, that the Debtor was the fee owner of the real property known as and located at 159 Broadway, Brooklyn, New York (the "Property"). Defendant is without sufficient information to form a belief as to the truth or falsity of the remaining allegations in Paragraph 14 of Plaintiff's Complaint, and the same are therefore denied.

15. Defendant is without sufficient knowledge to form a belief as to the truth or falsity of the allegations set forth in Paragraph 15 of Plaintiff's Complaint and the same are therefore denied.

16. It is categorically denied that the Debtors made the payments set forth in the chart in Paragraph 16 of Plaintiff's Complaint.  It is further admitted, by way of explanation, that in fact, that every penny of the amounts set forth in the chart in Paragraph 16 of Plaintiff's Complaint, plus interest, and attorneys fees, is owed to Defendant as a Secured Creditor of the Debtors.  It is further admitted that Plaintiff has failed and refused to honor Defendant's placement as Secured Creditor or to make payments to Defendant from the Creditor Trust which are due and owing since December of 2019, in addition to interest, attorneys fees and costs

17. It is categorically denied that Defendant's services, which it provided to the Debtors were anything less than a complete fulfillment of contractual obligations between Defendant and the Debtor.  It is admitted, by way of explanation, that the Debtor owes Defendant more than $300,000 for services and work performed by Defendant for the Debtors and that Defendant intends to collect every penny of this. It is further admitted, therefore that the Plaintiff is under a

legal, fiduciary and ethical obligation to see that these funds are paid from the Creditor Trust to Defendant immediately.

18. Denied.

19. It is denied that any wrongful pre-petition transfer were made to Defendant. Defendant is without knowledge or information to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 19 of Plaintiff's Complaint and the same are therefore denied.

**First Claim for Relief**
(incorporating all previous allegations)

20. Denied. There were no wrongful pre-petition transfers made to Defendant. Thus they were not made to hinder, delay or defraud the Debtor's Creditors.  Defendant is the Debtor's Secured Creditor.

21. Denied. There were no wrongful pre-petition transfers made to Defendant, thus there could not have been any fraudulent transfers made to Defendant.

22. Categorically denied. In addition, the allegations set forth in paragraph 22 of Plaintiff's Complaint contain conclusions of law, not averments of fact, require no response, and the same are therefore denied.

**Second Claim for Relief**
(incorporating all previous allegations)

23. Denied.  There were no wrongful pre-petition transfers made to Defendant, thus, there could not have been any fraudulent transfers.

24. Categorically denied. In addition, the allegations set forth in paragraph 24 of Plaintiff's Complaint contain conclusions of law, not averments of fact, require no response, and the same are therefore denied.

**Third Claim for Relief**
(incorporating all previous allegations)

25. Defendant is without sufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 25 of Plaintiff's Complaint, and the same are therefore denied.

26. It is denied that there were any wrongful pre-petition transfers made to Defendant, and thus there could not be any fraudulent transfers. Plaintiff is obligated to fulfil his legal, fiduciary and ethical obligations to pay Defendant, a Secured Creditor, all funds which are due and owing to Defendant under the Creditor Trust. Otherwise, denied.

27. Categorically denied. In addition, the allegations set forth in paragraph 27 of Plaintiff's Complaint contain conclusions of law, not averments of fact, require no response, and the same are therefore denied.

**Fourth Claim for Relief**
(incorporating all previous allegations)

28. It is denied that any wrongful pre-petition transfers were made to Defendant. Otherwise, denied.

29. There were no wrongful pre-petition transfers made to Defendant; thus there could not have been any fraudulent conveyances to Defendant; thus there is no violation by Defendant under any code. Otherwise denied.

30. Categorically denied. Debtor owes Defendant and Trustee is obligated to pay Defendant what the Debtor owes Defendant. In addition, the allegations set forth in paragraph 30 of Plaintiff's Complaint contain conclusions of law, not averments of fact, require no response, and the same are therefore denied.

**Fifth Claim for Relief**
(incorporating all previous allegations)

31. Denied.  Defendant is owed more than $276,000 from Debtor which the Plaintiff is obligated to pay to Defendant.

32. Denied. There were no wrongful pre-petition transfers made to Defendant. Thus there were no transfers made to hinder, delay or defraud the Debtor's Creditors.  Defendant is the Debtor's Secured Creditor to whom Debtor owes funds.

33. Denied.  There were no wrongful transfers to Defendant. In addition, the allegations set forth in paragraph 33 of Plaintiff's Complaint contain conclusions of law, not averments of fact, require no response, and the same are therefore denied.

**Sixth Claim for Relief**
(incorporating all previous allegations)

34. The Debtors failed to pay Defendant for the work properly and completely done by Defendant pursuant to the contractual agreement between Defendant and Debtor.  The Debtor actually owes Defendant, who is one of its Secured Creditors, over $300,000.

35. It is denied that Debtor transferred anything to Defendant.  Defendant is without sufficient knowledge to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 35 of Plaintiff's Complaint, and the same are therefore denied. Otherwise, categorically denied.

36. Categorically denied.  The Trustee is not entitled to recover anything of Defendant. The Trustee is obligated to pay Defendant, a Secured Creditor of the Debtors under the Declaration.  In addition, the allegations set forth in paragraph 36 of Plaintiff's Complaint contain conclusions of law, not averments of fact, require no response, and the same are therefore denied.

## Seventh Claim for Relief
(incorporating all previous allegations)

37. Denied. There were no wrongful pre-petition transfers made by the Debtor to Defendant. The Debtor, and now the Plaintiff/Trustee, have in fact been unjustly enriched by the work performed by Defendant for the Debtors. Otherwise, denied.

38. Denied.

39. Categorically denied.

WHEREFORE, Defendant, as a Secured Creditor of the Debtor, whom the Debtor has failed and refused to pay for work properly completed under contractual obligation, demands that this Court dismiss Plaintiff's complaint entirely and that Plaintiff have and recover nothing of Defendant. Furthermore, Defendant, complaining of Plaintiff, alleges and says as follows:

## Factual Summary Common to All
## Affirmative Defenses and Counterclaims

40. Debtor 159 Broadway Hotel, LLC ("159 Broadway") is the 100% owner of the membership interests of WB Bridge Hotel LLC ("WB Bridge" or "Debtor"). WB Bridge, in turn, owns the real property and improvements located at 159 Broadway, Brooklyn, NY, (hereinafter "the Building") which was acquired by WB Bridge in 2019 for $29 million.

41. In April of 2019, a Certificate outlining the insurance requirements for all subcontractors providing services for improvements to be made to the WB Bridge Hotel Building, a copy of which is attached hereto as **Exhibit A**, was issued.

42. The Certificate Holder/Construction Manager is listed therein on page 4 as Seventh Floor Associates, Inc., (hereinafter "Seventh Floor"), who was the General Contractor for the work on the Building. This document marked as **Exhibit A** sets forth the liability limits, and

umbrella limit schedule for the project, as well as general liability limits for contractors and subcontractors.

43. Several companies and two individuals are also listed on Page 4 as **Indemnified Parties and Additional Insureds.**  These include Seventh Floor itself, WB Bridge Hotel, LLC, the City of New York DOT, two other corporations, as well as Isaac Hager and his wife Shifra Hager.  The Hagers are the only individuals listed as indemnified parties for the construction work.

44. Isaac Hager is the founder and owner of Cornell Realty Management, LLC, which shares an address with 159 Broadway, the Debtor in this case,  and was intimately involved in the construction work on the Building.  He was the point person whom Defendant and its representatives contacted while Defendant was performing work on the Building, as set forth herein, and the person who authorized payment on Defendant's invoices.

45. In or around July 29, 2019, Defendant sent a work Proposal estimate to Seventh Floor for a substantial amount of waterproofing construction work to be performed at the Building.  A copy of this Proposal is attached hereto as **Exhibit B.**

46. The total estimate for this project is set forth therein as $389,756.69, which includes a discount given from Defendant to Debtor in the amount of $20,000.  No retainage was to be held until completion under the contract, as can be seen at the bottom of page 5 of **Exhibit B,**  and was expected to be paid for as work was completed.

47. In contrast to all of Plaintiff's allegations regarding the quality of Defendant's work on the Building, if Defendants' work had not been satisfactorily completed, the project would not have progressed.

48. Beginning in or around August 20th 2019, and continuing up through and including March 5, 2020, Defendant completed significant amounts of waterproofing construction work at the Property for the benefit of the Debtor, under the Agreement it had with Seventh Floor, (hereinafter "the Agreement").  The work provided by Defendant for the benefit of the Debtor included the provision and installation of waterproofing materials to the Building's foundation, parking garage, elevator pits, cellar and various other parts of the property.

49. Defendants' work began on August 20th, 2019 with waterproofing the neighbor's wall, at a cost of $3990.00.  A copy of this initial invoice is attached hereto as **Exhibit C.**

50. Subsequently, on December 10, 2019, as set forth in **Exhibit C,** the foundation work started for the agreed upon price of $389,756.69.

51. The first requisition/application for payment sent by Defendant to Seventh Floor for work completed, a copy of which is attached hereto as **Exhibit D**, dated August 12, 2019 indicates the original contract amount of $389,756.69, and shows that $58,463.50 value of work had been completed, minus a 10% retainage, leaving a payment due of $52,617.15 and balance to complete the work including retainage of $337,139.54.

52. The second requisition sent by Defendant to Seventh Floor for work completed, a copy of which is attached hereto as **Exhibit E,** dated January 15, 2020, indicates the original contract amount of $389,756.69, and shows that $148,667.20 value of work had been completed. This requisition shows that Seventh Floor had paid the prior requisition amount, that $81,183.33 was the current payment due and that the remaining balance until completion was $255,965.21.

53. The third requisition sent by Defendant to Seventh Floor for work completed, a copy of which is attached hereto as **Exhibit F,** dated February 15, 2020, indicates the original contract amount of $389,756.69, and shows that $217,707.60 value of work had been completed, and that

Seventh Floor had paid the prior requisition amount, that $79,907.12 was the current payment due and that the remaining balance until completion was $176,049.09.

54. The fourth requisition sent by Defendant to Seventh Floor for work completed, a copy of which is attached hereto as **Exhibit G,** dated March 15, 2020 indicates the original contract amount of $389,756.69, and shows that $264,823.82 value of work had been completed.  This Exhibit shows that Seventh Floor had paid the prior requisition amount, that $51,116.22 was the current payment due, and that the remaining balance until completion was $124,932.87.

55. The fifth and final requisition sent by Defendant to Seventh Floor for work completed, a copy of which is attached hereto as **Exhibit H,** dated April 1, 2020, indicates the original contract amount of $389,756.69, and shows that the full amount of Defendant's work had been completed on the Building.  This requisition shows that Seventh Floor had **not** paid Defendant's prior invoice - **Exhibit G**, and shows the current amount due of $124,932.87.

56. By December of 2019, Defendant had received permission from Isaac Hager, a Principal in the construction work on the Building, and from his employees to charge an American Express credit card for the Defendant's work on an ongoing basis.  Mr. Hager also gave Defendant the credit card details necessary to do so and told him to just charge this card for the work.

57. Based upon that permission and in reliance upon Mr. Hager's authorization as a Principal in the Construction Management of the Building, Defendant proceeded to charge for the completed work on an ongoing basis.  A spreadsheet showing these charges and the dates of credit card payments to Defendant (and two refunds to Seventh Floor) is attached hereto as **Exhibit I.**

58. This Exhibit shows that between December 23, 2019, and March 1, 2020, Seventh Floor had paid Defendant only a total of $231,607.15 for the fully completed work.

59. Sometime between March 1, 2020 and March 4, 2020, another individual named Mr. Herman told Defendant's representative that Defendant should not have charged the American Express card for the work and demanded a partial refund of $184,430.58 on the credit card. Mr. Herman also threatened that if Defendant did not do this, that he would dispute all the charges on the American express card that were previous authorized and paid to Defendant. Mr. Herman also promised that he would wire the amounts due under the contract for all of the work performed by Defendant as per the agreement with Seventh Floor.

60. In reliance upon Mr. Herman's promise, on March 4, 2020, Defendant refunded Seventh Floor the amount of $50,000 on the American Express card, and on March 5, 2020, Defendant refunded the amount of $134,430.58 on the American Express card, for a total of $184,430.58 refunded.

61. Subsequently, on March 9, 2020, Mr. Herman authorized a wire transfer to Defendant of just $100,000, instead of the promised amount of the remainder owed under the Agreement.

62. Since March 9, 2020, time Seventh Floor has failed and refused to pay Defendant the total amount due and owing under the Agreement, to Defendant's detriment. The Debtor benefited from all of Defendant's work and was therefore unjustly enriched thereby. The total amount due to Defendant from Debtor is $276,962.27, plus interest since March of 2020, costs and attorneys fees.

63. Seventh Floor breached this agreement by not paying Defendant for the full amount of the work and services which it provided for the benefit of the Debtor. Moreover, Seventh Floor fraudulently induced Defendant to refund the amounts previously paid to it on the credit

card, which refund were made base don the promise they would receive a wire for the full amount owed to Defendant.

64. Nine days later, on March 18, 2020 Defendant filed a Mechanics lien against the Debtor in the King's County Clerk's Office, a copy of which is attached hereto as **Exhibit J.** This lien was filed against the owner of the property -- WB Bridge Hotel LLC, against 159 Broadway Mezz LLC as mortgagee, as well as against Seventh Floor, who had employed Defendant for the work on the Building.

65. The lien sets for the exact amount due to Defendant for the work -- **$276,962.27**. A copy of this mechanic's lien was provided to Debtor.

66. On December 21, 2020, upon information and belief, in an effort to avoid paying Defendant anything under the Agreement, the Debtor filed a Petition for Relief under Chapter 11 of the United States Bankruptcy Code, in Case No. 20-23288 (RDD) and Case No. 20-23289 (RDD).

67. By Order dated January 4, 2021, the two cases were joined administratively for procedural purposes only.

68. On January 19, 2021, a Declaration was executed by David Goldwasser, and filed in this matter, a copy of which is attached hereto as **Exhibit K.** Under Schedule D, found on page 10 of this Declaration, Defendant is listed as a Secured Creditor to whom Debtors owe $276,962.00.

69. On February 10, 2021, the United States Trustee appointed an official committee of unsecured creditors.

70. On April 21, 2021, Defendant executed and filed a Proof of Claim Form 410, noting that the claim is secured by the Debtor's real property in the amount of $276,962.27, with a fixed

interest rate of 9%. A copy of this Form is attached hereto as **Exhibit L.** Defendant's Proof of Claim was timely filed against the Debtors.

71. On July 7, 2022, the Plan for Debtors' Chapter 11 Filing was confirmed by this Court, and on November 16, 2022, the Plan became effective.

72. Pursuant to this Plan, Plaintiff was designated Trustee of the Creditor Trust and certain assets of the Debtor's estate were transferred to the Creditor Trust for the purpose of disbursing to Secured Creditors.

73. Plaintiff Trustee is wrongfully and inaccurately his allegations. In Paragraph 16 of his Complaint, Plaintiff alleges that between December 24, 2019 and March 9, 2020, that Debtors paid Defendants the total sum of $281,607.15. This amount does not take into account the fact that Defendants refunded $184,430.58 in credits to the American Express Card after Mr. Herman demanded that they do so. Copies of the evidence of these two refunds are attached hereto as **Exhibit M.**

74. Thus, the Debtor owes Defendant the full amount set forth in the Mechanic's Lien, in the Proof of Claim and in Defendant's Counterclaim, as set forth below.

75. The fact that Defendant was never paid for work completed is documented by the fact that Defendant filed a Mechanic's Lien for nonpayment on March 18, 2020, nine (9) months prior to the Debtor filing for bankruptcy. Moreover, Defendant reconfirmed that it had never been paid upon the filing of a Proof of Claim Form 410 on April 21, 2021.

76. Plaintiff is obligated to pay Defendant what is owed to Defendant, as set forth herein. Plaintiff Trustee has an obligation to ensure that Defendant, a Secured Creditor, is fully paid.

## **AFFIRMATIVE DEFENSES**

As for its Affirmative Defenses, Defendants asserts and states as follows:

### **First Affirmative Defense**
### **(Unclean Hands)**

77. Defendant re-alleges and reincorporates its responses to the preceding paragraphs as if fully set forth herein.

78. Plaintiff has unclean hands in this matter after bringing this Complaint against Defendant knowing that Defendant is owed money from the Debtor.

79. As a direct and proximate result of Plaintiff's actions, Defendant has suffered economic harm including not being paid for work completed.

80. Plaintiff cannot now complain about Defendant when it is to Defendant that Plaintiff has a duty.

### **Second Affirmative Defense**
### **(Equitable Subordination)**

81. Defendant re-alleges and reincorporates its responses to the preceding paragraphs as if fully set forth herein.

82. Defendant asserts the defense of equitable subordination based upon the Plaintiff's filings with the Court and documented conduct in bringing this unnecessary action, and in failing to pay Defendant from the Creditor Trust.

### **Third Affirmative Defense**
### **(Bankruptcy Code 11 U.S.C. § 341 and 28 U.S.C. § 586)**

83. Defendant re-alleges and reincorporates its responses to the preceding paragraphs as if fully set forth herein.

84. The Plaintiff/Trustee has certain obligations in performing his role under the Bankruptcy Code, which Plaintiff has not performed.

85. He is charged with the responsibility of supervising the administration of this Chapter 11 case.

86. He assumes management and control of the bankruptcy estate from the debtor and serves as a fiduciary responsible to the various parties in the case.

87. Defendant asserts as a defense the provisions of the Bankruptcy Code 11 U.S.C. § 341. This law obligates the Plaintiff to conduct a meeting of the creditors, called a "section 341 meeting" in a Chapter 11 case. The Plaintiff has not done so in this case.

88. Nor has the Plaintiff fulfilled his obligations under 28 U.S.C. § 586. These include: ensuring compliance; reviewing records to be sure they provide adequate and accurate information, taking action to prevent undue delay and investigating fraudulent or abusive conduct. Because the Plaintiff has brought this action falsely accusing Defendant, he is clearly not doing his job properly.

89. If the Plaintiff had performed any of his Trustee duties properly, he would know that Defendant has not been paid.

### Fourth Affirmative Defense
### (Equitable Estoppel)

90. Defendant re-alleges and reincorporates its responses to the preceding paragraphs as if fully set forth herein.

91. Plaintiff's Complaint should be dismissed in accordance with the doctrine of Equitable Estoppel because Plaintiff has failed to pay the amounts from Creditor Trust that are due and owing to Defendant, and which are owed pursuant to contractual agreement with the Debtor, for work fully performed by Defendant.

92. Plaintiff's Complaint should be dismissed because there was no need to file an Adversary Proceeding Complaint when Plaintiff is the one at fault.

### Additional Defenses Reserved

93. Defendant hereby gives notice that it may rely on other defenses if and when such defenses become known during the course of litigation, and hereby reserve the right to amend its Answer to assert any other defenses as become known or available.

### COUNTERCLAIMS

NOW COMES Defendant SUB ENTERPRISES, INC. (hereinafter "Defendant" or "Contractor") by and through counsel, and pursuant to Federal Rule of Bankruptcy Procedure Rule 7013, to state the following counterclaims against Plaintiff NAT WASSERSTEIN ("Trustee" or "Plaintiff").

### Nature of Action

94. Defendant challenges this Adversary Proceeding which Plaintiff has brought against it, alleging fraudulent transfers to Defendant from the Debtor, when Plaintiff knows or should know that no such transfers were ever made to Defendant, and also knows or should also know that the Creditor Trust is in debt to Defendant in an amount in excess of $300,000.  In so doing, Plaintiff failed to honor its express and implied duties as a Trustee, and has engaged in business practices that are deceptive, immoral, unscrupulous, unfair and oppressive under New York Law.

### First Claim for Relief
### (Breach of Fiduciary Duty)

95. Defendant re-alleges and reincorporates by reference its responses to the preceding paragraphs as if fully set forth herein.

96. Once the Plaintiff was appointed Trustee of the Creditor Trust, Plaintiff took on fiduciary duties, including to Defendant, as a Secured Creditor of the Debtor.

97. To state a claim for breach of fiduciary duties under New York Law, a plaintiff must establish: (1) the existence of a fiduciary relationship; (2) misconduct by the defendant; and (3) damages directly caused by the defendant's misconduct. *Murphy v. Morlitz,* 751 F. App'x 28, 30 (2d Cir. 2018).

98. As set forth herein, Plaintiff has established through documentary evidence submitted with this Complaint the three elements set forth above.

99. It is well established that Bankruptcy Trustees are required to use diligence in exercising their duties to convert non-exempt assets of the debtor's estate in to money to be distributed to the Debtor's creditors. *See United States v. Shadduck,* 112 F.3d 523, 531 (1st Cir. 1997). As the representative of the debtor estate . . . it is incumbent upon the trustee to collect and reduce to money all nonexempt assets of the estate . . . " *Pereira v. Foong,* 254 B.R. 566, 570 (Bankr. S.D.N.Y 2000).

100. Plaintiff, as a Trustee to the Debtor's estate, is "accountable" for all property received. 11 U.S.C. § 704(2). Plaintiff is a representative of the Debtor's estate pursuant to 11 U.S.C. § 323, and "stands in the shoes" of the Debtor. *Hirsch v. Arthur Andersen  Col,* 72 F.3d 1085, 1093 (2d Cir. 1995).

101. Defendant, as a Secured Creditor has not been paid in full by the Debtor under the Creditor Trust. Therefore, Plaintiff has breached his fiduciary duty by failing to distribute owed money to Defendant.

102. As a direct and proximate result of Plaintiff's breach of his fiduciary duty, Defendant has been damaged and will be damaged in an amount in excess of $300,000.

**Second Claim for Relief**
**(Breach of Contract)**

103. Plaintiff is a representative of the Debtor's estate under 11 U.S.C. § 323 and thus "stands in the shoes" of the Debtor.

104. As such, Plaintiff has breached the contract with Plaintiff by failing and refusing to pay the amounts due under the Agreement, as set forth herein.

105. Defendant fully and properly performed its duties under the Agreement it had with the Debtor and with Seventh Floor.

106. As a direct and proximate result of Plaintiff's breach of contract, Defendant has been damaged and will be damaged in an amount to exceed $300,000.

**Third Claim for Relief**
**(Payment of Attorneys Fees by Plaintiff)**

107. Defendant re-alleges and reincoporate its responses to the preceding paragraphs as if fully set forth herein.

108. As a result of Plaintiff's acts and omissions, as described herein, in bringing this action, and in failing to pay Defendant fully under the Agreement with Debtor, Defendant was forced to both defend and to initiate this proceeding.

109. Defendant therefore has a right to attorneys' fees and costs for having to defend and litigate this action.

WHEREFORE, Defendant respectfully requests the following relief:

1. That this Court Dismiss Plaintiff's Complaint entirely;

2. That this Court Enter Judgment finding that the Trustee has breached his fiduciary duty to Defendant and requiring Plaintiff to pay Defendant the amounts due under the Agreement with Debtor, including interest from March of 2020;

3. That this Court enter Judgement finding that the Trustee has breached the Agreement with Defendant and that it award Defendant money damages for that breach;

4. That this Court award Defendant costs and attorneys fees in this matter; and

5. That this Court award any further and other relief which it deems just and appropriate.

Dated: February 22, 2023.

LEVENSON LAW GROUP

_s/Scott Levenson, Esq._
Scott Levenson, Esq.
Attorneys for Creditor
Sub Enterprises Inc.
625 W. 51st Street
New York, NY 10019
Tel. (212) 957-9200
Email: slevensonesq@gmail.com

## UNITED STATES BANRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SUB ENTERPRISES, INC.,** | **Case No.: 20-23288 (RDD)** |
| **Plaintiff,** | **and** |
| | **Case No.: 20-23289 (RDD)** |
| **- against -** | |
| | **Jointly Administered** |
| **SEVENTH FLOOR SERVICES, INC., LEONID ZANVEL, CORNELL REALTY MANAGEMENT, LLC, ISAAC HAGER, PINCHAS HERMAN, DOE COMPANIES 1-10 and JOHN DOES 1-10.,** | **Ad Pro. No.: 22-07054 (SHL)** |
| **Defendants.** | |
| **In re:** | |
| **WB BRIDGE HOTEL LLC and** | **THIRD PARTY** |
| **159 BROADWAY MEMBER LLC,** | **COMPLAINT** |
| **Debtors.** | |
| **NAT WASSERSTEIN, as TRUSTEE of the WB BRIDGE CREDITOR TRUST,** | |
| **Plaintiff,** | |
| **-against-** | |
| **SUB ENTERPRISES, INC.,** | |
| **Defendant** | |

## <u>THIRD PARTY COMPLAINT</u>

Plaintiff, SUB ENTERPRISES, INC., by and through his attorney, Scott C. Levenson, Esq., complaining of Defendants SEVENTH FLOOR SERVICES, INC., LEONID ZANVEL,

CORNELL REALTY MANAGEMENT, LLC, ISAAC HAGER, PINCHAS HERMAN, DOE COMPANIES 1-10 and JOHN DOES 1-10 hereby alleges and says:

## NATURE OF THE PROCEEDING

110. This proceeding is brought to implicate certain third parties who are liable to Plaintiff for amounts due and owing under an Agreement, as set forth herein, for their roles in denying payment to Plaintiff under a valid agreement for services which Plaintiff properly and fully performed for the benefit of the Debtor in this case.

## JURISDICTION AND VENUE

111. This Court has jurisdiction over this proceeding under 28 U.S.C. Section 1334.

112. Venue of this case and this adversary proceeding is proper pursuant to 28 U.S. Section 1408 and 1409.

## PARTIES

113. Plaintiff SUB ENTERPRISES, INC, (hereinafter "Plaintiff" or "Sub Enterprises") is a corporation existing under the laws of New York with its headquarters located at 435 Bellvale Road, Chester, New York, 10918.

114. Defendant SEVENTH FLOOR SERVICES, INC., (hereinafter "Seventh Floor") is a corporation existing under the laws of New York with its principal place of business at 2002 McDonald Ave, Brooklyn, NY 11223.

115. Defendant LEONID ZANVEL, (hereinafter "Zanvel") is the Chief Executive Officer of SEVENTH FLOOR SERVICES, INC.

116. Defendant CORNELL REALTY MANAGEMENT, LLC, (hereinafter "Cornell") is a corporation existing under the laws of New York, with a principal place of business 75 Huntington St, Brooklyn, NY 11231. At relevant times herein, Defendant Cornell shared a physical address with the Debtor in this case.

117. Defendant ISAAC HAGER, (hereinafter "Hager") is the founder and owner of Cornell Realty Management, LLC, which used to share an address with 159 Broadway, the Debtor in this case.

118. Defendant PINCHAS HERMAN, (hereinafter "Herman") is an employee of Defendant Hager and was directly responsible for the failure of payment to Defendant, as described herein, pursuant to the Agreement Defendant had with Defendant Seventh Floor, for work performed for the benefit of the Debtor and for which Defendant has yet to be fully compensated.

119. Defendant DOE Companies 1-10 are necessary parties that are unnamed and therefore yet to be identified.

120. Defendant JOHN DOES 1-10 are necessary parties that are as yet unnamed and therefore yet to be identified.

## FACTUAL SUMMARY

121. Debtor 159 Broadway Hotel, LLC ("159 Broadway") is the 100% owner of the membership interests of WB Bridge Hotel LLC ("WB Bridge" or "Debtor"). WB Bridge, in turn, owns the real property and improvements located at 159 Broadway, Brooklyn, NY, (hereinafter "the Building") which was acquired by WB Bridge in 2019 for $29 million.

122. In April of 2019, a Certificate outlining the insurance requirements for all subcontractors providing services for improvements to be made to the WB Bridge Hotel Building, a copy of which is attached hereto as **Exhibit A**, was issued.

123. The Certificate Holder/Construction Manager is listed therein on page 4 as Seventh Floor, who was the General Contractor for the work on the Building. This document marked as

**Exhibit A** sets forth the liability limits, and umbrella limit schedule for the project, as well as general liability limits for contractors and subcontractors.

124. Several companies and two individuals are also listed on Page 4 as **<u>Indemnified Parties and Additional Insureds.</u>**   These include Seventh Floor itself, WB Bridge Hotel, LLC, the City of New York DOT, two other corporations, as well as Isaac Hager and his wife Shifra Hager.   The Hagers are the only individuals listed as indemnified parties for the construction work.

125. Isaac Hager is the founder and owner of Defendant Cornell which, at relevant times to this Complaint, shared an address with 159 Broadway, the Debtor in this case,  and was intimately involved in the construction work on the Building.  He was the point person whom Plaintiff and its representatives contacted while Plaintiff was performing work on the Building, as set forth herein, and the person who authorized payment on Defendant's invoices.

126. In or around July 29, 2019, Plaintiff sent a work Proposal estimate to Seventh Floor for a substantial amount of waterproofing construction work to be performed at the Building.  A copy of this Proposal is attached hereto as **Exhibit B.**

127. The total estimate for this project is set forth therein as $389,756.69, which includes a discount given from Plaintiff to Seventh Floor in the amount of $20,000.  No retainage was to be held until completion under the contract, as can be seen at the bottom of page 5 of **Exhibit B,** and was expected to be paid for as work was completed.

128. Plaintiff's work on the Building was satisfactorily completed, if it had not been satisfactorily completed, the project on the Building would not have progressed.

129. Beginning in or around August 20th 2019, and continuing up through and including March 5, 2020, Plaintiff completed the construction work on the Building for the benefit of the

Debtor, under the Agreement it had with Seventh Floor, (hereinafter "the Agreement").   The work provided by Plaintiff for the benefit of the Debtor included the provision and installation of waterproofing materials to the Building's foundation, parking garage, elevator pits, cellar and various other parts of the property.

130. Plaintiff's work began on August 20th, 2019 with waterproofing the neighbor's wall, at a cost of $3990.00.  A copy of this initial invoice is attached hereto as **Exhibit C.**

131. Subsequently, on December 10, 2019, as set forth in **Exhibit C,** the foundation work started for the agreed upon price of $389,756.69.

132. The first requisition/application for payment sent by Plaintiff to Seventh Floor for work completed, a copy of which is attached hereto as **Exhibit D**, dated August 12, 2019 indicates the original contract amount of $389,756.69, and shows that $58,463.50 value of work had been completed, minus a 10% retainage, leaving a payment due of $52,617.15 and balance to complete the work including retainage of $337,139.54.

133. The second requisition sent by Plaintiff to Seventh Floor for work completed, a copy of which is attached hereto as **Exhibit E,** dated January 15, 2020, indicates the original contract amount of $389,756.69, and shows that $148,667.20 value of work had been completed.  This requisition shows that Seventh Floor had paid the prior requisition amount, that $81,183.33 was the current payment due and that the remaining balance until completion was $255,965.21.

134. The third requisition sent by Plaintiff to Seventh Floor for work completed, a copy of which is attached hereto as **Exhibit F,** dated February 15, 2020, indicates the original contract amount of $389,756.69, and shows that $217,707.60 value of work had been completed, and that Seventh Floor had paid the prior requisition amount, that $79,907.12 was the current payment due and that the remaining balance until completion was $176,049.09.

135. The fourth requisition sent by Plaintiff to Seventh Floor for work completed, a copy of which is attached hereto as **Exhibit G,** dated March 15, 2020 indicates the original contract amount of $389,756.69, and shows that $264,823.82 value of work had been completed.  This Exhibit shows that Seventh Floor had paid the prior requisition amount, that $51,116.22 was the current payment due, and that the remaining balance until completion was $124,932.87.

136. The fifth and final requisition sent by Plaintiff to Seventh Floor for work completed, a copy of which is attached hereto as **Exhibit H,** dated April 1, 2020, indicates the original contract amount of $389,756.69, and shows that the full amount of Plaintiff's work had been completed on the Building.  This requisition shows that Seventh Floor had **not** paid Plaintiff's prior invoice - **Exhibit G**, and shows the current amount due of $124,932.87.

137. By December of 2019, Plaintiff had received permission from Hager to charge an American Express credit card for the Plaintiff's work on an ongoing basis.  Mr. Hager also gave Plaintiff the credit card details necessary to do so and told him to just charge this card for the work.

138. Based upon that permission and in reliance upon Hager's authorization as a Principal in the Construction Management of the Building, Plaintiff proceeded to charge the credit card for the completed work on an ongoing basis.  A spreadsheet showing these charges and the dates of credit card payments to Plaintiff (and two refunds to Seventh Floor) is attached hereto as **Exhibit I.**

139. This Exhibit shows that between December 23, 2019, and March 1, 2020, Seventh Floor had paid Plaintiff only a total of $231,607.15 for the fully completed work.

140. Sometime between March 1, 2020 and March 4, 2020, Defendant Herman, acting as a representative of Defendants Isaac Hager and Seventh Floor, told Plaintiff's representative that

Plaintiff should not have charged the American Express card for the work and then demanded a partial refund of $184,430.58 on the credit card.

141. Herman also threatened that if Plaintiff did not do this, then Seventh Floor would file a dispute for every penny that had been paid to Plaintiff. Herman also promised that he would wire the amounts due under the contract for all of the work performed by Plaintiff as per the agreement with Seventh Floor.

142. In reliance upon Herman's promise, on March 4, 2020, Plaintiff refunded Seventh Floor the amount of $50,000 on the American Express card, and on March 5, 2020, Plaintiff refunded the amount of $134,430.58 on the American Express card, for a total of $184,430.58 refunded.

143. Subsequently, on March 9, 2020, Seventh Floor authorized a wire transfer to Plaintiff of just $100,000, instead of the promised amount of the remainder owed under the Agreement.

144. Since March 9, 2020, Seventh Floor has failed and refused to pay Plaintiff the total amount due and owing under the Agreement, to Plaintiff's detriment. The Debtor benefited from all of Plaintiff's work and was therefore unjustly enriched thereby. The total amount due to Plaintiff from Debtor is $276,962.27, plus interest since March of 2020, as well as costs and attorneys fees.

145. Seventh Floor breached this agreement by not paying Plaintiff for the full amount of the work and services which it provided for the benefit of the Debtor. Moreover, Seventh Floor fraudulently induced Plaintiff to refund the amounts previously paid to it on the credit card, which refund were made base don the promise they would receive a wire for the full amount owed to Plaintiff.

146. Nine days later, on March 18, 2020 Plaintiff filed a Mechanics lien against the Debtor in the King's County Clerk's Office, a copy of which is attached hereto as **Exhibit J.** This lien was filed against the owner of the property -- WB Bridge Hotel LLC, against 159 Broadway Mezz LLC as mortgagee, as well as against Seventh Floor, who had employed Plaintiff for the work on the Building.

147. The lien sets for the exact amount due and owing to Plaintiff for the work -- **$276,962.27**. A copy of this mechanic's lien was provided to Debtor along with a letter dated March 25, 2020.

148. On December 21, 2020, upon information and belief, in an effort to avoid paying Plaintiff anything more under the Agreement, the Debtor filed a Petition for Relief under Chapter 11 of the United States Bankruptcy Code, in Case No. 20-23288 (RDD) and Case No. 20-23289 (RDD).

149. By Order dated January 4, 2021, the two cases were joined administratively for procedural purposes only.

150. On January 19, 2021, a Declaration was executed by David Goldwasser, and filed in this matter, a copy of which is attached hereto as **Exhibit K.** Under Schedule D, found on page 10 of this Declaration, Plaintiff is listed as a Secured Creditor to whom Debtors owe $276,962.00.

151. On February 10, 2021, the United States Trustee appointed an official committee of unsecured creditors.

152. On April 21, 2021, Plaintiff executed and filed a Proof of Claim Form 410, noting that the claim is secured by the Debtor's real property in the amount of $276,962.27, with a fixed interest rate of 9%. A copy of this Form is attached hereto as **Exhibit L.** Plaintiff's Proof of Claim was timely filed against the Debtors.

153. On July 7, 2022, the Plan for Debtors' Chapter 11 Filing was confirmed by this Court, and on November 16, 2022, the Plan became effective.

154. Thus, the Debtor owes Plaintiff the full amount set forth in the Mechanic's Lien, in the Proof of Claim and in Defendant's Counterclaim, as set forth below.

155. The fact that Plaintiff was never paid for work completed is documented by the fact that Plaintiff filed a Mechanic's Lien for nonpayment on March 18, 2020, nine (9) months prior to the Debtor filing for bankruptcy. Moreover, Plaintiff reconfirmed that it had never been paid upon the filing of a Proof of Claim Form 410 on April 21, 2021.

156. Defendants are obligated to pay Plaintiff what is owed to Plaintiff, as set forth herein.

## CLAIMS FOR RELIEF

### First Claim for Relief
### (Fraud by Defendants Hager and Seventh Floor)

157. Plaintiff repeats, realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

158. Under New York law, to establish fraud a Plaintiff must prove five elements by clear and convincing evidence: (1) a material misrepresentation or omission of fact; (2) made by defendant with knowledge of its falsity; (3) an intent to defraud; (4) reasonable reliance on the part of the Plaintiff; and (5) resulting damage to the Plaintiff. *See Crigger v. Fahenstock & Co., Inc.* 443 F.3d 230, 234 (2d Cir. 2006).

159. Defendant Seventh Floor entered into an agreement with Plaintiff, inducing Plaintiff to perform the waterproofing work at the Debtor Building, as described herein.

160. Seventh Floor accepted the work and was materially enriched thereby.

161. Seventh Floor paid Plaintiff up to a point and then stopped paying Plaintiff and demanded that Plaintiff refund some of the amounts that Seventh Floor had paid to Plaintiff.

162. Seventh Floor's acts and omissions, as described herein, constitute common law fraud and all Defendants are liable for the damages his fraudulent conduct has cost the Plaintiff.

163. Plaintiff has established through documentary evidence already presented in this Third Party Complaint, the five elements enumerated above.

164. In addition, Defendant Hager promised Plaintiff that if Plaintiff refunded certain amounts amounting to more than $184,000 on Hager's credit card, that Hager would wire Plaintiff the remaining amount due.  Instead of doing this, Hager wired only $100,000.  Plaintiff is still owed more than $276,000, which, with interest, attorneys fees and costs amounts to well over $300,000.

165. As a direct and proximate result of the foregoing, Plaintiff has been damaged and will be damaged in an amount exceeding $300,000.

### Second Claim for Relief
### (Aiding and Abetting Fraud by Remaining Defendants)

166. Plaintiff fully incorporates by reference the preceding paragraphs as if fully set forth herein.

167. Under New York Law, to establish aiding and abetting fraud, a plaintiff must prove: (1) the existence of a primary violation; (2) actual knowledge of the violation by the aider and abettor; and (3) substantial assistance. *Kirschner v. Bennett,* 648 F. Supp. 2d 525, 533 (S.D.N.Y. 2009) .

168. As discussed above, Plaintiff has established fraud against Defendant Seventh Floor and Hagen.  Plaintiff has also established, through documentary evidence attached to this Third Party Complaint as Exhibits, that each of the remaining Defendants played a role and is still playing a role in assisting Seventh Floor with that fraud.

169. Plaintiff has therefore established that the remaining Defendants all aided and abetted, and are still aiding and abetting Defendant Seventh Floor with the fraud which he perpetrated against the Plaintiffs.

170. As a direct and proximate result of the aiding and abetting of fraud by the remaining Defendants, Plaintiff has been damaged and will be damaged in an amount exceeding $300,000.

### Third Claim for Relief
**(Breach of Contract against Seventh Floor)**

171. Plaintiff repeats, realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

172. Seventh Floor entered into an Agreement with Plaintiff for the waterproofing construction work for the benefit of the Debtor, as described herein.

173. Plaintiff fully performed under the agreement, but Seventh Floor failed and refused to pay all of the sums owing to Plaintiff.

174. Seventh Floor is therefore in breach of the agreement with Plaintiff.

175. As a direct and proximate result of this breach, Plaintiff has been damaged and will be damaged in an amount in excess of $300,000.

### Fourth Claim for Relief
**(Unjust Enrichment by all Defendants)**

176. Plaintiff repeats, realleges and incorporates by referenced the preceding paragraphs as if fully set forth herein.

177. Cases dealing with unjust enrichment in New York are uniform in their recognition of three elements of the claim: (1) that the defendant benefited; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution. *Beth Israel Med. Ct., v. Horizon Blue Cross & Blue Shield of N.J., Inc.,* 448 F.3d 573, 586 (2d Cir. 2006) .

178. In reliance upon Hager's false promises, Plaintiff fully performed the work under the Agreement with Seventh Floor. Defendant Hager kept for himself the benefits of Plaintiff's labor and materials. Because of this Defendant Hager has been unjustly enriched at Plaintiffs' expense.

179. As aiders and abetters to Defendant Hager's fraud, all Defendants have been materially enriched by the construction labor and materials provided by the Plaintiff for the benefit of the Debtor for which Plaintiff has not received full payment. Therefore all Defendants have been materially enriched at the Plaintiff's expense.

180. All Defendants have been materially enriched by the services provided by the Plaintiff, as described herein, and for which Plaintiff has not received full payment under the Agreement it had with Seventh Floor.

181. All Defendants have been materially enriched at the Plaintiff's expense.

182. It is against equity and good conscience to permit the Defendants to retain what is sought to be recovered.

183. As a direct and proximate result of the acts and omissions of all Defendants, as described herein, Plaintiff has been damaged and will be damaged in an amount in excess of $300,000.

**Fifth Claim for Relief**

**(Unfair and Deceptive Trade Practices; NY CPLR §20-700;**
**NY Gen Business Law §349 )**

184. Plaintiff repeats, realleges and incorporates by referenced the preceding paragraphs as if fully set forth herein.

185. Under CPLR § 20-700, a deceptive trade practice includes "[a]ny falsely disparaging, or misleading oral or written statement . . . or other representation of any kind made in connection with the sale . . . or . . . the offering for sale . . . of consumer goods or services."

186. The acts and omissions of all Defendants, as described herein, violate § 20-700 and the prohibitions against this very conduct.

187. At all times relevant to this Third Party Complaint, Defendants were engaged in commerce and trade in New York.

188. Defendants employed unfair and deceptive trade practices, including but not limited to the following:

(a) fraudulently inducing Plaintiff to sign an Agreement that Defendants never intended to fulfill;

(b) promising to wire Plaintiff the remaining funds owed to Plaintiff, but only wiring approximately 1/3 of the amount due.

189. Defendants' acts and omissions, as described herein, were unfair, deceptive, and contrary to public policy and generally recognized standards of business and they harmed the Plaintiff.

190. As a direct and proximate result of all Defendants' acts and omissions, as described herein, Plaintiff has suffered economic harm.

191. To succeed on a Section 349 claim, a party must allege that the defendant's conduct (i) was consumer-oriented; (ii) was materially deceptive; and (iii) resulted in an injury to the plaintiff. *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP, et al. v. Matthew Bender & Co.* (2021 NY Slip Op 03485 Decided on June 3, 2021)

192. As described herein, the deceptive and fraudulent tactics employed by the Defendants were consumer-oriented, were materially deceptive and resulted in injury to the Plaintiff.

### Sixth Claim for Relief
**(Payment of Attorneys Fees by all Defendants)**

193. Plaintiff repeats, realleges and incorporates by referenced the preceding paragraphs as if fully set forth herein.

194. The acts and omissions by the Defendants as set forth herein were willful and wanton and they harmed Defendants.

195. As a result of Defendants' acts and omissions, as described herein, Plaintiff was forced to initiate this proceeding.

196. Plaintiff therefore has a right to attorneys' fees and costs for having to initiate and litigate this action.

WHEREFORE, Plaintiff respectfully request the following relief:

1. As to the first cause of action, that it award Plaintiff money damages for the fraud committed by Defendants Hager and Seventh Floor;

2. As to the second cause of action, award Plaintiff money damages for the aiding and abetting of fraud committed by the remaining Defendants;

3. As to the third cause of action, award Plaintiff money damages for the breach of contract by Seventh Floor;

4. As to the fourth cause of action, award Plaintiff money damages for the unjust enrichment, to be paid jointly and severally by all Defendants;

5. As to the fifth cause of action, award Plaintiffs money damages for the unfair and deceptive trade practices by all Defendants;

6. As to the sixth cause of action, that it award Plaintiff attorneys fees; and

7. That this Court enter such other and further relief as to this Court may seem just and

reasonable.

Dated: New York, New York
       February 22, 2023

                              By s/Scott Levenson, Esq.
                              _____
                              Scott Levenson, Esq.
                              LEVENSON LAW GROUP
                              Attorney for Plaintiffs
                              625 West 51st Street
                              New York, New York 10019
                              Tel. (212) 957-9200
                              Fax (201) 638-4822
                              Email: slevensonesq@gmail.com