**LEECH TISHMAN ROBINSON BROG, PLLC**
875 Third Avenue, 9th Floor
New York, New York 10022
Tel. No.: 212-603-6300
Fred B. Ringel, Esq.
William A. Rome, Esq.
Steven B. Eichel, Esq.
Withdrawing Counsel to the Debtors

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| **WB BRIDGE HOTEL LLC and** | Case No. 20-23288 (SHL) and |
| **159 BROADWAY MEMBER LLC,** | Case No. 20-23289 (SHL) |
| | (Jointly Administered) |
| Debtors. | |

---------------------------------------------------------X

### LEECH TISHMAN ROBINSON BROG, PLLC'S RESPONSE TO TRUSTEE'S OBJECTION TO MOTION OF LEECH TISHMAN ROBINSON BROG, PLLC TO WITHDRAW AS COUNSEL TO THE POST-CONFIRMATION DEBTORS, WB BRIDGE HOTEL LLC AND 159 BROADWAY MEMBER LLC

Leech Tishman Robinson Brog, PLLC ("Leech Tishman") files this response ("Response") to the objection ("Objection") of Nat Wasserstein, as Trustee of the WB Bridge Creditor Trust ("Trustee") to the motion of Leech Tishman to withdraw as counsel ("Motion to Withdraw") to the post-confirmation debtors WR Bridge Hotel LLC ("WB Bridge") and 159 Broadway Member LLC ("159 Broadway" together with WB Bridge, the "Debtors") and respectfully sets forth as follows:

### Preliminary Statement

1.    The Debtors have the right to choose their post-confirmation counsel without court approval under the confirmed Plan.  The Debtors discharged Leech

Tishman, replaced it with another firm to represent the Debtors in closing the bankruptcy cases, and the defendants in the Adversary Proceeding (defined below) retained Leech Tishman to represent them. Out of an abundance of caution, Leech Tishman moved to withdraw. The Trustee, faced with a meritorious motion to dismiss its defective complaint filed by Leech Tishman on behalf of substantially all of the 48 defendants, objects to the withdrawal of Leech Tishman as counsel to the Debtors as a litigation tactic to accomplish its real goal – to prevent the defendants in the Adversary Proceeding from choosing Leech Tishman as their own counsel. The Objection conflates the standard to withdraw as counsel with the requirements that must be satisfied to have a law firm disqualified. By conflating these standards, the Trustee seeks to avoid its high burden of proof to disqualify Leech Tishman from representing the defendants in the Adversary Proceeding.

2.     Even if court approval is required under the local rules for Leech Tishman to withdraw as counsel post-confirmation (notwithstanding that new counsel has been retained), Leech Tishman has satisfied the standard to withdraw as counsel because (i) it was discharged as Debtors' counsel, and (ii) the effect of its withdrawal does not impact the timing of the bankruptcy case or the Adversary Proceeding. Moreover, since the Trustee argued in its Objection that Leech Tishman should be disqualified from representing the defendants in the Adversary Proceeding (defined below), Leech Tishman will address certain of those issues here, but reserves the right to respond in full to those issues in its response to the Motion to Disqualify (defined below), which response is due on March 16, 2023.

2

## Background

3.      On December 21, 2020 ("Petition Date"), the Debtors commenced their Chapter 11 bankruptcy cases by filing voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (as amended, the "Bankruptcy Code").

4.      On January 19, 2021, WB Bridge filed its Schedules of Assets and Liabilities ("Schedules") and Statement of Financial Affairs ("SOFA"). WB Bridge's SOFA reflects that the 100% member of WB Bridge is 159 Broadway Member LLC. On the same day, 159 Broadway also filed its Schedules and SOFA, listing Cornell 159 LLC as a 93.75% member, MD Friedman Family Trust as a 3.125% member, and Neil Einhorn Family 2017 Trust as a 3.125% member of 159 Broadway. Isaac Hager has no equity interest in either Debtor or in the entities that own the Debtor.

5.      On March 19, 2021, the Court entered an order authorizing the Debtors to employ Robinson Brog Greene Genovese & Gluck P.C. ("Robinson Brog") as their counsel. In June 2022, Leech Tishman substituted for Robinson Brog as counsel for the Debtors.

6.      On July 7, 2022, the Court entered an order confirming the secured lenders' plan ("Plan"). On November 16, 2022, the Plan became effective. After the effective date of the Plan, Leech Tishman had no responsibilities under the Plan, other than perhaps a technical ministerial obligation to eventually close the bankruptcy case.

7.      On December 20, 2022, the Trustee commenced an action against 48 defendants to avoid and recover transfers purportedly made by WB Bridge under

Sections 544(b), 548, and 550 of the Bankruptcy Code and Sections 273 through 276 of the New York Debtor and Creditor Law ("Adversary Proceeding").

8.      On January 20, 2023, Leech Tishman, on behalf of substantially all of the 48 Defendants, moved to dismiss the adversary proceeding ("Motion to Dismiss").[1] The basis for the motion was that Trustee's fraudulent transfer claims failed to identify a single transferee that received money, property or something of value sought to be avoided.  This gross failure of pleading precipitated the motion because the utter lack of any details on this point more than suggested the Trustee had simply sued all parties having the same address.   The Trustee later opposed the motion and Leech Tishman, on behalf of certain defendants, filed its reply. The motion is fully briefed.

9.      On January 25, 2023, Trustee's counsel sent a letter to Leech Tishman requesting it to withdraw the pending Motion to Dismiss and withdraw as counsel for defendants in the Adversary Proceeding.  Although Leech Tishman does not believe there is a conflict of interest between its representation of the Debtors and the defendants, after receipt of the letter and discussion with the Debtors, the Debtors discharged Leech Tishman as Debtors' counsel because the bankruptcy cases were confirmed, and thus Leech Tishman's services were no longer needed in the bankruptcy cases.  Contrary to the Trustee's assertion in paragraph 13 of the

---

[1] Leech Tishman currently represents all of the 48 defendants, except for six: (i)159 Broadway I LLC (the Debtor's secured lender and Plan proponent), (ii) 159 Broadway Mezz LLC (Debtors' mezzanine lender), (iii) B&A Marine Co. (unknown party), (iv) Brooklyn Air Conditioning, Inc. (unknown party), (v) 159 Broadway Member LLC, and (vi) Cornell 159 LLC.

4880-7938-9777, v. 9

Objection, Leech Tishman did not selectively determine which client to represent. The firm's clients made that decision – not Leech Tishman.

10.    On January 30, 2023, Leech Tishman moved to withdraw as counsel to the defendants out of an abundance of caution.  Soon after, on February 5, 2023, Shafferman & Feldman LLP was selected by the Debtors as their new counsel and substituted for Leech Tishman as counsel for the Debtors. [Dkt. No. 194].

11.    In the interim, on February 3, 2023, the Trustee filed (i) its motion to disqualify Leech Tishman in the Adversary Proceeding as counsel to certain defendants ("Motion to Disqualify") and (i) its Objection to the Motion to Withdraw asserting that Leech Tishman failed to provide an adequate rationale why it should be permitted to withdraw its representation of the Debtors and that it should be disqualified from representing the defendants in the Adversary Proceeding.

12.    In the Objection, the Trustee alleged that (i) Leech Tishman has not provided a "legitimate" cause for this Court to permit it to withdraw from representing the Debtors, (ii) there is a conflict of interest between the Debtors (as fiduciaries of their estates which owe a duty to support the Creditor Trust's efforts to maximize value to creditors) and defendants, (iii) even if the Court permitted Leech Tishman to withdraw as counsel to the Debtors, such withdrawal would not resolve the inherent conflict because the Adversary Proceeding is a "substantially

related matter" to the Debtor's Chapter 11 cases, and (iv) the Debtors would be prejudiced by Leech Tishman's withdrawal.  The Trustee is wrong.[2]

### Leech Tishman Has A Legitimate Basis to Withdraw As Counsel

13.    The Debtors have the right to choose their own counsel post-confirmation.  "As a general rule, court approval is not required for retention or compensation of professionals after the confirmation of a plan or [sic] reorganization." *In re Colonial BancGroup, Inc.,* 2011 Bankr LEXIS 2731, at *8 (Bankr. M.D. Ala. July 15, 2011).[3]  Notwithstanding the general rule in some cases, courts have exercised continuing jurisdiction over retention or compensation of professionals." *Id.* (citing 3 Lawrence P. King, Collier on Bankruptcy ¶ 327.03 (16th ed. 2011).  Here, under section 12.1 of the confirmed Plan, the Court did not retain jurisdiction over the retention of the Debtors' professionals.   Thus, the Debtors can exercise their right to choose new counsel to represent them post-confirmation in these cases. Thus, the Debtors should be allowed to have Shafferman & Feldman LLP replace Leech Tishman post-confirmation as Debtors' counsel without court approval.

---

[2]Although arguments (ii), (iii) and (iv) relate to the requirements pertaining to attorney disqualification (which is a separate motion) rather than an objection to motion to withdraw, certain of these arguments will be addressed herein as they were raised in the Objection as well.

[3] *See also Rose Hill Bank v. Mark J. Lazzo, P.A. (In re Schupbach Invs., LLC)*, 2014 Bankr. LEXIS 4936 (BAP 10th Cir. 2014)(" [U]pon plan confirmation, a debtor is no longer a debtor in possession and the bankruptcy estate ceases to exist. In other words, the reorganized debtor is a new entity not subject to the jurisdiction of the bankruptcy court, except as provided in the plan. Therefore, approval of fees for post-confirmation services is not required.") *citing In re Briscoe Enters. Ltd., II,* 138 B.R. 795, 809 (N.D. Tex. 1992) (citation omitted), *rev'd on other grounds*, 994 F.2d 1160 (5th Cir. 1993).

4880-7938-9777, v. 9

14.     Notwithstanding the above and that research has revealed no cases where Local Bankruptcy Rule 2090-1(e) has been applied to counsel post-effective date (or even post-confirmation), to the extent it applies, Local Bankruptcy Rule 2090-1(e) governs the withdrawal of counsel and provides that "an attorney who has appeared as attorney of record may withdraw or be replaced only by Order of the Court for cause shown." *In re Wiener,* Case No. 18-13042 (JLG), 2019 WL 2575012, at *3 (Bankr. S.D.N.Y. June 21, 2019).  "Whether cause exists to grant a motion to withdraw as counsel is in the discretion of the trial court." *Id.; see also Starr v. Calhoun,* 722 F. Supp. 2d 258, 264 (E.D.N.Y. 2010) ("Whether to grant or deny a motion to withdraw as counsel falls to the sound discretion of the trial court").  "In exercising that discretion, the court must consider (i) the reasons for withdrawal and (ii) the impact of the withdrawal on the timing of the proceeding." *In Wiener,* 2019 WL 2575012, at *3; *Escon Construction Group Plc. v. Fastenal Co.,* 583 F. Supp. 3d 381, 384 (E.D.N.Y. 2022) ("In deciding a motion to withdraw as counsel, courts may consider (1) the reasons for the withdrawal and (2) the impact withdrawal will have on the timing of the proceeding).  Noticeably absent from the governing standard is the proposition that prejudice to the Trustee, if any, is a relevant consideration.  In fact, as discussed below (*infra* at ¶16), motions to withdraw under the present factual scenario should be granted absent the "most compelling circumstances," a bar the Trustee cannot meet.

15.     "New York's Rules of Professional Conduct, N.Y. Comp Codes R. & Regs., tit. 22, §1200.00 (hereinafter "NYRPC"), 'govern the conduct of attorneys in

federal courts sitting in New York as well as in New York state courts.'" *Wiener,
2019 WL 2575012, at \*3; see also In re Bruno,* 327 B.R. 104, 108 (Bankr. E.D.N.Y.
2005) ("Bankruptcy Courts in New York apply New York's Code of Professional
Responsibility to ethical disputes'") (citations omitted).  "Codes of Professional
Responsibility, like the NYRPC, provide guidance to courts in determining what
constitutes 'good cause' for granting a motion to withdraw as counsel.'" *Wiener,
2019 WL 2575012, at \*3* (citations omitted).

16.     Rule 1.16(b) of the NYPRC governs, among other things, mandatory
withdrawals of counsel and provides that "'a lawyer shall withdraw from the
representation of a client when: …(3) the lawyer is discharged [.]" *Id.* (citing
NYPRC, Rule 1.16(b)(3)).  "When a client discharges a firm from its employment,
and the firm accepts such discharge, the court should grant a motion to withdraw
'except under the most compelling circumstances.'"  *Id.* at \*4 (citations omitted).
Here, the Debtors discharged Leech Tishman as Debtors' counsel and replaced the
firm with Shafferman & Feldman LLP, and a substitution of counsel was executed
and filed with the Court on February 5, 2023.  That the defendants have sought to
use the services of Leech Tishman is not, by itself, a compelling circumstance to
deny the Motion to Withdraw.

17.     *In re Wiener* (cited above) is persuasive.  There, Silverman Acampora
LLP, the Trustee's counsel here, moved to withdraw as counsel to Scott Wiener, a
Chapter 7 debtor.  Silverman Acampora asserted that its firm had been discharged
as counsel, that it accepted that discharge, and that its motion to withdraw should

be granted notwithstanding that the Debtor sought to use the services of an attorney at Silverman Acampora. The Court said that the mere fact that Mr. Wiener, the debtor, wanted to continue to use the services of Mr. Powers, a partner at the Silverman firm was not, standing alone, a "compelling circumstance" that warranted denial of the motion to withdraw. In *Wiener,* the Court overruled the Debtor's objection to the motion to withdraw finding that because counsel had been discharged by the client under DR §2-110(B)(4), counsel was required to withdraw.

18.    Thus, in *Wiener*, Silverman Acampora established grounds under Rule 1.16(b) to withdraw as debtor's counsel. Similarly, Leech Tishman has been discharged as Debtors' counsel and thus established a valid basis to withdraw as counsel.

19.    Moreover, Leech Tishman's voluntary withdrawal as Debtors' counsel does not impact the timing of the Adversary Proceeding or the bankruptcy case or prejudice the Trustee. The bankruptcy cases have been confirmed and representation of the Debtors is essentially limited to closing the case. The withdrawal and replacement of Debtors' counsel does not affect (i) the already confirmed bankruptcy case or (ii) the Adversary Proceeding, as the defendants' motion to dismiss is pending, and no discovery has commenced.

### Leech Tishman Should Not Be Disqualified From Representing Defendants in the Adversary Proceeding

20.    The Trustee filed both an Objection to Leech Tishman's Motion to Withdraw and a separate Motion to Disqualify. In both, the Trustee's endgame is to prevent Leech Tishman from representing certain defendants in the Adversary

Proceeding.  In its Objection, the Trustee asserts, among other things, (i) that Leech

Tishman all but ignores clear conflict of interests that exist between the Debtors, as

fiduciaries of their estates which owe a duty to support the Creditor Trust's efforts

to maximize the value to creditors, and the defendants, who are now targets of

litigation commenced by the creditor trust, and (ii) even if the Court permitted

Leech Tishman to withdraw as counsel to the Debtors, such withdrawal would not

resolve the inherent conflict because the Trustee asserts (incorrectly) that the

Adversary Proceeding is a "substantially related matter" to the Debtors' chapter 11

cases.  See Objection at ¶¶ 17, 19.[4]  In making these arguments, the Trustee (i)

conflates the issues that pertain to an attorney disqualification motion with those

that would relate to its Objection to the Motion to Withdraw, and (ii) fails to meet

its heavy burden to disqualify Leech Tishman from representing certain defendants

in the Adversary Proceeding.

21.    "Motions to disqualify are generally disfavored because they are often

tactically motivated, cause some undue delay, add expenses, and have an

immediate adverse effect on the client by separating him from counsel of his choice."

---

[4] The Trustee incorrectly relies on the chapter 7  bankruptcy case styled *Kohut v. Lenaway (In re Lennys Copy Ctr. & More LLC)*, 515 B.R. 562, 565 (Bankr. E.D. Mich 2014), for the proposition that even if the Court permitted Leech Tishman to withdraw as Debtor's counsel such withdrawal would not resolve the conflict because the Adversary proceeding is a "substantially related matter" to the Debtors' chapter 11 cases.  *Kohut* is inapposite. First, in *Kohut*, the trustee's motion was to disqualify the law firm from representing the debtor's members in an adversary proceeding.  Here, the defendants currently represented by Leech Tishman are not members of the Debtors.  Moreover, as set forth in more detail in paragraph 28, *supra*, the Second Circuit has a very narrow interpretation of what constitutes a substantially related matter as the issues must be identical or essentially the same.  *See Gov't of India v. Cook Industries. Inc.*, 59 F. 2d  737, 740 (2d Cir 1978). The issues in the Adversary proceeding are not substantially related to the issues dealt with in the bankruptcy case.

*Bulkmatic Transp. Co. v. Pappas,* 2001 WL 504841, at *2 (S.D.N.Y. May 11, 2001);

*see John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 126 F. Supp.3d 413, 419

(S.D.N.Y. 2015) ("Because disqualification motions interfere with a party's right to

counsel of its choice and are often made for tactical reasons, they are 'viewed with

disfavor,'…. and the party seeking disqualification must meet a 'heavy burden of

proof to prevail'"); *Watkins v. Trans Union, LLC*, 869 F.3d 514, 519 (7th Cir. 2017)

("We have observed that granting a motion for disqualification has 'immediate,

severe, and often irreparable … consequences' for the party and disqualified

attorney…. Disqualifying a lawyer immediately deprives the losing party from the

'representation of his choice' and disrupts the litigation.").

22.     The Second Circuit requires a "high standard of proof" upon a party

seeking to disqualify former counsel in a subsequent matter. *Evans v. Ariek Sys.*

*Corp.,* 715 F.2d 788, 791 (2d Cir. 1983). Disqualification of counsel is "warranted

only in situations where violations of the Code of Professional Responsibility…pose

a significant risk of trial taint." *Bulkmatic Transp. Co., Inc. v. Pappas,* 2001 WL

504841, at *2(S.D.N.Y. 2001) (citation omitted); *John Wiley & Sons, Inc. v. Book*

*Dog Books, Inc*, 126 F.Supp 3d at 419 ("Disqualification is only warranted in the

rare circumstance where an attorney's conduct 'poses a significant risk of trial

taint.'"). *See also Watkins v. Trans Union, LLC.* 869 F.3d at 519

("[D]isqualification, as a prophylactic device for protecting the attorney-client

relationship, is a drastic measure which courts should hesitate to impose except

4880-7938-9777, v. 9

when absolutely necessary… [because it] destroy[s] a relationship by depriving a party of representation of their own choosing.").

23.    "The authority of the federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Inc. Vill. Of Valley Stream*, 409 F.2d 127, 132 (2d Cir. 2005) (citation omitted).  In exercising this power, the Court attempts to balance "'a client's right freely to choose his counsel' against 'the need to maintain the highest standards of the profession.'" *Id.; see Gov't of India v. Cook Indus., Inc.,* 569 F.2d 737, 739 (2d Cir. 1978) ("[W]e are mindful that there is a particularly trenchant reason for requiring a high standard of proof on the part of one who seeks to disqualify his former counsel, for in disqualification matters we must be solicitous of a client's right freely to choose his counsel a right which of course must be balanced against the need to maintain the highest standard of the profession.").  Although the Court's "decisions on disqualification motions often benefit from guidance offered by the American Bar Association (ABA) and the state disciplinary rules…such rules merely provide guidance and not every violation of a disciplinary rule will necessarily lead to disqualification. " *Hempstead Video,* 409 F.2d at 132. "It is only warranted where 'an attorney's conduct tends to taint the underlying trial." *Id.* at 133

24.    "The standard for disqualification varies depending on whether the representation is concurrent or successive." *Id.* at 133.  In cases of concurrent representation, the Second Circuit has ruled it is "'prima facie improper' for an

attorney to simultaneously represent a client and another party with interests directly adverse to that client." *Id.* (citations omitted) "The attorney must be prepared to show, at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation." *Id.* (internal quotations omitted).

25.    In cases of successive representation, the Second Circuit has held that an attorney may be disqualified if:

> (1) the moving party is a former client of the adverse party's counsel;
>
> (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues present in the new lawsuit; and
>
> (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Id.* at 133 (citing *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983).

26.    The issues here concern successive rather than concurrent representation because Leech Tishman has been discharged by the Debtors and it was never counsel to the Trustee. Thus, the relevant standard is the three-part test above for successive representation.

27.    The Trustee asserts that the first prong of the three-part test is based on Rule 1.9, entitled "Duties to Former Client," which provides:

> a. A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Objection at ¶31. This New York State Rule is identical to Rule 1.9 of the Model

Rules of Professional Conduct. *See Peterson v. Sanches (In re Mack Indus., Ltd.),*

606 B.R. 313, 324 (Bankr. N.D. Ill. 2019) ("Mack") (quoting Model Rule of Prof'l

Conduct 1.9 (2018)).  This rule does not preclude Leech Tishman from representing

the defendants in the Adversary Proceeding for a least two reasons: (1) the Trustee

is not Leech Tishman's former client so the rule does not apply, and (2) the test for

"substantially related matters" is not met in any event.  First, only the Trustee is

the Plaintiff in the Adversary Proceeding; neither Debtor are parties.  The soon-to-

be-former representative of two Debtors is not a representative of the Trustee. *See*

*Mack,* 606 B.R. at 324-325 (Rule 1.9 "does not preclude [counsel] from representing

the adversary defendants for at least two reasons: (1) the [chapter 7] trustee and

the estate are not [counsel's] former client so the rule does not apply, and (2) the

test for 'substantially related' matters is not met in any event" where information

relevant to the issues in the adversary proceeding was discoverable, and there was

not a risk that confidential factual information as would normally have been

obtained in attorney's prior representation of debtors would materially advance the

defendants' positions in the adversary proceedings).

28.     Second, for purposes of Rule 1.9, two matters are "substantially

related" under Rule 1.9 when (1) the two matters involve the same transaction or

legal dispute, or (2) when there is a substantial risk that confidential factual

information as would normally have been obtained in the prior representation

would materially advance the client's position in the subsequent matter. *Mack*, 606

B.R. at 324 (citation omitted).[5]  In fact, in "honing" the application of the
"substantial relationship" test, the Second Circuit stated that in granting
disqualification, there must be a "showing that the relationship between issues in
the prior and present case is 'patently clear.'"  *Gov't of India v. Cook Indus., Inc.,*
569 F.2d at 739-740.   The Second Circuit further stated that "disqualification has
been granted or approved . . .  only when the issues involved have been 'identical' or
'essentially the same.'"  *Id.* at 740.  "Under the first test for 'substantially related', to
participate in the same transaction, the lawyer must have had a *direct* involvement
in the *specific* transaction that is the subject of a subsequent representation."
*Mack,* 606 B.R. at 324. (citation omitted) (emphasis added).  The test is not met
here.  Neither Leech Tishman nor Robinson Brog represented either Debtor pre-
petition when the transactions that are the subjects of the adversary proceeding
took place.

29.    The central issue in the chapter 11 case concerned the Debtors' effort
to obtain financing or a joint venture partner to complete the construction of a hotel
during the pandemic given its negative impact on the hospitality industry.  In
contrast, the fraudulent transfer claims have no relationship to Robinson Brog and
then Leech Tishman's efforts to obtain the necessary financing to complete the
project.   Indeed, the secured creditor obtained the hotel through a credit bid.  There

---

[5] "In interpreting the Rules of Professional Conduct, federal courts may rely on the specific guidance offered in the commentary."  *Watkins v. Trans Union, LLC,* 869 F.3d at 519. "The commentary to Rule 1.9 defines two matters as 'substantially related' when two matters 'involve the same transaction or legal dispute' or when there is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." *Id.* at 520. (citation omitted).

is no analysis by the Trustee as to how the efforts to obtain financing and the fraudulent transfers sued upon overlap, much less how they are substantially related.

30.     To be clear, neither Leech Tishman nor Robinson Brog had any involvement in anything related to the fraudulent transfer claims asserted by the Trustee when they were counsel to the Debtors.  *See Mack*, 313 B.R. at 324 (first test not met where (i) counsel represented neither debtor pre-petition when the transactions that are the subject of the adversary proceeding took place, and (ii) counsel had no involvement in anything related to preference claims or the type of non-insider fraudulent transfer claims asserted by the trustee when attorney was counsel for debtor).  They were not part of the bankruptcy.

31.     The second "substantially related" test focuses on whether there is a substantial risk that the lawyer will use confidential information obtained in the previous relationship to materially advance the new client's interests.  *Mack*, 313 B.R. at 324-325.  "Under this standard, even a lawyer who repeatedly handled a specific type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the prior client.'"  *Id.* at 325 (citation omitted).  "In addition, information disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying."  *Id.* (citation omitted); *see Watkins v. Trans Union, LLC*, 869 F.3d at 520 ("The commentary tells us that information 'disclosed to the public or to other parties adverse to the former

4880-7938-9777, v. 9

client ordinarily will not be disqualifying.'") "This includes any information that can be obtained in discovery from the former client." *Mack,* 313 B.R. at 325. "Thus, an attorney will not be disqualified when he had access to information relevant to the current litigation when that information is discoverable in litigation." *Id.* "Similarly, general knowledge of a client's policies and practices ordinarily will not preclude a subsequent representation." *Id.* Applying these principles, the Seventh Circuit in *Watkins v. Trans Union, LLC,* 869 F.3d 514, refused to disqualify a lawyer who was adverse to a client that he represented for five years on the exact type of issue involved in a new lawsuit.

32.    Here, even if the Debtors' bankruptcy estates are Leech Tishman's former clients, the "substantial relationship" test is not met. As discussed above, the primary issue in the bankruptcy was whether the Debtor could obtain financing which it ultimately could not do. The fraudulent transfer claims all raise questions about which of some 48 defendants received a benefit. There seems to be no potential that confidential information relevant to this issue exists, let alone confidential information to which Leech Tishman had access and could use against the Trustee. The Trustee has presented no factual basis for concluding that Leech Tishman obtained confidential information that is not discoverable and would materially advance Leech Tishman's clients' interests against the Trustee. In fact, the undersigned acknowledges that he received no special knowledge regarding these alleged fraudulent transfers representing the Debtors. *See Mack,* 606 B.R. at 325 (substantial relationship test not met where fraudulent claims raised issues

where no potential that confidential information relevant to these issues exist, let alone confidential information to which counsel had access and could use against trustee).

33.    In *Mack*, the Court stated:

> The Trustee has failed to establish that there is any risk, let alone a substantial risk, that confidential factual information as would normally have been obtained in [counsel's] prior representation of the two debtors would materially advance the defendants' positions in the adversary proceeding. [The trustee] has therefore failed to establish that [counsel] violates Rule 1.9 by representing defendants in the adversary proceedings.

*Mack*, 606 B.R. at 327-328.  The same rationale that the Court applied in *Mack* applies here as well, and thus the "substantial relationship" test is not met.

34.    The Trustee further asserts that allowing Leech Tishman to decide that it no longer wishes to represent the Debtors so it can represent Hager and his co-defendants (who the Trustee asserts are purportedly adverse to the interest inherited from the Debtor by the creditor trust) presents a clear example of trial taint, and then cites four cases, none of which supports the Trustee's argument.  See Objection at ¶27.  The Trustee provides no particulars of trial taint.  It is all speculative and beyond inchoate, and the lack of specifics reveals the true motivation of the opposition and the Motion to Disqualify is tactical.  Contrary to the Trustee's assertion, the Debtors decided to discharge Leech Tishman and Leech Tishman did not decide it no longer wished to represent the Debtors.  Moreover, the Trustee's speculation of trial taint does not satisfy the Second Circuit's high standard of proof, nor do the four cases cited by the Trustee in its Objection support

the proposition that the facts here are an example of "trial taint."[6]  "Disqualification

is only warranted in the rare circumstance where an attorney's conduct 'poses a

significant risk of trial taint.'"  *John Wiley & Sons, Inc. v. Book Dog Books, LLC*,

126 F. Supp.3d at 419.  Thus, based on both the Trustee's insufficient evidence and

the case law, the Trustee has not satisfied its high burden to establish trial taint.

35.    Contrary to the Trustee's allegation of trial taint, in the one case that

the Trustee's counsel referenced in its January 25, 2023 letter to Leech Tishman

requesting that the firm withdraw its pending motion to dismiss the Adversary

Proceeding and withdraw as counsel in the Adversary Proceeding, Judge Feller in

*In re Allboro Waterproofing Corp.,* 224 B.R. 286 (Bankr. E.D.N.Y. 1998) denied the

Chapter 7 trustee's motion to disqualify counsel in connection with its

representation of the defendants in the adversary proceeding in that case, and

agreed with counsel's suggestion to withdraw as counsel to the Debtor.

36.    In *Allboro*, the Chapter 7 Trustee launched eleven interrelated

adversary proceedings against the debtor's shareholder and his family.

Subsequently, the Chapter 7 trustee sought to disqualify the law firm that

---

[6] *See Bell v. Rochester Gas & Elec. Corp.,*  No. 03-CV-6040L, 2004 WL 1638185, at *3 (W.D.N.Y. July 20, 2004) (denying plaintiff's motion to disqualify counsel); *Sauer v. Xerox Corp.,*  85 F.Supp 2d 198, 201 (W.D.N.Y. 2000) (although Court concluded that Magistrate Judge determined counsel to be in violation of DR 5-103(a), it was "not convinced that disqualification is the best remedy."); *Bulkamatic Transp. Co. v. Pappas,* 2001 WL 504841, at *1, 5 (S.D.N.Y. 2001) (court denied motion to disqualify law firm where defendants' motion was based on an agreement that the firm's simultaneous representation of plaintiff on the original claim and its employees as defendants in the third-party action creates a conflict of interest that poses a significant intent of trial taint); *Cf. Felix v. Balkin,* 49 F. supp. 2d 260 (S.D.N.Y. 1999) (although Court denied disqualification of law firm because it allegedly gained secrets and confidences from client during dual representation, Court did disqualify two sets of law firms; first law firm was disqualified because they did not adequately discharge their professional obligations and second law firm and its co-counsel were disqualified because they secretly represented subordinate supervisor on substantially related issues while involved in a joint defense in a prior matter).

4880-7938-9777, v. 9

represented the defendants in the adversary proceedings and the debtor in the

chapter 7 case asserting that simultaneous representation of the debtor and the

defendants creates a conflict that warrants disqualification of the defendants'

counsel.  Judge Feller, in considering the right to preserve, to the greatest extent

possible, both the right to be represented by counsel of one's choice and the public

interest in maintaining the highest standard of professional conduct and scrupulous

administration of justice, held that the appropriate remedy was to allow the law

firm to voluntarily withdraw from representing the debtor and continue to

represent counsel to the defendants in the adversary proceedings. *Id.* at 289.

37.    In making that ruling, the Court said that "[d]isqualification is a

drastic measure that results in denying a client representation by the attorney of

choice." *Id. at* 290. As a result, the "Second Circuit has therefore adopted a cautious

approach when resolving disqualification motions mindful that they may be made

simply as "tools of the litigation process, being used … for purely strategic

purposes." *Id.* (citing *Allegaert v. Perot*, 565 F.2d 246, 251 (2d Cir. 1977)).  The

Court further stated disqualification is not an inevitable consequence because the

Code of Professional Responsibility merely provides guidance for professional

conduct, and it should not be mechanically applied when raised in litigation. *Id.* at

293-294.  In deciding whether to allow counsel to withdraw from representing the

debtor rather than being disqualified from representing the defendants in the 11

adversary proceedings, the court noted (i) its duty is discretionary, (ii) there is a

heavy burden placed on the movant to show that disqualification is necessary, and

4880-7938-9777, v. 9

(iii) even when a violation of the Code of Professional Responsibility is discovered the finding does not automatically result in disqualification of counsel. *Id.* at 294. The *Allboro* Court concluded that the Chapter 7 trustee did not meet his burden because (i) he neither alleged that counsel engaged in any improper conduct in the past nor has he anticipated any negative effect on standards of professional conduct or blotch on the administration of justice that may linger after the conflict is resolved, and (ii) no claim that the trial will be tainted, as the appearance of impropriety is insufficient on which to rest a disqualification order, except in the rarest cases. *Id.* at 295 (citation omitted).

38.    The *Allboro* Court also found that the debtor could easily obtain services of a replacement counsel with little or no disruption but disqualifying counsel from representing the defendants would spawn unnecessary delay in the adversary proceedings and an unwanted imposition of added expense on both the defendants and the bankruptcy estate.  As a result, the court believed that disqualification was an ill-advised strategy.  Similarly, this Court should accept Leech Tishman's withdrawal of its representation of the Debtors rather than have it be disqualified in representing certain defendants in the Adversary Proceedings.

39.    In its conclusion, the *Allboro* Court noted that when the Chapter 7 trustee was advised of counsel's offer to withdraw as counsel for the debtor, the Chapter 7 trustee insisted that counsel may not choose whom it could represent. The Court noted, however, that the Chapter 7 trustee is also constrained from picking and choosing his adversaries legal representation through a disqualification

motion. Otherwise, the determination of which clients may remain represented by a particular attorney is a hollow exercise, governed only by which party first raises the conflict issue and offers an apparent acceptable solution. *Id.* at 296.

### Trustee is Not Prejudiced by Leech Tishman's Withdrawal as Counsel

40.    The Trustee alleges (without any evidence) that (i) the Debtors will be prejudiced by the withdrawal of Leech Tishman as their counsel and (ii) the Creditor Trust and Trustee, as successors to certain interests of the Debtors under the Plan and which necessarily rely on the Debtors for information, will be prejudiced by Leech Tishman's withdrawal.  Objection at ¶ 20.  The Trustee further asserts (without any evidence again) that "[w]ithout its counsel, the Debtors would likely be unable to satisfy their obligations to support the Creditor Trust's activities, which include nine (9) pending adversary proceedings commenced by the Trustee and any objections to claims which need to be filed."  Objection at ¶ 20.

41.    These allegations lack merit. First, the Debtors are not prejudiced by Leech Tishman's withdrawal.  The bankruptcy case is over and the Debtors discharged Leech Tishman and found replacement counsel to assist the Trustee with requests that it may have.  Second, although a debtor has a statutory duty under section 521(a)(3) of the Bankruptcy Code to cooperate with the trustee to enable the trustee to perform his duties, the Trustee has not shown that the term "trustee" in section 521 applies to a post-confirmation trustee of a creditor trust. Even assuming that it did, that duty only requires a debtor to comply with reasonable requests to assist the trustee in the performance of the trustee's duties.

*Sullivan v. Miller*, 637 B.R. 723, 727 (E.D. Mich. 2022) (citations omitted).  "In the context of an adversary proceeding to recover fraudulently transferred assets, the duty to cooperate means that a debtor must provide a trustee with requested information and documents." *Id.* (citation omitted).  But a debtor's duty to cooperate with the trustee by providing information has not been threatened here.  The Trustee makes no allegation that either Leech Tishman or the Debtors have been derelict in any way regarding providing information or documents.  In fact, before the commencement of the Adversary Proceeding, the Trustee sought the Debtors' books and records and they were promptly delivered to Trustee's counsel and the Trustee did not request an extension of time to conduct discovery or a tolling agreement.  "Without a breach or threatened breach of that duty—and without even a pending request for cooperation, much less an unrequited one – there has been no showing of direct adversity regarding the duty to cooperate." *Id.*  Thus, neither the Debtors nor the Trustee will be prejudiced by Leech Tishman's withdrawal as counsel to the Debtors.

42.    Furthermore, the Trustee incorrectly contends that there is a conflict of interest between Leech Tishman representing the Debtors and the defendants based on their unsupported allegations that the defendants are insiders of the Debtors. See Objection at ¶12.  Contrary to that allegation, the defendants that Leech Tishman represent in the Adversary Proceeding are not the Debtors' equity holders as evidenced by the Debtors' Schedules and SOFAs, which the Court can take judicial notice of.  *See In re Sheckard*, 368 B.R. 118, 124 and n. 15 (Bankr. E.D.

4880-7938-9777, v. 9

Pa. 2008) (Bankruptcy court may take judicial notice of "of the docket entries and the bankruptcy petition, schedules and statement of financial affairs filed in a case" (citations omitted).

43.     The Trustee contends that a conflict of interest exists between the Debtors, as fiduciaries of their estates who purportedly owe a duty to support the Creditor Trust's efforts to recover funds, and the defendants, who are now the targets of litigation commenced by the Creditor Trust.  Objection at ¶17.  Although the purported conflict is raised by the Trustee throughout the Objection, the Trustee fails to cite one case where this alleged conflict arises in the context of a motion to withdraw as counsel.  The reason is simple -- the case law relating to this issue arises in the context of a disqualification motion and not a motion to withdraw.

44.     In fact, the Trustee cites four cases in paragraph 28 of the Objection for the proposition that courts faced with situations in which counsel sought to represent a debtor *simultaneously* with its insiders which has adverse interests have found conflicts in such representations. Objection at ¶ 28 (emphasis added). Those cases[7] are easily distinguishable because Leech Tishman is not representing

---

[7] The cases referenced in paragraph 28 of the Objection that are inapposite are as follows: (i) *McClarty v. Wise (in re Wise)*, Nos 17-45621,18-4131, 2018 Bankr. Lexis 2617, at *2 (Bankr. E.D. Mich. Aug 28, 2018); (ii) *Kohut v. Lenaway (in re Lennys Copy Ctr & More LLC)*, 515 B.R. at 566 (which was addressed in footnote 4, *supra*); (iii) *Houghton v. Morey (in re Morey)*, 416 B.R. 364,368 (Bankr. D. Mass. 2009) and (iv) *in re Freedom Solar Ctr., Inc.* 42 B.R. 261 (Bankr. D. Me. 1984). With respect to *In re Freedom Solar Ctr, Inc.,* the Trustee failed to cite to the First Court decision in that case, which clearly demonstrates why the case is inapposite. *In re First Solar Center, Inc.,* 776 F.2d 14 (1st Cir. 1985)  involved counsel who **continued to represent** the chapter 7 debtor, the debtor's sole shareholder, and a new corporation organized by the sole shareholder, who was attempting to purchase some of the debtor's assets and may be liable for preferential transfers.  The First Circuit stated that this is not a case of past representation giving rise to a conflict with a present client so

4880-7938-9777, v. 9

insiders and is not currently simultaneously representing the Debtors and

defendants as the Debtors discharged the firm and replaced it with Shafferman &

Feldman LLP.  Thus, because the appropriate standard is for successive

representation, those cases are inapposite.

45.    In making its determination, the Court is to use its discretion to

consider the economies of scale of allowing one counsel to represent substantially all

the defendants in the Adversary Proceeding.  In *Mack*, notwithstanding that the

Court found that the trustee did not meet his burden of proving disqualification, the

Court noted (i) that counsel's representation of a large number of defendants at low

cost to them provides an important counterweight to the enormous power wielded

by the Chapter 7 Trustee, (ii) the lack of detail makes it harder for defendants to

defend themselves and persuade the trustee that the claim has no merit, (iii) cost of

hiring a lawyer to defend each action can be high, and  (iv) the cost can make it

hard for defendants with valid defenses to present them economically.  The Court

concluded that if it "had found an ethical violation, this factor would weigh

significantly against disqualification."  *Mack,* 606 B.R. at 328.

---

the substantial relationship test did not apply.  *Id.* at 16.   This case is inapposite because the issue,
in this case, concerns successive representation where the "substantially related" test applies.

4880-7938-9777, v. 9

46.    Based on the above, the Objection should be overruled and Leech

Tishman's motion to withdraw as counsel should be granted.

Dated: New York, New York
      February 28, 2023

**LEECH TISHMAN ROBINSON BROG, PLLC**
875 Third Avenue, 9th Floor
New York, New York 10022
Tel. No.: 212-603-6300

By: /s/ Fred B. Ringel
    **Fred B. Ringel**
    **William A. Rome**
    **Steven B. Eichel**
Withdrawing Counsel to the Debtors

4880-7938-9777, v. 9